JOHN SINCLAIR and others *v.* LEONARD F. FITCH and WILLIAM J. WILCOX, impleaded with JOHN H. THOMSON.

Any one of several causes of action, set forth in the complaint in an action under the mechanics' lien law, will be held bad on demurrer, where such cause of action fails in itself to show any connection between the facts therein alleged and a party defendant by whom the demurrer is interposed.

A fatal defect in one cause of action separately stated, cannot be remedied by allegations constituting another cause of action contained in the same complaint.

*It seems,* however, that preliminary to statements of several causes of action, the

---

(*a*) *Ante*, p. 637.

plaintiff may make general averments applicable to all, so that each, with such preliminary allegations, may be perfect in itself.

A lien cannot be acquired against the purchaser of a building, for materials furnished or labor performed before the conveyance, by filing a notice of claim subsequently to the purchase, although the purchaser became such with notice of the amount due the claimant, and the premises were conveyed subject to the payment thereof.

The principle, that where the complaint contains averments sufficient to authorize a judgment, the court may grant any remedy warranted by the facts, although differing from the relief demanded,(a) does not apply to actions under the mechanics' lien law.

Accordingly, although a vendee may have purchased premises under such conditions and with such notice as to render him liable to a claimant for labor or materials furnished pursuant to the employment of the original owner; such liability cannot be enforced in a proceeding under this statute, where the notice prescribed in the sixth section has not been filed before the purchase.

GENERAL TERM, JULY, 1857.

THE complaint in this action was filed pursuant to a proceeding to enforce a claim under the mechanics' lien law of 1851, and alleged, that on the 12th of June, 1855, the defendant Thomson, being the owner of certain premises, entered into a contract with the plaintiffs for the erection of a building. After setting forth the terms of the alleged contract, the complaint proceeded to aver, " as and for a first cause of action," that in pursuance of its terms the plaintiffs performed labor and furnished materials in the erection of the building in question; that on the 10th of December, 1855, there was due and payable to the plaintiffs, by virtue of the contract, $450, being the fifth installment therein mentioned; that on the 12th of December, 1855, the plaintiffs served upon the county clerk the notice prescribed in the sixth section of the act for the better security of mechanics' and others, intending thereby to obtain the benefit of that statute and of all subsequent acts amendatory thereof. A copy of the notice was annexed.

The complaint then alleged, " as and for a second cause of action," that after the sum last mentioned became due and payable, the plaintiffs continued to perform other work and to furnish other materials in the said building, pursuant to the terms

(a) See the case of *Lewis v. Varnum, post,* p. 690, *note.*

Sinclair *v.* Fitch.

of the said contract, which were worth the further sum of $850. That thereafter, on the 13th of December, 1855, the defendant, Thomson, sold and conveyed the premises to the defendants, Fitch and Wilcox, subject to the notice and lien first above mentioned, as well as subject to the payment of the said last mentioned sum of money to these plaintiffs, " concerning which and of each particular therewith connected the said defendants had a full and thorough notice and knowledge, and retained in their hands, out of the purchase money of the premises, a sufficient amount for the avowed purpose of applying the same to the sum due these plaintiffs." That the plaintiffs have always been ready and willing to carry on and complete the building pursuant to the terms of the said contract, and in fact offered the defendants, Fitch, and Wilcox to complete, which the latter refused to permit them to do. That on the 8th of April, 1856, the plaintiffs served another notice upon the county clerk, to obtain a lien for the said further sum of $850, a copy of which notice was set forth.

The prayer was, that the building and lot of ground, which were described, be sold; that the interests of the defendants in the premises, and of all persons claiming under them, since the filing of the notices of liens, be barred and foreclosed; that the proceeds be applied to the payment of the costs and of the sums of money due to the plaintiffs; that if such proceeds should prove insufficient for those purposes, the plaintiffs have a personal judgment against the defendant, Thomson, for the balance left unsatisfied; " and that the court make such further and other order in the premises as may seem meet and proper."

The defendants, Fitch and Wilcox, demurred to each of the two causes of action set forth in the complaint, and specified the following grounds of objection:

To the first cause of action—

1. That it did not state facts sufficient to constitute a cause of action against the defendants, Fitch and Wilcox.

2. That there was a defect of parties plaintiffs therein.

3. That there was a defect of parties defendants, namely: in

improperly joining the defendants, Fitch and Wilcox, as defendants therein.

And to the second cause of action—

1. That it did not state facts sufficient to constitute a cause of action against the defendants, Fitch and Wilcox.

2. That it appeared therein, at the time of the filing of the notice of lien, mentioned in said second cause of action, John H. Thomson had no right, title or interest in the property of the defendants, Fitch and Wilcox, against which said lien was sought to be created and enforced.

3. That there was a defect of parties plaintiffs therein.

4. That there was a defect of parties defendants, namely : in improperly joining the defendants, Fitch and Wilcox, as parties defendants therein.

An order was entered at a special term, directing judgment for the plaintiffs upon the demurrer. From this order the defendants, Fitch and Wilcox, appealed to the general term.

*C. Bainbridge Smith,* for the appellants, made and argued the following points :

I. The first cause of action set forth in the complaint does not state facts sufficient to constitute a cause of action against the defendants Fitch and Wilcox. The only material allegations therein are: 1. That on the 12th of June, 1855, the defendant, John H. Thomson, being the owner of the premises in question, made a contract in writing, which is annexed to the complaint, and by which it appears the plaintiffs were to erect for the defendant, Thomson, the building in question, on or before the 1st of November, 1855. 2. That on the 10th December, 1855, there was due and payable to plaintiffs, four hundred and fifty dollars, by virtue of said contract. 3. That on the 12th of December, 1855, the plaintiffs served a notice of lien on the county clerk, specifying the claim of plaintiffs, namely, four hundred and fifty dollars. 4. That the plaintiffs intended thereby to have and obtain a lien, pursuant to the statutes, and that a copy of said notice is annexed.

First. It is nowhere stated or shown in the first cause of action, how or in what manner the defendants, Fitch and Wilcox, are, or ever were, connected with the contract, or labor and materials furnished under it; nor is it alleged how or in what manner their, or any property of theirs, is affected by the alleged lien.

Second. The rule heretofore existing as to several counts in a declaration is applicable to several causes of action set forth in a complaint under the present practice. That rule was that each count upon the face of it "must disclose a distinct right of action unconnected with that stated in any of the other counts." (Gould's Pl., 2d ed., p. 171, chap. iv., § 3.)

1. The Code not only recognizes, but adopts the same rule. Section 167 provides what causes of action may be united, and concludes : " But the causes of action so united must all belong to one of these classes, and must affect all the parties to the action, and not require different places of trial, and must be separately stated." (Code of Procedure, § 167.)

2. Section 151 declares, " The defendant may demur to one or more causes of action stated in the complaint, and answer the residue." What if a defendant should demur to one of two causes of action and answer the other, and the demurrer was sustained by the court, could the allegations in the cause of action, which the plaintiffs failed to sustain, be brought to aid the residue of the complaint, and would not the effect be the same as if it had been stricken from the complaint?

3. The plaintiffs have stated separately their two causes of action, and distinguished the latter by the expression, " As and for a second cause of action." etc. (*Benedict* v. *Seymour*, 6 How. Pr. R. 298.)

4. It is only by bringing the facts alleged in the second cause of action in aid of the first, that the defendants, Fitch and Wilcox, are shown to have any connection with the matters alleged in the first cause of action ; and, even by the adoption of such a course, it is submitted that the plaintiffs have failed to state facts sufficient to constitute a cause of action against them, because—

(1.) By the contract annexed to and forming part of the first cause of action, it appears the plaintiffs were to erect the building in question for the defendant, Thomson, on or before the first day of November, 1855, and on that agreement being strictly performed, he agrees to pay, etc.

(2.) In the second cause of action it is alleged, that on the 13th December, 1855, the defendant, John H. Thomson, sold and conveyed the premises in question to the defendants, Fitch and Wilcox, and at that time the work was not completed ; for the plaintiffs say that " they tendered and offered said defendants, Fitch and Wilcox to complete said building, pursuant to the terms of the said contract, which said defendants refused to permit these plaintiffs to do." And they then allege that on the 8th of April following, they filed a lien, etc.

(3.) There is no allegations showing why the building was not erected by the plaintiffs on or before the first day of November, 1855, according to the terms and conditions of the contract, nor is it alleged that those terms or conditions or any of them have ever been waived in any manner whatever.

(4.) " The claimant, in proceedings to foreclose a lien under the law of 1851, must show that the work and materials for which he claims were done or furnished in conformity with the terms of a contract with the owner of the building." (*Dixon* v. *La Farge*, 1 E. D. Smith, 722 ; *Grogan* v. *the Mayor*, by BRADY, J., 2 ib. 693.)

(5.) It is submitted that the complaint as to the first cause of action does not state facts sufficient to constitute a cause of action against the defendants Fitch and Wilcox.

II. The second cause of action set forth in the complaint does not show any ground of action under the lien law against the defendants, Fitch and Wilcox. The material allegations of the complaint in respect to the second cause of action are—1. That after the sum of money last mentioned became due and payable (*i. e.* 12th December, 1855), the plaintiffs continued to do and perform certain other work and labor, and furnish other materials in and about said building, pursuant to the terms of said contract, which amounted to eight hundred and fifty dol-

lars. 2. That on 13th December, 1855, the defendant, John H. Thomson, sold and conveyed the said premises to the defendants, Fitch and Wilcox. 3. That they, the plaintiffs, have always been ready to carry on and complete the said building pursuant to the contract, and in fact tendered and offered said defendants, Fitch and Wilcox, to complete the said building accordingly, but they have refused the plaintiffs to do so. 4. That on the 8th April, 1856, the plaintiffs filed a lien, etc.

1. The first cause of action is alleged therein to be for the fifth installment mentioned in the contract, and that became due as is alleged therein on the 12th December, 1855. The second cause of action is to enforce the payment of eight hundred and fifty dollars, which is the last payment mentioned in the contract, and the work and labor of which the plaintiffs tendered and offered to do for the defendants, Fitch and Wilcox. The work was not performed, and the tender and offer of the plaintiffs must have taken place on the 13th December, 1855 (the next day after the former payment became due), for on that day it is alleged the defendant, Thomson, sold and conveyed the premises in question to the defendants, Fitch and Wilcox; besides, the work was to be completed on the first of November, 1855, and therefore the work was not and could not have been done in conformity with the terms of the contract alleged in and annexed to the complaint. (*Dixon* v. *La Farge,* 1 E. D. Smith, 722; *Grogan* v. *The Mayor,* 2 ib. 693.)

2. A lien under the statute of 1851 is only acquired upon filing the notice. The effect of filing such notice is stated to be that the claimant shall have a lien upon the right, title and interest of such owner, existing at the time of such filing; that is, the owner with whom or with whose contractor the agreement was made. (Laws of 1851, p. 953; *Quimby* v. *Sloan,* 2 E. D. Smith, 594; *Jackson* v. *Sloan,* ib. 616; *Doughty* v. *Devlin,* 1 ib. 625; *Sullivan* v. *Decker,* 1 ib. 699.)

3. It is alleged in the complaint that the defendant, Thomson, the owner, with whom the plaintiffs made the contract, on the 13th December, 1855, conveyed to the defendants, Fitch and Wilcox, the premises in question, and that the notice of lien

was on the 8th April, 1856 (nearly four months after), filed etc.; consequently, such owner had not, at the time of the filing such notice of the lien, any interest in the property against which the lien is sought to be created and enforced.

4. The allegation, that the defendants, Fitch and Wilcox, retained in their hands sufficient to pay the amount mentioned, is irrelevant and immaterial, because—

(1.) The lien is acquired upon filing the notice, and it affects the interest of such owner; that is, it then became a lien on the right, title and interest of the defendant, Thomson, in the property in question, and the complaint states that at that time he had not any interest whatever therein. (*Quimby* v. *Sloan*, 2 E. D. Smith, 594; *Jackson* v. *Sloan*, ib. 616.)

(2.) If the defendants, Fitch and Wilcox, have any moneys belonging to the plaintiffs, this is not the appropriate remedy to recover it. The judgment sought to be obtained is not against them, but against their property.

(3.) The plaintiffs " having called the defendants (Fitch and Wilcox) into court in a peculiar mode prescribed by the statute for a particular purpose, only applicable to a specified claim, if the lien fails, the plaintiffs cannot convert their proceedings into an ordinary action for the recovery of money upon a personal contract, and insist upon the defendants' personal liability." (*Quimby* v. *Sloan*, 2 E. D. Smith, 609.)

(4.) The principle contended for by the counsel for the plaintiffs, that the vendor has always a lien upon the estate sold for the unpaid purchase money while the estate is in the hands of the vendee or his heirs, and can be enforced in equity, is not disputed; and doubtless, the authorities cited support and fully accord with the proposition laid down; but the difficulty is, the statute which controls this case, provides how a lien may be created, and when its provisions are complied with; then, and not till then, is the lien acquired, and by that mode and in no other manner can such a lien be enforced. (*Quimby* v. *Sloan*, 2 E. D. Smith, 609.)

III. The demurrers, it is submitted, are well taken, and the order overruling them should be reversed with costs.

*Henry A. Mott, Washington Murray* and *John Graham,* for the plaintiffs, made and argued the following points:

I. The objection to the informality of the different counts or causes of action in the complaint is of little moment. 1st, it works no injury to the applicants; 2d, the first paragraph of each cause of action was intended as a basis or foundation. The last paragraph of the complaint was intended as the superstructure, or—3d, a general recitation of facts applicable to both causes of action, and was adopted for brevity sake.

The rule is well settled, that if upon reading the complaint, or upon the trial of the action, the court can find sufficient facts in it to authorize a judgment, the plaintiff will be entitled to the judgment the facts warrant, irrespective of the relief asked for or the form of action adopted. And this, although the action is of an equitable nature, viz. to redeem a pledge, and the facts warrant a judgment in trover. (*Lewis* v. *Varnum* (by Judge INGRAHAM), Dec., 1856; *Marquat* v. *Marquat,* 2 Kernan R. 336.) Substantial justice is the aim of the Code, and the earnest desire of the court. Pleadings should be liberally construed. (Code, §§ 159, 274.)

II. The objection, that it is not averred in the complaint that the respondents compose the firm of Sinclair, Allen & Co., is untenable. It must be taken by answer. Demurrer is improper. (*Millard* v. *Shaw,* 7 How. Pr. Rep. 137.)

III. It may be that the complaint does not state facts sufficient to constitute a cause of action against the appellants, Fitch and Wilcox. Still they are necessary and proper parties to the action—which is understood and held to be a foreclosure of a kind of statutory mortgage—a mortgage created by operation of law.

As the owners of the equity of redemption, or the fee subject to the respondents' lien, they are necessary parties. (*Reed* v. *Marble,* 10 Paige, 409.) 1. They are interested in the division of the proceeds of sale and as such proper parties. (*Denton* v. *Nanny,* 8 Barb. S. C. R. 618.) 2. They are proper parties also to prevent any collusion between the former owner

and the respondents, whereby what is now their property could be sold to pay the defendant Thomson's debt. Parties whose interests in the property exist independently of the statute creating the "mechanics' lien," are properly made defendants in such a proceeding as this. (*Kaylor* v. *O'Connor*, 1 E. D. Smith, 672; Code, §§ 118–122.) Under the latter section, the appellents, Fitch and Wilcox, could apply to be made parties. Are they not entitled to litigate the question as to whether the indebtedness which is made the basis of the lien really exists, when their property is to be sold for it. If they could be made parties on their own application, can they complain if the respondents introduce them so that they can defend their rights? (*Sullivan* v. *Decker*, 1 E. D. Smith, 699.)

The complaint alleges that these appellants purchased the property with full notice of all the claims against it, legal and equitable, and that they assumed the payment of these claims as a part of the consideration or purchase money, having retained in their hands out of the purchase money a sufficient amount "for the avowed purpose of applying the same to the amount due these respondents." The second lien was created April 8th, 1856, the transfer to the appellants bearing date December 13th, 1855. The facts being all admitted by the demurrer, the question is—Do they not establish both liens against the property? Is there not a conventional mortgage? And do they not make some personal liability on the part of these appellants beyond?

The lien law of July 11, 1851, § 1, provides that upon filing the notice, the party shall have a lien to the extent of the right, title and interest at the time existing of such owner, etc. 1st. The defendant, Thomson, at the time of filing the second notice, had a right which he could enforce in equity, and an interest in and lien upon the lot of land and property, by reason of his conventional mortgage, which entitled him to a decree for the sale of the property by a proceeding *in rem*, and that right, lien and interest inured to the benefit of the respondents. 2d. The vendor has always a lien upon the estate sold for the unpaid purchase money, while the estate is in the hands of the

vendee or his heirs.    3d. It is *primâ facie* a lien.    This is strengthened by the express agreement of the appellants, Fitch and Wilcox.    4th. The vendor may enforce his lien in equity. (*Garson* v. *Green*, 1 Johns. Ch. 308 ; *Clark* v. *Hall*, 7 Paige R. 382 ; *Bradley* v. *Bosley*, 1 Barb. Ch. R. 125.)

Where a party purchases property subject to a mortgage, which he assumes to pay as part of the consideration of the transfer to him, that assumption raises an equity which attaches itself to the land.    1st. It inures to the benefit of the original mortgagee.    2d. It is a lien upon the land.    The mortgagor (Thomson) would, upon paying the amount, be entitled to enforce it against the purchaser.    The mortgagee would be entitled, upon a foreclosure, to a decree against the purchasers for the deficiency arising from a sale.    (*Blyer* v. *Monholland*, 2 Sandf. Ch. Rep. 479 ; *Kinney* v. *McCullough*, 1 Sandf. Ch. R. 370, 376.)    The case of *Quimby* v. *Sloan*, is not applicable to this action.    1st. The Marine Court had no equity powers.    2d. There was no agreement of the character set forth in the complaint; no conventional mortgage.    3d. The court there insinuate that an action of this character, based on such an agreement, is maintainable.

V. The appellants err, in fact, when they say that the allegation in the complaint is that Fitch and Wilcox retained in their hands sufficient to pay the amount mentioned in the first cause of action.    The complaint says that Thomson sold and conveyed to Fitch and Wilcox, " subject to the notice and lien first above mentioned (first cause of action) as well as subject to the payment of the said last mentioned sum of money,"—viz. the second cause of action.

VI. The objection, that if the appellants, Fitch and Wilcox, have moneys belonging to the respondents, this is not the appropriate remedy, etc., is untenable.    1st. The appellants have no money belonging to the respondents (except in equity) for which an action *at law* would lie without an assignment or authority from Thomson.    2d. They have taken and hold property encumbered with a conventional or equitable mortgage, representing the purchase money of the same, and the respon-

dent's only method of reaching that fund is by his proceeding *in rem.* 3d. If there is any other remedy, it is only concurrent with the one adopted. 4th. The respondents by their complaint claim no personal liability against Fitch and Wilcox, although they might be entitled to it.

VII. The objection, that the respondents called the appellants into court for a particular purpose, and are therefore limited in their recovery, is untenable because—1st. This court is vested with equity powers, and has jurisdiction of the subject matter. 2d. Having obtained jurisdiction of the persons, it should determine the ultimate rights of the parties on each side as between themselves, and can grant whatever relief any of the parties may be entitled to. (*Lewis* v. *Varnum* (Judge INGRAHAM), Dec. 1856. *Marquat* v. *Marquat*, 2 Kernan Rep. 236; two very striking cases of the powers of courts of justice, and their duties under the Code of Procedure. Code, § 274, subd. 1.)

VIII. It is difficult to see how the parties respondent are defective. This is partly anticipated in point 2. If it is meant that Blackhurst (the stone cutter) should be a party plaintiff, we answer—1st. The covenant to pay him is personal to the respondents. 2d. He is not a party to the contract because provided for in it.

IX. The objection, that the defendant Thomson was not the owner of the property at the time the second notice of lien was given as required by law, has been anticipated in points 3 and 4.

X. The order of Judge DALY at special term should be affirmed with costs.

By THE COURT. INGRAHAM, FIRST J.—The defendants demurred to both causes, of action stated in the plaintiffs' complaint.

The first cause of action as stated in the complaint is undoubtedly defective in itself in not showing any cause of action against Fitch and Wilcox. It avers that Thomson was the owner, that he made the contract with the plaintiffs, that they did the work under the contract amounting in value to a specified sum, and that they filed the lien as required by law. There is

Sinclair *v.* Fitch.

nothing in all this statement that shows that Fitch and Wilcox have any interest or are subject to any liability which justifies the plaintiff in making them parties defendants.

Unless the plaintiffs can avail themselves of the allegations in the statement of the second cause of action, they cannot succeed in holding those defendants responsible.

By the 167th section of the Code, provision is made for uniting several causes of action. But the same section requires that each cause of action must be separately stated. Is the cause of action against Fitch and Wilcox as to the first claim so stated? It seems to me there can be no doubt on this question. There is in it no statement whatever against these defendants; nothing which, if the statement of that claim stood alone, would show any warrant for making them defendants; and if demurred to for that cause the demurrer should have been sustained. If there is no such allegation in the statement of that cause of action, the defect cannot be remedied by referring to the second. If any such rule of construction should be adopted, the provisions of the 167th section, requiring a separate statement of each cause of action, would be a nullity. The causes of action should be stated so distinctly and separately, that each one by itself, and unconnected with the other, may show a good cause of action against the defendants. 1 do not intend to be understood as saying that a plaintiff may not, preliminarily to a statement of the causes of action, make those general averments as to the case, which are applicable to both statements, so that each one with the preliminary averments would be perfect in itself. But he cannot, in order to benefit the first statement, refer to matters set out in the second.

The statement of the second cause of action is I think also defective. It avers a claim for work done under a contract with Thomson; that Thomson conveyed the premises to the other defendants, on the 13th December, 1855, subject to the payment of the last mentioned sum of money, of which the defendants are charged with notice. It also avers that the notice to create the lien was filed on the 8th April, 1856, long after the defendants, Fitch and Wilcox, became purchasers. This is

Sinclair *v.* Fitch.

not sufficient under the lien law to show the liability of those de-fendants. When they became the purchasers there was no notice filed to create a lien and of course there existed no legal claim upon the property for which the defendants' interest therein could be held liable. They took the property discharged from any such lien, and the subsequent filing of the notice did not create a lien for which their interest could be made liable.

If the allegation of the defendants' purchase subject to the pay-ments of certain moneys, is made out, the defendants might be made liable therefor in a proper action; but in a proceeding under the lien law we have repeatedly held, the only remedy is against the specific property subject to the lien, and no liabi-lity of the owner can be enforced in an action brought under that statute, beyond his interest in the land itself. The land having been conveyed before any such lien existed and the defendants not having had any work done thereon since the purchase, there is no cause of action shown against them under the lien law.

The case of *Marquat* v. *Marquat*, 2 Kernan, 236, and *Lewis* v. *Varnum*, decided in this court in December, 1856,(*a*) are

(*a*) NOTE BY REPORTER.—The prayer of the complaint, in the case of *Lewis* v. *Varnum*, was, that the defendant account for certain certificates of stock and for the proceeds thereof in his hands, and upon the accounting pay to the plaintiff such proceeds, less the amount of certain notes of the plaintiff's assignor, one Brown. The notes had been given by Brown to one How, and the certificates deposited as collateral security for the notes. The court, at special term, INGRAHAM, FIRST J., presiding, held, that as the defendant was not the pledgee, but purchased the secu-rities from How, and there had been no privity between the defendant and Brown, the former was under no obligation to account to the latter's assignee (the plaintiff), as prayed for in the complaint.

It appearing, however, that there had been no demand of payment of the notes, and no notice to Brown of an intention to sell the securities, and that the transfer by How was with knowledge, on the part of the defendant, of the rights of the pledgor; the plaintiff was allowed to take judgment for the value of the securities as though the action had been in the nature of an action of *tort*.

The amount of the recovery was fixed at the par valuation of the certificates, the defendant having received their face on surrendering them to the corporations by which they were originally issued. *Henry P. Fessenden* and *Benjamin W. Bonney* appeared for the plaintiff; *Henry A. Mott, Washington Murray* and *Samuel A. Foote*, for the defendants.

Sinclair *v.* Fitch.

referred to as authority for the principle that if the complaint shows any cause of action giving a different remedy from that asked for in the complaint, the court shall grant any relief which the facts warrant.

That would be so, if the action had been in the ordinary form, but the principle cannot be applied to a proceeding under the lien law.

That proceeding is commenced by filing a notice, is intended to foreclose a lien, and cannot be used for any other purpose than such as the statute contemplates. (*Foster* v. *Poillon*, 2 E. D. Smith, 556 ; *Quimby* v. *Sloan*, ib. 594.)

The order appealed from must be reversed and judgment ordered for the defendants on the demurrer, with leave to the plaintiffs to amend on payment of costs.

Ordered accordingly.

# INDEX.

## A

### ABATEMENT, PLEAS IN.

See ASSIGNMENT, 9.
    MARINE COURT, 10, 26, 36.
    PLEADING, 14, 31, 34.

### ACCOUNT.

See ACTION, 45, 46.
    INJUNCTION, 4.
    JURISDICTION, 10.
    REFEREES, &c., 6, 7.

### ACTION.

1. An action on the case in the nature of deceit, will lie for a false warranty on a sale of goods, if the warranty be express; although assumpsit is, in modern times, the more usual remedy. *Fowler* v. *Abrams*, 1

2. In such an action, it is not necessary to allege or prove that there was fraud on the part of the seller. It is enough to aver and establish the warranty, and that the warranty is false. *Id.*

3. If fraud be averred, it is not necessary that it should be proved to entitle the plaintiff to maintain the action. *Id.*

4. Therefore, where the plaintiff averred that the defendant, "by falsely and fraudulently warranting a horse sold by him to the plaintiff," &c. (in the ancient form of declaration in actions on the case for a false warranty), and, on the trial, proved an express warranty and that it was false; *held*, that he was entitled to recover, although the jury found specially, that there was no fraud. *Id.*

5. Under such circumstances, the plaintiff cannot issue an execution against the person of the defendant. *Id.*

6. Whether, in an action on the case in the nature of deceit, for a false warranty, where the *scienter* is averred and established, the measure of damages will be confined strictly to the difference in value? *Quere.* *Id.*

7. Under the present system of practice in this state, several promissors can be proceeded against in one action, and a joint judgment recovered. It *seems*, therefore, that, where the defendants are declared against as joint promissors, and the evidence shows that the promise was not made jointly, but by each defendant separately, the variance between the pleading and proof would be disregarded or cured by allowing an amendment, where their liabilities, as between themselves, would not be altered by this form of recovery against them. *Downing* v. *Mann*, 36

8. Where a person expressly allowed the use of his name, as a member of a committee of arrangements for a ball to be given by an association, and subscribed to some of the preliminary expenses, but took no further part, and did not attend the ball; it was *held*, that he was not liable for the cost of a supper provided for the occasion without his knowledge or consent. *Id.*

693

9. The provision in the act for the incorporation of religious societies, that the salary of a minister shall be paid out of the revenues of the church, is directory as to the manner of payment, and should be complied with; but if the trustees neglect such application of the revenues, the minister may recover his salary by action against the corporation. *Ebaugh* v. *The German Reformed Church*, 60

10. When a railroad company are duly authorized to lay their track in one of the streets of the city, they are not, at all events and without proof of negligence or want of skill and reasonable care, liable for accidents which may be caused thereby. Proof of such negligence or want of care or skill in the manner of constructing or maintaining the track, are necessary, as between them and persons exercising the common right of passing and repassing through or across the street. *Mazetti* v. *The New York & Harlem Railroad Co.*, 98

11. The statute of 1847, amended in 1849, giving a right of action, for the benefit of the next of kin, to the representatives of a deceased person whose death has been caused by the negligence of a company or individual, does not limit the amount to be recovered to the loss of those only whose relations to the deceased were such as to give them a legal right to some pecuniary benefit which would result from a continuance of the life. *Per* WOODRUFF, J., *dub.* *Oldfield* v. *The New York and Harlem Railroad Co.*, 103

12. The action may be maintained and damages recovered in any case wherein, if death had not ensued, the injured party himself could have prosecuted; and the principle of liability on the part of the defendant is the same. *Id.*

13. These statutes, being intended to secure care on the part of persons and corporations, engaged in a business which endangers the lives of citizens, should be so construed as to give full effect to their object, and punish those who are guilty of negligence. *Per* INGRAHAM, FIRST J. *Id.*

14. Where a parol agreement to grant a license to insert beams into the walls of a house, has been acted upon, by inserting the beams, the party who has obtained the permission is liable upon his promise to pay therefor, on the ground that the contract has been partly executed, and thereby made binding, although the grant were such as the statute requires to be in writing. *McLarney* v. *Pettigrew*, 111

15. A plaintiff in the Marine or a justice's court, may be nonsuited on his own election, or by reason of incompetency or insufficiency of evidence. Such judgment of nonsuit is no bar to a second action. *Peters* v. *Diossy*, 115

16. Where the case has been submitted to the justice and he reserves his decision, it is no longer within the power of the plaintiff to submit to a nonsuit, nor of the justice to grant it. If, after such submission and reservation, he gives judgment in favor of the defendant, in the form of a judgment of nonsuit, the same can nevertheless be pleaded in bar of a second action. *Id.*

17. Where the defendant employed the plaintiff to assist him in finding and procuring the purchase of a house—acknowledged that the services rendered were useful, and promised to pay for them; *held*, that he was liable therefor, on a *quantum meruit*, although it was not proved distinctly, that the purchase was consummated by the plaintiff's agency. *Goldsmith* v. *Obermeier*, 121

18. One who employs another to aid in making a purchase, is liable to pay for the services rendered, although the purchase is not consummated, unless from the terms of the employment—either expressed or inferable from the circumstances—success was a condition of the claim for compensation. *Id.*

19. The holder of a mortgage upon personal property, payable on demand, may maintain an action against a person wrongfully taking the property and disposing thereof, without proving

a demand of the debt due on the mortgage. *Id.*

20. The interest of the mortgagor may be subject to a levy and sale. Whether an officer who sells the property absolutely, will be liable as a wrongdoer? *Quere.* (See *note a.*) *Id.*

21. The verdict of a jury in one of the inferior courts, may be pleaded in bar of another action, although no judgment is entered thereon. *Kane* v. *Dulex*, 127

22. The plaintiff, in such case, cannot, after verdict, elect to be nonsuited, and then maintain another action for the same cause. *Id.*

23. The *pendency* of another action, in favor of the defendant against the plaintiff, for the recovery of damages for breach of contract, will not prevent a recoupment of the same damages by way of defence to a subsequent action, brought by the plaintiff against such defendant upon the same contract. *Naylor* v. *Schenck*, 135

24. *It seems*, that the rule in regard to set off is the same—viz., that the pendency of a prior action for a defendant's claim does not prevent his using it as a set off, even if his prior action has progressed to a verdict. *Id.*

25. *It seems*, that it is no objection to a plea of set off, that the defendant has brought an action against the plaintiff for the same sum, even although the plaintiff has paid the money into court in such former action. *Id.*

26. A judgment for the defendants in an action on contract against two who are sought to be charged as joint contractors or co-partners, and in which the joint liability is denied, is no bar to an action by the same plaintiff, on the same contract, against one of the former defendants, in which he is charged as sole contractor. *O'Connor* v. *Bagley*, 149

27. If the judgment in the first action was rendered upon a plea of payment, or other defence, which when established would be equally a defence in the second suit; then such judg-ment is conclusive against the plaintiff. *Id.*

28. It is not enough for a plaintiff to prove a state of facts warranting only a conjecture that he may be entitled to recover. He must make out, *primâ facie*, a right of action, and must furnish some criterion whereby some amount of recovery can be fixed without danger of injustice; and where his own evidence leaves in doubt, not only what amount the plaintiff is entitled to, but whether he is entitled to recover at all, his complaint should be dismissed. *Fox* v. *Decker*, 150

29. The act of 1853, article 4, § 5 (session laws of 1853, p. 446), and the act therein referred to—see articles 20 and 21 of act of 1833—(session laws of 1833, p. 13), by which the violation of the ordinances of the corporation of the city of New York is declared a misdemeanor and made punishable by fine or imprisonment, etc., do not operate as a repeal of the penalty given by those ordinances, nor take away the right of the corporation to prosecute a civil action and recover such penalty to their own use. *The Mayor, etc.*, v. *Hyatt*, 156

30. Where a complaint sought to rescind a contract of sale on the ground that the defendant, "by false and fraudulent representations and with intent to defraud the plaintiff of certain goods," had obtained possession thereof, and the evidence revealed a desire on the part of the seller to effect the sale rather than any application by the purchaser to make the purchase; it was *held*, there being no proof of any representations whatever, that the insolvency of the defendant and his neglect to disclose it were insufficient to sustain the action. *Fisher* v. *Conant*, 199

31. A suit for the rescission of a contract of sale, on the ground of fraud, cannot be maintained by the vendor while he retains any part of the consideration received by him from the purchaser. *Id.*

32. So *held*, where the purchaser made a partial payment in cash, and agreed to deliver notes for the balance, and

the vendor filed his complaint without having offered to restore the money. *Id.*

33. Although the right to file a bill in equity and to compel an answer for the mere purpose of a discovery, is abolished; yet power to obtain a discovery is in effect continued by the Code of Procedure. *Merritt* v. *Thompson,* 284

34. This power is reserved in the provisions for the oral examination of the defendant by order, while the right of appeal to the defendant's conscience as to all the grounds of relief, is preserved by the rules of pleading and verification now in force. *Id.*

35. Where the equitable power of the court is invoked to compel an accounting—to enforce a trust—to prevent a fraudulent misapplication of funds, or a misappropriation of property held as trustee; the jurisdiction is as ample now as before the Code. *Id.*

36. A father is entitled to the wages of his minor son. *Wentworth* v. *Buhler,* 305

37. The difference between the liability of the carriers of goods and of passengers, respectively, stated. *Wilkie* v. *Bolster,* 327

38. Where the owner of lots of ground, upon the rear of which are buildings occupied by his tenants, opens a way which they use for their ingress and egress through an adjoining lot, while he is improving the front of the lots by putting up buildings; their visitors have no such license, as visitors, that they can aver a right to pass through the unfinished buildings. *Roulston* v. *Clark,* 366

39. In such case, when the buildings in front are inclosed and new alley ways, which the tenants in the rear begin to use, are arranged along the walls; an obstruction of such alley ways does not give either the tenants or their visitors a right to pass through the houses. *Id.*

40. And accordingly, where the father of two of the tenants, wishing to visit

his daughters in the night season, and finding the alleys along the new houses obstructed, attempted to grope his way through the basement hall and fell down into the cellar; *held,* that he had acted at his peril, and could maintain, for the injury received, no action founded upon the negligence of the mechanics employed in the erection. *Id.*

41. Where a tenant represents that he is the owner of, and sells to a sub-tenant, as personal property, articles upon the demised premises which are a part of the freehold and to which he has no title except as tenant, the purchaser may recover damages arising from the failure of the vendor's title. *Beckmann* v. *Bormann,* 409

42. *So held,* where the property forming the subject of such representation and sale, was a kitchen and chimney connected with the main building upon the premises. *Id.*

43. The subsequent destruction of the property, during the demised term, by a removal for public purposes, or the forfeiture of the lease to the original landlord, may affect the quantum of damages, but does not defeat the vendee's right of action. *Id.*

44. A surety, in an action brought by his principal upon a money demand, may set up as a defence the recovery of a judgment against him, on his contract of suretyship. *Hannay* v. *Pell,* 432

45. Unless he has actually made some payment on account of his liability as such, a surety is not entitled to relief at law, and can only proceed in equity to compel the principal to make payment and the creditor to receive it. *Id.*

46. Yet, under the Code of Procedure, where the principal brings against the surety an action upon an account, in the form of an action at law, and the answer sets up the recovery against the surety of a judgment by the creditor, and prays affirmative relief; the court, when it appears, upon a finding of the facts by referees, or otherwise, that the amount due on the account

is less than the judgment, may adjudge that the plaintiff pay to the creditor the judgment deducting the amount so due from the defendant, and may provide that the payment by the defendant to such creditor, of the amount last mentioned, shall discharge the defendant from the plaintiff's claims. *Id.*

47. Where, upon a sale of goods, the note of a third person is expressly received as payment therefor; it will have legal effect as payment, although the purchaser indorses the note. And the vendor cannot, therefore, maintain an action for the price of the goods, although he produces the note and offers to surrender it upon the trial. *Soffe v. Gallagher,* 507

48. In an action by a constable for the value of goods disposed of by the defendant after an alleged levy thereon under an execution against a third party; it appeared, that the execution debtor and the defendant (the property being in the latter's possession) were present when the officer approached to make the levy; that the goods were within view; that the officer touched a case with his foot, made a memorandum on the execution that he had levied upon a lot of dry goods, and thereupon so stated; and that the defendant, upon being asked by the attorney of the execution creditor what amount had been levied upon, replied "more than double enough to pay the execution." *Held,* that under the circumstances, there was a sufficient levy to sustain the action.— *Watts v. Cleaveland,* 553

49. A demand from one of two persons, in the joint possession of personal property owned by a third person, is sufficient to sustain an action in the nature of trover against both. *Ball v. Larkin,* 555

50. A judgment against the plaintiff, in an action for the price or value of personal property delivered upon an alleged contract of sale, is no bar to an action by the same plaintiff against the same defendant, for damages for the wrongful detention of the property, proceeding upon the ground that, there having been no valid sale, the plaintiff is entitled to its possession. *Id.*

51. An administrator, by indorsing a promissory note, and delivering it before maturity for a debt contracted by the intestate's widow for necessaries furnished to her after the decease, renders himself personally liable, although in making the indorsement he adds to his name the title of administrator. *Sieckman v. Allen,* 561

52. The suspension, by the creditor, in accepting the note, of his right of action against the widow, constitutes a good consideration to support the promise involved in the indorsement. *Id.*

53. In an action for wages as a seaman, proof that the plaintiff worked on board a sloop, and that the defendant was the owner thereof, is *primâ facie* sufficient to sustain a recovery. *Dougherty v. Gallagher,* 570

54. But where the master testified, that he and the defendant were jointly interested in the business wherein the sloop was employed—that by arrangement between them, the defendant was to pay half the dockage and the witness to pay the hands—that the witness engaged the plaintiff and then told him of the arrangement, and that he was to look to the witness for his wages; *held,* that this testimony, being uncontradicted, established a special agreement between the witness and the plaintiff, and formed a bar to the action against the defendant. *Id.*

55. In an action for damages from the bite of a dog, an allegation in the pleadings that the plaintiff, when injured, was in a place where he had no right to be, does not put in issue a claim of title to real property, so as to entitle the plaintiff to costs in a court of record upon recovering less than fifty dollars. (Code, § 304, subd. 1.) *Pierret v. Moller,* 574

56. The fact that the plaintiff, when bitten by the defendant's dog, was trespassing upon the premises of another person, does not affect the right of recovery, and is only material, if at all, upon the question of damages. *Id.*

See AGREEMENT, 20 to 22.
ASSIGNMENT, 7, 8.

BANK CHECKS, 1 to 6.
BROKER, 4, 5.
COMPOSITION DEED, 1.
DEBTOR AND CREDITOR, 7.
FREIGHT, 3 to 5.
HIRE OF CHATTELS, 1 to 3.
JURISDICTION, 8.
LANDLORD AND TENANT, 4 to 6.
LIBEL, 1 to 6.
MALICIOUS PROSECUTION, 1.
MARRIED WOMEN, 1.
MECHANICS' LIEN LAW, 6, 41, 45 to 49.
PARTNERSHIP, 7 to 10.
PLEADING, 23, 26, 27.
POLICE DEPARTMENT, 1 to 4.
PRACTICE, *Parties*, 104 to 106.
PRINCIPAL AND AGENT, 8, 9.
REPLEVIN, 3, 4.
SALES, 13 to 15, 19, 35.
SHERIFF'S SALE, 2 to 6.
TRESPASS, 1 to 3.
TROVER, 3 to 6.
TRUST AND TRUSTEE, 1 to 4.

## ADJOURNMENTS.

See APPEAL, 31.
DISTRICT COURTS, 3, 15, 51, 52.
MARINE COURT, 23, 38, 39.

## ADMINISTRATORS.

See EXECUTORS AND ADMINISTRATORS.

## ADMISSIONS.

See BILLS OF EXCHANGE, &c., 16.
EVIDENCE, 12, 14, 58, 103.
PARTNERSHIP, 11, 12.
PRACTICE, *Provisional Remedies*,
110 to 106.

## ADVANCES.

See REFERENCE AND REFEREES, 6.

## AFFIDAVITS.

See APPEAL, 32, 42, 49.
INJUNCTION, 1.
MECHANICS' LIEN LAW, 108.
PRACTICE, *Affidavit of Merits*, 1.
PRACTICE, *Discovery*, 47.

## AGENCY.

See PRINCIPAL AND AGENT.

## AGREEMENT.

1. In an action against two or more defendants, upon a contract made by or on behalf of a firm or association; if one of the defendants makes default, and others appear and deny their liability, it is sufficient on the trial for the plaintiff to prove that the contract was made by the firm or association, and that the defendants who appear were members thereof, and it is not necessary to prove that the defaulting defendant was also a member. *Downing* v. *Mann*, 36

2. Where two or more persons are declared against upon a joint contract, a judgment cannot be obtained against one, upon proving a *several* liability on his part alone; and if, after verdict, under such circumstances, the court, under § 173 of the Code, can correct the error by striking out the name of the party who appears to have been improperly joined, and conforming the allegations to the facts established, the power should be exercised upon such terms as would certainly protect the rights of the defendant, and if the slightest reason exists to suspect that the verdict was obtained by unfair means—although the evidence in this respect be not such as would warrant setting it aside for that cause alone—an award of a new trial should be the condition of allowing the amendment. *Id.*

3. Under the present system of practice in this state, several promissors can be proceeded against in one action, and a joint judgment recovered. *It seems*, therefore, that, where the defendants are declared against as joint promissors, and the evidence shows that the promise was not made jointly, but by each defendant separately, the variance between the pleading and proof would be disregarded or cured by allowing an amendment, where their liabilities, as between themselves, would not be altered by this form of recovery against them. *Id*

4. Where a person expressly allowed the use of his name, as a member of a committee of arrangements for a ball to be given by an association, and subscribed to some of the preliminary

expenses, but took no further part, and did not attend the ball; it was *held*, that he was not liable for the cost of a supper provided for the occasion without his knowledge or consent. *Id.*

5. A contract with the trustees *de facto* of a religious corporation, in the actual possession of the church edifice, books, records, seal, and all the temporalities of the church, made by a person without knowledge of an illegality in their election, is binding upon the corporation, and will be enforced, although afterwards such election is adjudged to have been illegal. *Ebaugh* v. *The German Reformed Church*, 60

6. Otherwise, if, when the contract is entered into, the illegality shall have been already judicially determined. *Id.*

7. Where the contract is made after the decision of a court of competent jurisdiction that the trustees are legally in office, which decision is afterwards reversed by an appellate tribunal; the presumption is, that the contracting parties acted, intermediate the decision and the reversal, without knowledge of the illegality, and under the belief that the proceedings were legal. And the contract is valid against the corporation, in favor of the party contracted with, although the latter, having been unofficially associated with the trustees before the contract, thereupon becomes, and continues until the reversal, a member of their board. *Id.*

8. A mere license to insert beams into the wall of a house, is not an "interest in lands," the conveyance whereof is required by the statute of frauds, to be in writing. *McLarney* v. *Pettigrew*, 111

9. Where a parol agreement to grant such license has been acted upon, by inserting the beams, the party who has obtained the permission is liable upon his promise to pay therefor, on the ground that the contract has been partly executed and thereby made binding, although the grant were such as the statute requires to be in writing. *Id.*

10. An agreement to labor contained a covenant of forfeiture, in respect to all wages which might be earned and unpaid whenever the party employed should fail to perform; but it was provided, that the forfeiture should not opererate, if his neglect were caused by sickness, and a physician, engaged by the employer, "should certify, that such sickness unfits him to do his work." *Held*, that a written certificate was not required, and it was sufficient that the physician told the laborer and others similarly situated, that they were unfit for work, and must prepare and leave the place where their services had been required. *Lyons* v. *Story*, 113

11. Where a creditor, in consideration of part payment, gives to one of two joint debtors an instrument intended as a separate discharge of him, but which operates to release both; *quere*, whether such joint debtor, by informing his co-debtor that such is in fact the effect of the instrument, violates a stipulation—given by him as a condition of the discharge—to aid, in every way within his power, the collection of the balance from such co-debtor? *Buckingham* v. *Oliver*, 129

12. The *pendency* of another action, in favor of the defendant against the plaintiff, for the recovery of damages for breach of contract, will not prevent a recoupment of the same damages by way of defence to a subsequent action, brought by the plaintiff against such defendant upon the same contract. *Naylor* v. *Schenck*, 135

13. A representation by a debtor, that he knows the note of a third person to be good, in reliance upon which a creditor takes the note and agrees to receive it in payment of a debt, when in fact the maker is insolvent, will relieve the creditor from his agreement, although the maker's insolvency was not known to the debtor when he made the representation. *Galloupeau* v. *Ketchum*, 175

14. Where a defendant agreed, in writing, "to pay B. and H., real estate brokers, fifty dollars commission on purchase by him of two lots, belonging to J. and R., payable on delivery

of deed within thirty days;" *held*, that the contract might fairly be interpreted as admitting the fact of a purchase by the defendant and that commissions were due thereupon. *Beebe* v. *Roberts*, 194

15. Under such circumstances, in the absence of contradictory evidence, the commissions may be recovered without further proof that a purchase has been effected. *Id.*

16. The general statement of a witness, that the deed was tendered in pursuance of the agreement between the parties, is sufficient, *primâ facie*, to sustain a finding that it was delivered within the thirty days. *Id.*

17. Where a complaint sought to rescind a contract of sale on the ground that the defendant, "by false and fraudulent representations and with intent to defraud the plaintiff of certain goods," had obtained possession thereof, and the evidence revealed a desire on the part of the seller to effect the sale rather than any application by the purchaser to make the purchase; it was *held*, there being no proof of any representations whatever, that the insolvency of the defendant and his neglect to disclose it were insufficient to sustain the action. *Fisher* v. *Conant*, 199

18. A suit for the rescission of a contract of sale, on the ground of fraud, cannot be maintained by the vendor while he retains any part of the consideration received by him from the purchaser. *Id.*

19. So *held*, where the purchaser made a partial payment in cash, and agreed to deliver notes for the balance, and the vendor filed his complaint without having offered to restore the money. *Id.*

20. A fraudulent representation, by the lessee of a house, as to the amount paid by him under his lease, will not avoid a contract made by him for hiring to a third person a part of the premises, at a specified rent, it being within the power of the latter to ascertain the value by a personal examination. *Rosenbaum* v. *Gunter*, 203

21. A party cannot avoid a contract on the ground that he was induced to enter into it by fraudulent representations, where, after discovering the fraud, he has continued for a length of time in the enjoyment of any benefit derived from such contract. *Id.*

22. Accordingly, a tenant, having continued in possession of the demised premises for months after learning the fraudulent character of statements whereby he was led to become a party to the lease, cannot obtain a rescission thereof by reason of the fraud. *Id.*

23. Where a wife is designated by the husband as his agent for the management of his property during his absence, repairs made by a tenant under authority granted by her and for which she promised to pay, are chargeable to the landlord. *Id.*

24. In an action against a surety for the rent of the premises, moneys paid by the tenant for repairs which the landlord or his agent agreed to pay by deduction from the rent, are in effect payments on account of the rent, and as such may be allowed to the surety in reduction of the plaintiff's recovery. *Id.*

25. A party cannot, on the ground that a contract is invalidated by fraud in procuring its execution, avoid a part, and at the same time retain a benefit derived from another part thereof. *Clarkson* v. *Mitchell*, 269

26. Where the owner of a lot contracted with a carpenter for the erection of a house, including, among other details, the painting and the sashes and blinds, and an action was brought against the owner by a third person to recover for the sashes and blinds— such third person alleging that he made them by the owner's request and on his credit; *held*, that proof that the owner employed the person who did the painting, was not competent, and did not tend to establish the employment, in like manner, of a different person from the original contractor, to make the sashes and blinds. *Fuller* v. *Clark*, 302

27. A parol agreement, first, by the plaintiff to let a store to the defendant—secondly, by the defendant to employ the plaintiff as clerk—and thirdly, to sell and deliver goods to the latter, the whole forming one entire parol contract; may be proved and insisted upon, notwithstanding that a bill of sale of the goods is afterwards made, which contains nothing in relation to the hiring of the store or the agreement to employ the plaintiff as clerk. Such bill of sale will be deemed a part performance of the parol contract, and not a reducing of the whole contract to writing. *Wentworth* v. *Buhler*, 305

28. Where a chattel is hired for a limited period, as for a day or a night, at a definite price, and the hirer detains it for a much longer period, he is not liable, in an action brought to recover for the use of the chattel, to be charged at the same rate for every day or period during which the detention may continue after the specified time has elapsed. *Russell* v. *Roberts*, 318

29. The recovery should be limited to the value of the use for the entire period of the detention. *Id.*

30. And where the detention continued for several months, and a computation by the day amounted to many times the whole value of the chattel; *held*, that the price agreed upon for one day's use was not the standard of value for such entire period. *Id.*

31. Where an owner, being about to build a house, enters into a contract with a mechanic or manufacturer, to furnish the window caps, and the latter agrees to do so, of a "good quality for the place" in which they are to be set, but it appears, after the building is erected, that the caps, or a portion thereof, are imperfect and unskillfully made; the owner is not precluded by the mere fact that the caps are set in the walls, from claiming, in an action brought against him for the labor and materials, a suitable deduction on account of their imperfections. *Norris* v. *La Farge*, 375

32. Setting the caps is not necessarily an acceptance of the work as a full performance of the agreement. *Id.*

33. The maxim, *caveat emptor*, applicable to sales of goods, does not apply to such a case. *Id.*

34. Where the defendant, upon the plaintiff entering into a contract with a firm for his employment as a clerk, executed to him an agreement guaranteeing that his salary at certain rates agreed upon should amount to $15 per week; *held*, that the defendant's agreement was not within the statute of frauds, and was valid although the consideration was not expressed therein. *Douglass* v. *Jones*, 551

35. The guarantor being a silent partner in the firm, the modification by another partner, acting for the firm, of the contract of employment with the plaintiff, would not discharge the defendant from his guaranty. *Id.*

36. The rule that where there has been a substantial compliance, the contractor may enforce payment with a reasonable reduction, does not apply to cases where the work is abandoned in a grossly unfinished state. *Cunningham* v. *Jones*, 651

37. It appeared, that the owner of land agreed with a contractor to erect thereon an addition to a building; that no stipulation was made in respect to the price or terms of payment, except that the construction should be accomplished by day's work; that the contractor proceeded therewith, but absconded before the building was inclosed. *Held*, that the contract was entire, and that the contractor was not entitled to any payment from the owner for the value of the part performance. *Id.*

38. A voluntary payment on account does not alter the legal effect of such a contract, and render the owner liable for the value of the work left unfinished by the contractor. *Id.*

See ASSIGNMENT, 8.
    BAILMENT, 1.
    BILLS OF EXCHANGE, etc., 14.
    BROKER, 4.
    COMPOSITION DEED, 1.

EVIDENCE, 67, 102, 103.
EXECUTORS AND ADMINISTRATORS, 8, 9.
FREIGHT, 3 to 5.
JUDGMENT, 13, 14.
LANDLORD AND TENANT, 17, 20, 21.
MARRIED WOMEN, 1, 3.
MECHANICS' LIEN LAW, 1, 6, 8, 52 to 55.
PARTNERSHIP, 8.
PLEADING, 9.
PRINCIPAL AND AGENT, 6 to 9.
REFERENCE AND REFEREES, 6.
SALES, 1 to 6, 19, 34, 35.
SEAMEN'S WAGES, 2.
SHIPS AND SHIPPING, 1 to 4.
STATUTE OF FRAUDS, 1, 2.
SURETY, 1.
TRUST AND TRUSTEE, 1 to 4.

## ALLOWANCES.

See COSTS, 9 to 11.

## AMENDMENTS.

See APPEAL, 33.
MECHANICS' LIEN LAW, 109.
PLEADING, 20, 32, 33.
PRACTICE, Amendments, 2 to 12.

## ANSWER.

See INJUNCTION, 1.
JUDGMENT, 17.
LANDLORD AND TENANT, 3.
MECHANICS' LIEN LAW, 110.
PRACTICE, Answer, 13 to 18.
PRACTICE, Discovery, 42.
PRACTICE, Provisional Remedies, 110 to 126.
SHERIFF'S SALE, 5.
TRUST AND TRUSTEE, 4.

## APPEAL.

1. A motion by a defendant for a new trial, is not properly a renewal of a motion for a nonsuit. *Downing* v. *Mann*, 36

2. The right to move for a nonsuit never exists after verdict, except when leave is expressly reserved, on the trial, to renew such motion, without being prejudiced by the verdict. *Id.*

3. Giving leave, at the trial, to move for a nonsuit notwithstanding any verdict that may be rendered, is not un-usual in England, and instances of this practice have occurred in this state; although taking a verdict subject to the opinion of the court upon the law is here more common. *Id.*

4. An error of a justice, in receiving evidence of the execution of an instrument without the production of the subscribing witness, is not available to an appellant, unless it appears, from the return, that an objection was taken at the trial. *Ranney* v. *Gwynne*, 59

5. The court has power to allow an amendment of the entry of judgment of affirmance, ordered on appeal from the inferior courts, where erroneously entered through mistake, and the power will be exercised when no injustice is caused thereby. *Bagley* v. *Brown*, 66

6. Where a jury perversely disregard the explicit directions of the court, given to them in the charge; the verdict will be set aside. *Clark* v. *Richards*, 89

7. But if the court can see that full justice can be done, by changing the verdict, so as to conform to the directions, they will permit the party in whose favor the verdict was rendered, to consent to such amendment, and thereby save the expense of a new trial. *Per* WOODRUFF, J. *Id.*

8. Although the court may be of opinion that upon the evidence, as it appears on paper, they should have found differently, they will not, where the evidence is conflicting, set aside the report of a referee upon the facts, unless the evidence against the finding so greatly preponderates, or his finding is so far without evidence in its support, as to warrant the inference of bias, corruption, partiality, or some bad faith or unfairness in the referee, or some mistake in law or in its application to the case. *Mazetti* v. *The N. Y. and Harlem R. R. Co.*, 98

9. The return of a justice of the Marine or a district court, should set forth— when the summons or process was returnable, the day issue was joined, the adjournments, if any, the date of the

trial, and the day whereon judgment was rendered. *Peters* v. *Diossy*, 115

10. Where a defendant, in the Marine Court, moved to dismiss the process, on the ground that he was improperly sued by a short summons, objecting, also, to the form of the summons, the manner in which security was taken upon commencing the action, and the sufficiency of the constable's return; at the same time pleading to the merits and demanding a jury; *held*, that the objections were waived by the plea to the merits, and that the decision of the justice upon the objections could not be reviewed on appeal. *Ingersoll* v. *Gillies*, 119

11. Where a defendant has once appeared in the Marine or one of the justice's courts, and afterwards suffers judgment by default, having mistaken the time to which the cause was adjourned; the 366th section of the Code confers no power upon the appellate court to grant relief. *Williams* v. *McCauley*, 120

12. Where the evidence upon which a plaintiff, in the judgment of the appellate court, is clearly entitled to recover, is uncontradicted and unimpeached, a finding in disregard of the proof will be treated as founded in some erroneous view of the law applicable to the case. *Goldsmith* v. *Obermeier*, 121

13. Where the defendant does not appear on the trial in the court below, the appellate court will not be astute to discover defects in the plaintiff's evidence, especially when it is not claimed that injustice has been done, nor that the appellant has any defence on the merits. *The Mayor, &c.,* v. *Hyatt*, 156

14. All the evidence, documentary and parol, used on the trial in the Marine or a justice's court, should be furnished to the appellate court upon an appeal. *Ogden* v. *Sanderson*, 167

15. It is not, on appeal to this court, a sufficient reason for setting aside a judgment rendered in one of the lower courts by default, that the defendant's failure to appear was caused by his reliance upon the promise of the assignor of the plaintiff (with whom—after receiving notice of the assignment—he was negotiating for a settlement), to stop the proceedings in the suit. *Travis* v. *Bassett*, 171

16. In actions in the Marine Court, applications to open defaults for such a cause should be made in that court. *Id.*

17. The existence of a valid set off against the assignor of the plaintiff, though it might have been used against the assignee, but for which the defendant may still maintain an action against such assignor, does not prove that "manifest injustice has been done" (within the meaning of § 366 of the Code), by a judgment for the plaintiff by default in the Marine Court. *Id.*

18. A defendant who suffers judgment in one of the lower courts, having "failed to appear before the justice," and who shows to this court that "manifest injustice has been done," may "excuse his default," and entitle himself to relief under § 366 of the Code, by showing that he had paid a portion of the demand sued for, and omitted to attend under a mistake respecting the object of the action, supposing the action to be simply for the balance. *Bissell* v. *Dean*, 173

19. When it appears, in an application under that section, that the defendant had made a payment on account of the claim in suit, not credited at the trial, relief will not be withheld on the plaintiff's showing that he had performed services for the defendant other than those sued for, and that therefore the amount sued for is justly due. *Id.*

20. Whether a note is received in payment for goods sold, or to be accounted for if collected, is a question of fact. the determination of which by a justice, upon conflicting and doubtful testimony, will not be interfered with on appeal. *Galloupeau* v. *Ketchum*, 175

21. The mere allegation of other engagements of the defendant or of his

counsel elsewhere, does not constitute a sufficient excuse to justify this court in setting aside a judgment by default rendered in one of the district courts. *Mulhern* v. *Hyde*,          177

22. When, after demanding a jury, the defendant in the Marine Court departs without giving security or submitting to a commitment, it is no ground for a reversal that the court do not order a jury to be summoned, and adjourn the cause for that purpose. *Agreda* v. *Faulberg*,          178

23. Suitable points should be furnished by counsel on the submission of an appeal, and the appellate court be referred to such authorities and statutory enactments as are relied upon by a respondent to sustain a judgment. *Id.*

24. The order entered upon the affirmance, at general term, of an order denying a motion for a new trial on a case made, after verdict, should not include a direction that the judgment, where one has been docketed, be affirmed. *Miller* v. *The Eagle Life and Health Ins. Co.*,          184

25. An affirmance of the judgment is only proper when the judgment itself is the subject of the appeal.          *Id.*

26. Accordingly, after an order denying a motion for a new trial has been affirmed, if the moving party desires a formal affirmance of the judgment in order to carry the cause to the Court of Appeals, he must again bring the case before the general term by appealing from the judgment.          *Id.*

27. Where, after verdict, the defendant took the usual steps to have the cause heard upon a motion for a new trial on a case made, but the plaintiff entered judgment upon the verdict, and served a notice thereof, whereby the thirty days within which an appeal from the judgment must be taken would expire before the final disposition of the motion for a new trial; the court, on an application to vacate the judgment and notice, deeming the case a proper one for a stay of proceedings, allowed the judgment to remain as security to the plaintiff, but set aside the notice.          *Id.*

28. Where a judgment has been opened and a new trial ordered, but the judgment allowed to stand as security, a new judgment may be entered for the amount recovered on the second trial, without reference to the previous judgment.          *Id.*

29. But a plaintiff having obtained a verdict, and having entered judgment thereon pending the defendant's proceedings to obtain, by motion, a new trial on a case made, was allowed at his option, after the affirmance of an order denying a new trial, to vacate the judgment and enter a new one so as to include therein all the costs, or let the judgment remain, and serve a notice thereof, a previous notice given by him, when the judgment was docketed, having been set aside.          *Id.*

30. The mere fact that the defendant in a justice's court "forgot the time of trial," unaccompanied by any circumstances in explanation, is not "satisfactorily excusing" his default, within the meaning of § 366 of the Code, so as to warrant this court in ordering a new trial. *Beebe* v. *Roberts*,          194

31. Whether, where the defendant appears on the return of the summons, and afterwards at successive adjournments, but finally fails to attend on the trial, he "fails to appear before the justice," under the true construction of § 366 of the Code? *Quere. Id.*

32. On appeals from justices' courts, affidavits can only be received, 1, To show the commission of an error in fact in the proceedings, not affecting the merits, and not within the knowledge of the justice; and 2, To excuse default in failing to appear below.          *Id.*

33. Where the record of a judgment entered in a district or a justice's court, appears upon appeal to be plainly erroneous, being in form against two defendants when the return shows that the plaintiff at the trial discontinued his action as to one of them; *quere*, whether this court has power to correct the error by conforming the judgment to the evident intention of the justice? *Fanning* v. *Lent*,          206

34. In any event, a judgment so docketed will not be permitted to stand. *Id.*

35. The exercise of his discretion, by a judge, in granting costs of a motion, will not be reviewed at a general term. *The Merchants' Bank* v. *Mills.* 210

36. An appeal will not lie from an order, until it is entered and the motion papers are filed with the clerk of the court. *Smith* v. *Dodd,* 215

37. The motion papers must be produced to the court upon the hearing of the appeal. *Id.*

38. Where no papers are used, and the motion is made by consent upon mere verbal statements, no appeal can be taken. *Id.*

39. A notice of appeal, to this court from one of the lower courts, cannot be served upon an attorney, where the client resides in the city of New York. *Earll* v. *Chapman,* 216

40. The mere delivery of a notice of appeal to the attorney, where it is not left with him, but is immediately taken back with an understanding that efforts will be made to make service on the party himself, is insufficient, although such party may prove to have been a non-resident. *Id.*

41. *It seems,* that on a motion to dismiss the appeal, proof that the notice has been served upon the attorney will be deemed sufficient *primâ facie,* although the appellant deposes to the respondent's non-residence only upon information and belief, in case there are no circumstances to negative that conclusion. *Id.*

42. Where both parties attended the trial of a cause in one of the district or justice's courts, this court on appeal cannot look beyond the return—original or amended—although the appellant produces affidavits of facts which, had they appeared in the return, would require a reversal of the judgment. *Trust* v. *Delaplaine,* 219

43. A mere opinion of the court, given upon deciding a motion to determine a party's right to costs upon a verdict, is not an order from which an appeal may lie, although such opinion, stating that "plaintiff is entitled to costs," be entered as an order with the clerk at special term. *Snyder* v. *Beyer,* 235

44. In reviewing the charge made by a justice in submitting a case to a jury in one of the lower courts, this court is controlled by the return in determining what instructions the charge contained. *Garrison* v. *Pearce,* 255

45. Where the whole merits have been examined before referees, the court will not reverse a judgment, because there is a variance between the complaint and the proofs in a particular in which the parties have not been misled; but will, on appeal, either disregard the variance, or direct an amendment. *Parsons* v. *Suydam,* 276

46. Where a report of a referee is defective in not stating, with sufficient particularity, the several facts found; the party complaining thereof should apply by motion at special term to have a further report ordered. And where, on appeal from a judgment upon such a report, the appellant's counsel refuses to accept an order which is tendered to him for a further report, the court will not reverse for such imperfection. *Id.*

47. An objection to evidence as incompetent or inadmissible, cannot be raised for the first time in this court, on appeal from the justices' courts. *Rouillier* v. *Wernicki,* 310

48. The rule to be derived from the cases of *Gottsberger* v. *Harned,* 2 E. D. Smith, 128, and *Beebe* v. *Roberts,* 3 *id.,* 194, is, That a defendant, having suffered judgment by default in a justice's court and applying for a new trial under § 366 of the Code, cannot excuse his failure to appear below on the mere unexplained ground that he forgot the return day of the summons; but, That where it clearly appears that his default was occasioned by mistaking the day, from erroneous information or other like cause, this court, in a proper case, may grant relief. *Gardner* v. *Wight,* 334

49. The doctrine, heretofore established by this court, that in order to show "manifest injustice," under that section, the defendant's affidavit—if contradicted by the affidavit of the plaintiff, and especially if the latter be corroborated—must be sustained by one or more witnesses, stated and applied to this case. *Id.*

50. *It seems,* that in an action in which a reference may lawfully be made, the decision of a judge at special term that a reference is proper, rests so far in his discretion, that it is not appealable. *Smith* v. *Dodd,* 348

51. *It seems,* that this court will not reverse the judgment of one of the lower courts, upon a ground not assigned in the notice of appeal. *Damb* v. *Hoffman,* 361

52. Where the facts are correctly found by a referee, the court, on an appeal from the judgment entered upon his report, may disregard his conclusions of law, if erroneous, and may direct the entry of such judgment upon the facts found, as in the opinion of the court should have been recommended by the referee. *Hannay* v. *Pell,* 432

53. Upon a motion for a new trial and upon an appeal from an order made on such motion, the court may review all the proceedings had upon the trial, and consider alleged erroneous rulings, although not formally excepted to, and where there has been, in the charge to the jury, a misdirection which the court perceive may have wrought injustice, a new trial would be ordered, although no exception was taken. *Keyes* v. *Devlin,* 518

54. But on an appeal from a judgment, the hearing thereon is like the former review by a writ of error, and the rulings on the trial and the charge to the jury are only open to examination so far as they were excepted to. *Id.*

55. A general exception to the whole charge and to every part thereof, where the charge embraces many separate propositions, is improper and will not be entertained. *Id.*

56. Where the testimony establishing a

case is direct, unequivocal and consistent, and the witnesses stand unimpeached and uncontradicted, a court or jury cannot unreasonably discredit them; and where the finding of a justice or jury is in conflict with what is sworn to under such circumstances, it will be set aside as against evidence. *Jacks* v. *Darrin,* 558

57. Pending an appeal from the Marine or a district court, when one of the parties to the action is ascertained to be an infant, this court, upon the application of the other party, as well as upon the infant's request, will appoint a guardian *ad litem,* where none has been appointed by the justice. *Fish* v. *Ferris,* 567

58. The practice of submitting motions to a judge at special term, upon oral statements, and then appealing to the general term, condemned. *Pierret* v. *Moller,* 574

59. Where a plaintiff voluntarily brings his suit before the justice of a district wherein neither the plaintiff nor the defendant resides, and goes to trial upon the merits and recovers a judgment against the defendant, though for less than the plaintiff demands, it in no wise appearing on the trial that the parties do not reside within such district; the plaintiff cannot, by appealing from such judgment, require the appellate court to reverse the judgment, upon the ground that the justice had no jurisdiction by reason of such non-residence. *Fairbanks* v. *Corlies,* 582

60. As a general rule, it is only a party who is aggrieved by a judgment, who can reverse it. *Id.*

61. The principles governing the review of the judgments of the district or justices' courts, are not necessarily changed by the provisions of the Code altering the mode in which such review is to be made. *Id.*

62. Where the plaintiff has obtained judgment in a district court, but being dissatisfied with the amount thereof, appeals to this court, and it appears that the judgment was erroneous and invalid, for the want of jurisdiction in

the district court; whether, the defendant having paid the judgment, the limitation upon the prosecution of writs of error in favor of the party recovering the judgment (2 R. S. marg. p. 592, § 3), would furnish a principle for the guidance of the appellate court, and whether § 369 of the Code contemplates restitution in such a case? *Quere.* *Id.*

63. A judgment may be void, and yet the prevailing party stand in such a position in respect thereto, that it cannot be reversed on his appeal. *Id.*

64. An objection to testimony is too late, when made for the first time on appeal. *Id.*

65. If the return is defective, in omitting to note objections taken at the trial, the appellant, by motion, should cause it to be corrected and its omissions supplied. *Id.*

See Assignment, 9, 13.
  Bills of Exchange, &c., 5.
  District Courts, 60.
  Evidence, 38, 42, 56, 58.
  Marine Court, 39.
  Mechanics' Lien Law, 134.
  Practice, *Provisional Remedies*, 115.
  Religious Corporations, 3.

## APPEARANCE.

See Appeal, 11, 13, 15, 18, 31, 32.
  Attorneys and Counsellors, 12, 14.
  District Courts, 22, 59, 60, 62.
  Marine Court, 46, 47 to 49.

## ARREST.

See Practice, *Arrest*, 19, 20.
  Practice, *Provisional Remedies*, 112, 117, 124.

## ASSAULT AND BATTERY.

1. Where, in an action for an assault and battery in striking the defendant, after the plaintiff had rested his case upon the evidence of witnesses who testified to the blow, and after the defendant had called and examined witnesses to disprove the striking, the court refused to permit the plaintiff to call witnesses to prove an alleged admission of the defendant that he struck the plaintiff; *held*, no error. *Silverman* v. *Foreman*, 323

2. In an action for an assault and battery, if it appear that the defendant acted under an honest belief that he was in immediate danger of an assault from the plaintiff, and that self-defence required force to repel such assault; that belief, if induced by the conduct of the plaintiff at the time, but not otherwise, should relieve the defendant from vindictive or exemplary damages. *Keyes* v. *Devlin*, 518

3. Mere words do not amount to an assault, and no words will justify an assault and battery, though they may be proved in mitigation of damages. *Id.*

4. It is the duty of one who is assailed to endeavor to avoid the assault; and an assault cannot be justified as made in self-defence unless the danger of injury is so manifest and pressing that no other reasonable means of self-protection are immediately available. *Id.*

## ASSESSMENTS.

See Landlord and Tenant, 1.

## ASSIGNMENT.

1. A parol promise, made by a debtor upon the request of his creditor, that he will pay for a bill of goods to be delivered to such creditor out or on account of such indebtedness, in consideration of which promise the seller delivers the goods; is a valid promise, and not within the statue of frauds. The parties being all present and assenting, it is tantamount to an assignment *pro tanto*, by the creditor to the seller of the goods, of the amount due by the debtor, assented to by such debtor, and a promise by him to make payment to the assignee. *Phillips* v. *Gray*, 69

2. Where an action is brought upon a *chose in action* not negotiable, in

the name of an assignee thereof, and the defendant seeks to set off a claim in his own favor, he must prove that the claim belonged to him before notice of the assignment. *Soloman* v. *Holt*, 139

3. Whether such set off can be made, if such claim was not both due and payable before notice of the assignment? *Quere.* *Id.*

4. Whether § 112 of the Code of Procedure has not so far altered the Revised Statutes, that in case of such assignment a claim may be set off which did not exist against the assignor at the time of the assignment, but afterwards arose and was acquired by the defendant before notice of such assignment? *Quere.* *Id.*

5. The assignee of a bill of lading, who as such receives the goods, is liable for the freight, although the assignment of the bill of lading was made after the goods were sent to the public warehouse under a general order to discharge the ship. *The N. Y. and Havre Steam Navigation Co.* v. *Young*, 187

6. A claim for damages for goods lost by common carriers may be assigned. *Freeman* v. *Newton*, 246

7. Such an assignment would have been good before the enactment of the Code; although the assignee could not then have maintained an action thereon in his own name. *Id.*

8. The rule is, that claims for damages to property which may be the subject of a contract, and, where the right of recovery would pass, on the death of the party, to his executors or administrators, as assets, may be assigned; although it is otherwise as to torts purely personal and the claim for which dies with the person. *Id.*

9. The defendants, in an action brought by such assignee, having pleaded, in abatement of the action, the nonjoinder of the plaintiff's assignor as a party defendant, and that plea being adjudged bad in the court below—the defendants having pleaded to the merits and gone to trial; *held*, on

appeal, that the matter in abatement was waived by pleading to the merits, and that the decision on the demurrer could not, therefore, be reviewed. *Id.*

10. But, *it seems*, that it is not necessary to make the assignor a party to the suit in such case. *Id.*

11. *It seems*, however, that a court, having power to make a direction for that purpose, might, under some circumstances, order an alleged assignor to be brought in, to protect the defendant against another suit in the name of the assignor, in which the execution of any assignment might be denied by the latter. *Id.*

12. The decisions made by this court—dissenting from the Supreme Court in some of the districts—reaffirmed, to the effect that it is not necessary for an assignee of a cause of action to give notice of an intention to examine his assignor as a witness, under § 399 of the Code, unless the evidence is offered against an assignee or an executor or administrator. (See *note*.) *Id.*

13. The general rule, that this court will not reverse the judgment of a justice's court, where the evidence is conflicting and witnesses contradict each other—although the preponderance of the testimony, as it appears in writing, is against the finding—will be still more strictly applied where the judgment is in the defendant's favor in an action for the detention of personal property, and circumstances warrant the suspicion that the plaintiff's main witness had made a sham sale of the property, for the mere purpose of testifying himself to aid in its recovery. *Wilson* v. *Cook*, 252

14. Where A. lends property to B., and afterwards sells it to C., who thereupon sells it to D., the property being still in the lawful possession of B.; D. cannot maintain an action against B. for an unlawful detention, without proving a demand by himself or by a person authorized to act for him, nor without notice to B. that D. has acquired the title. *Id.*

15. *It seems*, that under § 399 of the

Code, when an assignor of a claim is examined as a witness, to prove the plaintiff's whole case under a complaint founded on a general charge of indebtedness by the defendant, the adverse party may offer himself, not only to prove that no such indebtedness ever existed, but even to prove that it did not exist at the time of suit brought if it had existed before.— *Parsons* v. *Suydam*, 276

16. It is settled, that the purchaser of personal property which is in the possession of a third party, may, after a demand thereof and a refusal to deliver to him, maintain an action for the illegal detention. The vendor, in such case, is not the assignor of a thing in action, within the meaning of § 399 of the Code. He is the vendor of personal property. *McGinn* v. *Worden*, 355

17. The examination of such vendor as a witness for the plaintiff, does not entitle the defendant to offer himself as a witness, under that section. *Id.*

18. Whether in an action against husband and wife, brought by the assignee of a contract or thing in action, if the plaintiff thinks proper to examine his assignor; the wife and the husband (defendants)—or either of them—are not competent witnesses, under § 399 of the Code? *Quere.* *Id.*

19. And whether, by voluntary calling the assignor, the plaintiff does not waive all objections to their competency? *Quere.* *Id.*

20. The acceptance of rent from an assignee of a lease, though acknowledged to have been paid by such assignee and in his own name, does not discharge the original lessee from his covenant to pay the rent thereafter accruing, nor affect the liability of the surety for such lessee. *Damb* v. *Hoffman*, 361

21. Such acceptance of rent from an assignee of the lease, does not bring the case within the rule, that the creation of a new tenancy and substitution of another tenant, under an agreement to that effect, amounts to a surrender,

and discharges the former lessee and his surety. *Id.*

22. The re-delivery and surrender, by the assignee to the assignor, of the written assignment of a claim, and its acceptance by the latter with the mutual understanding that the assignment is thenceforth to be void, operates as an equitable re-assignment of the claim to the original owner, and divests the assignee of his title. *Ball* v. *Larkin*, 555

See APPEAL, 15 to 16.
    BANK CHECKS, 5.
    BILLS OF EXCHANGE, &c., 12, 13.
    INSOLVENT ASSIGNMENT.
    LANDLORD AND TENANT, 30.
    MECHANICS' LIEN LAW, 116, 117.
    SHERIFF'S SALE, 3, 6.

## ASSOCIATIONS.

1. In an action against two or more defendants, upon a contract made by or on behalf of a firm or association; if one of the defendants makes default, and others appear and deny their liability, it is sufficient on the trial for the plaintiff to prove that the contract was made by the firm or association, and that the defendants who appear were members thereof, and it is not necessary to prove that the defaulting defendant was also a member. *Downing* v. *Mann*, 36

2. Where a person expressly allowed the use of his name, as a member of a committee of arrangements for a ball to be given by an association, and subscribed to some of the preliminary expenses, but took no further part, and did not attend the ball; it was *held*, that he was not liable for the cost of a supper provided for the occasion without his knowledge or consent. *Id.*

3. An action for a libel against members of a company or of an association, neither being partners nor persons having a community of pecuniary interest wherein they could sustain damage, cannot be maintained by them jointly. *Giraud* v. *Beach*, 337

4. So held, where the libel consisted of

a newspaper article, charging that members of a certain hose company, without specifying the persons referred to, had committed a theft.          *Id.*

5. In an action commenced by an association of persons to recover damages for a libel; *held,* that it was error to allow, at the trial, the names of several of the original plaintiffs to be stricken out and the substitution of others, without imposing terms or allowing to the defendants any opportunity to prepare for a defence after such change had been made.          *Id.*

See CONSTITUTIONAL LAW, 1, 8.

ASSUMPSIT.

See ACTION, 1, 17, 18.

ATTACHMENT.

See DISTRICT COURTS, 7, 8.
      PRACTICE, *Attachment,* 21 to 25.

ATTACHMENT FOR CONTEMPT.

See PRACTICE, *Provisional Remedies,* 110 to 126.

ATTORNEYS AND COUNSELLORS.

1. Where issue has been joined, in a justice's court, and the cause adjourned for trial, the defendant is not entitled, as a matter of right, to a further adjournment, on the ground that his counsel is engaged in another court. *Ranney* v. *Gwynne,*          59

2. Where application to allow a set off of a judgment is made, in the name of the judgment creditor, by his attorney acting in person on the motion and urging that the set off should be allowed; it is not a sufficient objection to the application that the attorney is interested in the judgment, for in that case he only, and not the adverse party, would be prejudiced by granting the motion. *Bagley* v. *Brown,*          66

3. In an action upon a judgment, brought by the representatives of a deceased judgment creditor; proof of payment
to the attorney of record, made after the death of the plaintiff and before administration was granted on his estate, will not maintain an issue raised by the pleadings of payment to the administrators. *Clark* v. *Richards,*          89

4. An attorney for the plaintiff in a judgment, when called by the defendant on the trial of an issue on *scire facias* to revive the judgment in favor of the plaintiff's representatives, may be permitted to testify to an alleged admission of payment, made to him by his client after judgment recovered, and before execution was issued, while the authority of the attorney to issue execution and to satisfy the judgment continued, and though the communication was made as a guide to him in issuing or withholding the execution. Such a communication is not confidential and privileged. WOODRUFF, J., *dissenting.*          *Id.*

5. To make a communication privileged, so that an attorney may not disclose it, it is not necessary that it should relate to a suit actually pending, if it be made to him in his professional capacity, and while acting in that capacity for the client in the matter to which the communication relates. *Per* WOODRUFF, J.          *Id.*

6. The relation of attorney and client does not for all purposes cease with the entry of judgment. *Per* WOODRUFF, J.          *Id.*

7. Where a summons, issued from a justice's court, in an action for the fees of an attorney and counsel, required "the defendant to answer the complaint of the plaintiff for professional services;" *held,* a sufficient statement of the cause of action. *Bissell* v. *Dean,*          172

8. The mere allegation of other engagements of the defendant or of his counsel elsewhere, does not constitute a sufficient excuse to justify this court in setting aside a judgment by default rendered in one of the district courts. *Mulhern* v. *Hyde,*          177

9. An attorney who assumes to appear for a party in a district or justice's

court, must, if required, prove his authority. *Hirshfield* v. *Landman*, 208

10. A parol authorization is sufficient. *Id.*

11. And the attorney is himself a competent witness to prove it. *Id.*

12. The proper time to require the proof of the attorney's authority, is upon the appearance, before joining issue and going to trial. *Id.*

13. Where an attorney, upon evidence of his authority being demanded, testified that he received such authority from the plaintiff's brother, and that the latter had exhibited to the witness written authority from the plaintiff himself to collect the claim; *held*, that although this testimony was inadmissible without producing the writing, and without proving its execution by the plaintiff, yet, that having been introduced without objection at the time, it was sufficient to establish the attorney's right to prosecute. *Id.*

14. The authority of an attorney or agent to appear for a party in the Marine or District Courts, must be demanded, if at all, at the time of the appearance. *Treadwell* v. *Bruder*, 597

See APPEAL, 23, 39 to 41.
   EVIDENCE, 38.
   PRACTICE, *Default*, 39.

## AUCTIONEERS.

1. Where, at an auctioneer's sale, the vendor underbids and thereby enhances the price, to a purchaser, the latter may refuse to complete the purchase. *Trust* v. *Delaplaine*, 219

## B

## BAGGAGE.

See COMMON CARRIERS, 3, 5 to 7.

## BAILMENT.

1. In the absence of an express agreement, one who takes the custody of goods, not being an innkeeper or warehouseman, nor under any legal duty to accept and keep them, has no lien thereon for storage. *Rivara* v. *Ghio*, 264

2. *It seems*, that where a recovery of damages is sought, for goods actually lost, it is not necessary, in any case, to prove a tender of the storage. *Id.*

3. A bailee without hire, although bound to only ordinary diligence in keeping property intrusted to him, cannot, on the ground of mistake, evade responsibility for the loss thereof, where such loss was occasioned by gross carelessness on the part of some person in sending the property away from the defendant's premises, and the defendant offers no evidence of any care or diligence on his own part. *Id.*

See COMMON CARRIERS, 1 to 7.

## BANKS AND BANKERS.

See BILLS OF EXCHANGE, &c., 1 to 5.

## BANK CHECKS.

1. A check is a bill of exchange, within the meaning of the statute authorizing a recovery upon a lost note or bill of exchange, upon tendering a bond of indemnity and giving parol proof of the contents. (2 R. S. part iii. chap. vii. title iii. p. 652, marg. p. 406.) *Jacks* v. *Darrin*, 548

2. The statute above referred to applies although the bill, note, or check be lost after the action is commenced. *Id.*

3. The dictum to the contrary cited in 2 Cowen's Treatise (2d ed. p. 184), is erroneous. *Id.*

4. Under the statute respecting lost notes and bills of exchange, a party is entitled to recover upon a lost check, upon proving the contents thereof and tendering a bond of indemnity at the trial, although the loss occurred subsequently to the commencement of the action. (2 R. S. 652, marg. p. 406.) *Jacks* v. *Darrin*, 557

5. Where a check, payable at a future day, is passed away by the payee, before its maturity, and the indorsee, having, upon taking the check, paid the full amount thereof, transfers it to the plaintiff; the latter is entitled to recover against the drawer, irrespective of any equities existing between the original parties.                    *Id.*

6. The drawer of a check, by stopping its payment at the bank, relieves the holder, as against him, from any necessity of presentment and notice of non-payment.                    *Id.*

### BILL OF LADING.

See FREIGHT, 1.

### BILLS OF EXCHANGE AND PROMISSORY NOTES.

1. As a general rule, in order to charge an indorser upon a note payable at a bank, a presentment must be made during the regular banking hours. *The Newark India Rubber Manufacturing Co.* v. *Bishop*,                    48

2. If the bank is open, a presentment after business hours is sufficient, if made to a clerk in the bank, who examines the account of the maker, and replies that there are no funds. *Per* INGRAHAM, FIRST J. But, *Per* WOODRUFF, J., *contra*, where the holder neglects to make presentment until after the usual business hours, he runs the hazard of finding at the bank a person *authorized to pay it*, if the funds are provided, or authorized to refuse, if they are not.                    *Id.*

3. Where the funds are in fact provided at the bank, and after the usual time for the presentment of notes, and after business hours, the note is presented there to a clerk, who has no control of the funds, and who therefore cannot pay it, the presentment is not sufficient, although the clerk, not being aware that the funds were there, answered to the demand, "No funds," and although, if he had been aware that the funds were provided, he might have certified on the note that it was good. The sole reason why the note

was not paid, being, that it was not presented within the usual hours nor to a person having authority to pay, the presentment is not sufficient. *Per* WOODRUFF, J., INGRAHAM, FIRST J., *contra*.                    *Id.*

4. Where an indorser, who keeps an account in the bank wherein the note is payable, leaves a check with the teller, directing him to take up the note; the teller is his agent and not the agent of the bank, and the bank is not answerable, in case the teller, having placed the check in his private drawer, neglects to take up the note.                    *Id.*

5. Where the circumstances referred to in the above notes, were proved to a jury, and the case was submitted to them upon a charge containing no error to the prejudice of the indorser, and it further appeared that the latter, upon learning that the note was not presented until after business hours, withdrew the money provided by him for the payment of the note; it was *held*, that a verdict found against him should not be set aside, although the presentment should be deemed so defective, as to entitle him to relief in case he could have suffered any injury by such defect.                    *Id.*

6. In the case of fraud, the note of a third person, received by a creditor in payment of a note of his debtor, discharges the latter, although, at the time of the transaction, such third person without the knowledge of the parties, is insolvent and has absconded. *Heidenheimer* v. *Lyon*,                    54

7. In declaring against the maker of a promissory note, it is necessary for the plaintiff if he do not adopt the form prescribed by § 162 of the Code, to aver, as matters of fact—The making of the note by the defendant; the promise contained therein or implied in such making; the facts which constitute the plaintiff the holder, promissee, or person entitled to the benefit of the promise; and the breach by the defendant of the promise contained in the note or thereby implied. *Keteltas* v. *Myers*,                    83

8. An averment, that "the said sum is

due and owing to the plaintiff," is a statement of an inference of law, and is not a sufficient averment of a breach of the promise by the defendant. *Id.*

9. If a party seeks to avail himself of the short mode of declaring, given by § 162 of the Code, he must conform to its requirements. He must not only give a copy of the note, but must state that the sum specified is due on the note and from the defendant. *Id.*

10. A representation by a debtor, that he knows the note of a third person to be good, in reliance upon which a creditor takes the note and agrees to receive it in payment of a debt, when in fact the maker is insolvent, will relieve the creditor from his agreement, although the maker's insolvency was not known to the debtor when he made the representation. *Galloupeau* v. *Ketchum,* 175

11. Whether a note is received in payment for goods sold, or to be accounted for if collected, is a question of fact, the determination of which by a justice, upon conflicting and doubtful testimony, will not be interfered with on appeal. *Id.*

12. Where the plaintiff, in a suit upon a promissory note, brings by his attorney the note into court, duly indorsed to himself or in blank, and the attorney testifies that he brought the action by the plaintiff's direction, and the alleged transferrer testifies that he did transfer the note to the plaintiff, and received his note as the consideration for the transfer; the court on appeal will hold the finding of a justice, that the plaintiff is the real party in interest and the owner of the note, conclusive, notwithstanding there is some evidence that such transfer was in bad faith and for the mere purpose of having a suit brought in the plaintiff's name to prevent a defence thereto. *Westervelt* v. *Allcock,* 243

13. Whether a defendant, under an answer containing only a "general denial," may set up and prove that the plaintiff who brings the note indorsed in blank into court, is a merely nomi-

nal holder, having no real interest therein? *Quere.* *Id.*

14. In an action by the payee of a promissory note against the maker, it is a good defence that the note was given to the plaintiff to renew a previous note, upon the plaintiff's agreement to return it to the maker, and that the plaintiff has never returned such previous note. *Miller* v. *Ritz,* 253

15. In such case the note sued upon is in the plaintiff's hands without consideration. *Id.*

16. It will not aid the plaintiff, under such circumstances, to admit that he holds both notes in his possession. *Id.*

17. Where the sheriff levies under a warrant of attachment, upon the property of the plaintiff, including a promissory note in the course of prosecution; the levy cannot be set up by the defendant in a supplemental answer, as a defence in bar of the plaintiff's recovery upon the note. *Russell* v. *Ruckman,* 419

18. The sheriff may continue the action in the name of the plaintiff, or may be substituted for him at his election. *Id.*

19. *It seems,* that payment to the sheriff, after the attachment is levied, may be a good defence. *Id.*

20. The execution of an attachment upon a promissory note may be made, by leaving with the holder a certified copy of the warrant, "with a notice showing the property levied on," pursuant to § 235 of the Code. *Id.*

21. Where, upon a sale of goods, the note of a third person is expressly received as payment therefor; it will have legal effect as payment, although the purchaser indorses the note. *Soffe* v. *Gallagher,* 507

22. The vendor is bound in such case to treat the purchaser as an indorser of commercial paper, subject to the rights and liable only to the responsibilities of such an indorser. *Id.*

23. And the vendor cannot, therefore,

maintain an action for the price of the goods, although he produces the note and offers to surrender it upon the trial.      *Id.*

24. Where, however, there is an absolute and unqualified guarantee by the purchaser that the note shall be paid; *it seems*, that the note will not operate as payment, but only as a security extending the term of credit.      *Id.*

25. In an action for services rendered, proof that the plaintiff, many months after the alleged cause of action arose, gave to the defendant a promissory note which was paid at maturity, is sufficient, *primâ facie*, to defeat a recovery. *Duguid* v. *Ogilvie*,    527

26. But the presumption thus raised in the defendant's favor, may be removed *by evidence that the note was given* for a temporary loan obtained by the plaintiff from the defendant.    *Id.*

27. A check is a bill of exchange, within *the meaning of the statute authorizing a recovery* upon a lost note or bill of exchange, upon tendering a bond of indemnity and giving parol proof of the contents. (2 R. S. part lii. chap. vii. title iii. p. 652, marg. p. 406.) *Jacks* v. *Darrin*,    548

28. The statute above referred to applies, although the bill, note, or check be lost after the action is commenced.      *Id.*

29. The dictum to the contrary cited in 2 Cowen's Treatise (2d ed. p. 184), is erroneous.      *Id.*

30. Under the statute respecting lost notes and bills of exchange, a party is entitled to recover upon a lost check, upon proving the contents thereof, and tendering a bond of indemnity at at the trial, although the loss occurred subsequently to the commencement of the action. (2 R. S. p. 652, marg. p. 406.) *Jacks* v. *Darrin*,    557

31. Where a check, payable at a future day, is passed away by the payee, before its maturity, and the indorsee, having, upon taking the check, paid the full amount thereof, transfers it to the plaintiff; the latter is entitled

to recover against the drawer, irrespective of any equities existing between the original parties.      *Id.*

32. The drawer of a check, by stopping its payment at the bank, relieves the holder, as against him, from any necessity of presentment and notice of non-payment.      *Id.*

33. An administrator, by indorsing a promissory note and delivering it before maturity for a debt contracted by the intestate's widow for necessaries furnished to her after the decease, renders himself personally liable, although in making the indorsement he adds to his name the title of administrator. *Sieckman* v. *Allen*,    561

34. The suspension, by the creditor, in accepting the note, of his right of action against the widow, constitutes a good consideration to support the promise involved in the indorsement. *Id.*

See DISTRICT COURTS, 23.
     MECHANICS' LIEN LAW, 6, 7.

# BOND.

See CONSTITUTIONAL LAW, 8.
     DEMURRAGE, 1.

# BROKER.

1. Where a defendant agreed, in writing, " to pay B. and H., real estate brokers, fifty dollars commission on purchase by him of two lots, belonging to J. and R., payable on delivery of deed within thirty days;" *held,* that the contract might fairly be interpreted as admitting the fact of a purchase by the defendant, and that commissions were due thereupon. *Beebe* v. *Roberts*,    194

2. Under such circumstances, in the absence of contradictory evidence, the commissions may be recovered without further proof that a purchase has been effected.      *Id.*

3. The general statement of a witness, that the deed was tendered in pursuance of the agreement between the parties, is sufficient, *primâ facie*, to

sustain a finding that it was delivered within the thirty days. *Id.*

4. A broker, engaged to procure a loan, is entitled to his commissions, when he finds a lender with the money in readiness, and obtains a consent to the loan with an approval of the proposed security; although the lender, upon examining the title, finds the property encumbered, and therefore refuses to consummate the transaction. *Holly* v. *Gosling,* 262

5. Where a broker, employed to negotiate a loan, failed therein and committed the negotiation to another broker, who procured the lender's assent to such loan, and was thereupon accompanied by the borrower in calling upon counsel engaged by the lender to investigate the title of the property offered as security; *held,* that the borrower, having adopted the acts ·by accepting the services of the broker last mentioned, thereby ratified the transfer, and became liable to him for the customary commission, notwithstanding the absence of any original employment. *Id.*

### BUILDING.

1. Where an owner, being about to build a house, enters into a contract with a mechanic or manufacturer, to furnish the window caps, and the latter agrees to do so, of a " good quality for the place " in which they are to be set, but it appears, after the building is erected, that the caps, or a portion thereof, are imperfect and unskillfully made; the owner is not precluded by the mere fact that the caps are set in the walls, from claiming, in an action brought against him for the labor and materials, a suitable deduction on account of their imperfections. *Norris* v. *La Farge,* 375

2. Setting the caps is not necessarily an acceptance of the work as a full performance of the agreement. *Id.*

3. The maxim, *caveat emptor*, applicable to sales of goods, does not apply to such a case. *Id.*

4. When a party is engaged in erecting a house upon his own ground, he is, not, nor are his workmen, bound to put up temporary partitions about stairways, nor floors across beams, nor use other means, for the protection of intruders who voluntarily enter the unfinished house and venture to walk across the beams or around its well holes. *Roulston* v. *Clark,* 366

5. Where the owner of lots of ground, upon the rear of which are buildings occupied by his tenants, opens a way which they use for their ingress and egress through an adjoining lot, while he is improving the front of the lots by putting up buildings; their visitors have no such license, as visitors, that they can aver a right to pass through the unfinished buildings. *Id.*

6. In such a case, when the buildings in front are inclosed, and new alley ways, which the tenants in the rear begin to use, are arranged along the walls ; an obstruction of such alley ways does not give either the tenants or their visitors a right to pass through the houses. *Id.*

7. And accordingly, where the father of two of the tenants, wishing to visit his daughters in the night season, and finding the alleys along the new houses obstructed, attempted to grope his way through the basement hall and fell down into the cellar; *held,* that he had acted at his peril, and could maintain, for the injury received, no action founded upon the negligence of the mechanics employed in the erection. *Id.*

See MECHANICS' LIEN LAW, 6.

### C

### *CAPIAS AD SATISFACIENDUM.*

See PRACTICE, *Arrest,* 19.

### CASE, ACTION ON THE.

See ACTION, 1 to 6.

CHARITY.

See FIRE DEPARTMENT, 5, 6.

CHARTER.

See CORPORATION ORDINANCES, 1 to 3.

CHARTER PARTY.

See SHIPS AND SHIPPING, 7 to 9.

CHATTEL MORTGAGE.

See MORTGAGE, 1 to 12.

CHATTELS.

See ACTION, 41 to 43.
    EVIDENCE, 66.
    HIRE OF CHATTELS, 1 to 3.
    MORTGAGE, 1 to 12.
    SHERIFF'S SALE, 1 to 7.
    TROVER, 10, 11.

CHECKS.

See BANK CHECKS, 1 to 6.
    BILLS OF EXCHANGE, &c., 4.

CHOSE IN ACTION.

See ASSIGNMENT, 2, 22.
    EVIDENCE, 67.
    PRACTICE, Attachment, 23, 25.

CLAIM AND DELIVERY.

See REPLEVIN, 1, 4.
    TROVER, 3, 4.

CLERICAL ERRORS.

See MORTGAGE, 4 to 7.

CLERKS.

See EVIDENCE, 50, 51.
    SURETY, 4, 5.

COLLISION.

See STEAMBOATS, 1 to 5.

COMMISSIONS.

See BROKER, 1 to 5.

COMMON CARRIERS.

1. A claim for damages for goods lost by common carriers may be assigned. *Freeman* v. *Newton*,                          246

2. Such assignment would have been good before the enactment of the Code; although the assignee could not then have maintained an action thereon in his own name.                          *Id.*

3. A notice, posted in the carriers' steamboat, that the owners will not be liable for baggage, unless it is checked, will not (if it be of any force) protect them against the claim of a passenger who delivered his baggage to their agent on board the boat, and demanded a check, but failed to obtain it because the person whose duty it was to give checks was not present.                          *Id.*

4. The difference between the liability of the carriers of goods and of passengers, respectively, stated.  *Wilkie* v. *Bolster*,                          327

5. A package delivered by a traveller to be carried on a railroad to his place of destination, is not necessarily to be considered baggage, if not so represented by him, and if not so put up as to deceive.  *Butler* v. *The Hudson River Railroad Co.*,                          571

6. Although, under such circumstances, the package is carried by the same train that conveys the passenger, the railroad company may charge freight thereon, and the company will be liable, as common carriers, for the loss thereof, where no fraud is practised by the owner by representing or treating it as baggage.                          *Id.*

7. The delivery to the railroad carrier, is not sufficiently proved by stating that the package was given to a man

at the station supposed by the witness to be a baggage master. The supposed officer or agent of the company to whom the delivery is made, must be proved to be such, or circumstances be given showing a sufficient delivery, such, for instance, as that the article was placed in a car or other depository provided for the reception of like property. *Id.*

See PASSENGER CARRIERS, 1 to 5.

## COMPANIES.

See ASSOCIATIONS, 1 to 5.

## COMPLAINT.

See MECHANICS, LIEN LAW, 102 to 106, 130.
PLEADING, 20.
PRACTICE, *Complaint*, 26 to 31.
PRACTICE, *Provisional Remedies*, 121.
TRUST AND TRUSTEE, 1, 2, 4.

## COMPOSITION DEED.

1. A composition deed, executed by the plaintiff and other creditors of the defendant, contained a covenant to accept fifty per cent. of the defendant's indebtedness, in three installments payable in about six, twelve, and eighteen months, and that such payments should be in full satisfaction and discharge of all claims; but a condition was annexed, requiring that three-fourths, in amount, of the creditors, should sign the deed, without any limitation, however, as to the time within which the signatures must be procured. To this was added a covenant, by the plaintiff, that if the defendant paid the installments as they respectively became due, he would not prosecute the defendant for the debt until the expiration of the term limited for the payments, and that until then the instrument should operate as an absolute discharge of all suits commenced or which might be commenced against him. *Held*, that the defendant had the full period thus limited, within which to obtain the signatures of three-fourths of his credi-

tors, and that the instrument was a good defence to an action brought by the plaintiff within the stipulated time, if the installments were paid as they became payable by the terms of the composition deed. *Harvier* v. *Guion*, 76

## CONSIDERATION.

See BILLS OF EXCHANGE, &c., 15.
EVIDENCE, 38.
EXECUTORS AND ADMINISTRATORS, 9.
SALES, 17, 18.
STATUTE OF FRAUDS, 5.

## CONSTABLE.

See EVIDENCE, 86.

## CONSTITUTIONAL LAW.

1. The act of the legislature of the state of New York, passed February 21, 1837, requiring the agent, in the city of New York, of any individual or association, not incorporated by the laws of this state, although incorporated by any other state or country, to pay an annual tax, into the state treasury, as a condition to the right of effecting insurances against losses by fire; and the acts subsequently passed, requiring under a penalty such payment to be made to the treasurer of the Fire Department, for the use and benefit thereof, are constitutional. (*a*) (See Session Laws of 1837, chap. 30, p. 21; 1849, chap. 178, p. 239; 1857, chap. 548, vol. 2, p. 171; 1 R. S. marg. p. 714.) *The Fire Department* v. *Noble*, 441

2. These statutes do not contravene the section of the constitution of the United States, which provides that the citizens of each state shall be entitled to all the privileges and immunities of citizens of the United States. (U. S. Cons. Art. IV. § 2, subd. 1.) *Id.*

3. Nor the provisions of the United States and state constitutions, forbidding the taking of private property for public use, without just compensation. (Amendts. to U. S. Cons. Art. V.; Cons. of N. Y. Art. I. § 6.) *Id.*

(*a*) Affirmed in the Court of Appeals.

4. It is competent for the legislature to regulate the business of insurance within this state—to designate who may effect insurances—to prohibit agencies therefor—and to impose the payment of a tax as a condition to the establishment of such agencies.     *Id.*

5. A tax upon a particular business may be levied for the benefit of a public charity, and may be made payable directly to the persons having the direction thereof.     *Id.*

6. The constitutional questions determined by this court in the case of *The Fire Department* v. *Noble (ante,* p. 440), having been raised and reärgued upon this appeal, while that case was under advisement, the court adopt and affirm in this cause, the decision therein made.   *The Fire Department* v. *Wright,*     453

7. Accordingly, *held,* that the acts of the legislature of the state of New York—requiring the agent of every individual or association of individuals, not incorporated by the laws of this state, to pay to the treasurer of the Fire Department in the city of New York, for the use of that department, a percentage of all premiums of insurance effected by such agent in that city, and prohibiting him from making or procuring such insurance until he shall have executed a bond with sureties, securing an accounting of premiums received, and the payment of the percentage—are valid and constitutional enactments.     *Id.*

See MECHANICS' LIEN LAW, 1 to 4.

## CONSTRUCTION OF STATUTES.

See CORPORATION ORDINANCES, 1 to 3.

## CONTRACT.

See AGREEMENT.
    MECHANICS' LIEN LAW, 1, 6, 8, 52 to 55.

## CONVEYANCING.

See BROKER, 1 to 3.
    MECHANICS' LIEN LAW, 95, 97, 98.
    STATUTE OF FRAUDS, 3, 4.

## CORPORATION ORDINANCES.

1. The act of 1853, article 4, § 5 (session laws of 1853, p. 446), and the act therein referred to—see articles 20 and 21 of the act of 1833—session laws of 1833, p. 13), by which the violation of the ordinances of the corporation of the city of New York is declared a misdemeanor and made punishable by fine or imprisonment, etc., do not operate as a repeal of the penalty given by those ordinances, nor take away the right of the corporation to prosecute a civil action and recover such penalty to their own use. *The Mayor, &c.* v. *Hyatt,*     156

2. The right to pass by-laws, affix penalties, and sue for and recover them to their own use, is given to the corporation of the city of New York by their charter, and it is not to be deemed taken away by implication, unless the state law is irreconcilably inconsistent with the right thus given.     *Id.*

3. If the state law and the whole ordinance can stand together, the former oes not repeal the latter.     *Id.*

## CORPORATIONS.

See CONSTITUTIONAL LAW, 1, 7.
    RELIGIOUS CORPORATIONS, 1 to 4.

## COSTS.

1. A plaintiff having obtained a verdict, and having entered judgment thereon pending the defendant's proceedings to obtain, by motion, a new trial on a case made, was allowed at his option, after the affirmance of an order denying a new trial, to vacate the judgment and enter a new one so as to include therein all the costs, or let the judgment remain and serve a notice thereof, a previous notice given by him, when the judgment was docketed, having been set aside. *Miller* v. *The Eagle Life and Health Ins. Co.,*     184

2. A judgment entered by default in favor of a foreign corporation, will not be set aside for the failure to file security for costs before the com-

mencement or during the pendency of the action. *The Merchants' Bank* v. *Mills,* 210

3. Where no security has been filed, the defendant waives his right thereto by neglecting to move before judgment. *Id.*

4. *It seems,* that where a judgment by default has been opened, and the defendant let in to defend, an order to compel the security would be granted. *Id.*

5. The exercise of his discretion, by a judge, in granting costs of a motion, will not be reviewed at a general term. *Id.*

6. A mere opinion of the court, given upon deciding a motion to determine a party's right to costs upon a verdict, is not an order from which an appeal may lie, although such opinion, stating that "the plaintiff is entitled to costs," be entered as an order with the clerk at special term. *Snyder* v. *Beyer,* 235

7. Where an action is in substance the former action of waste, the complaint alleging a forfeiture and praying for a recovery of possession; the title to real estate appears by the pleadings to be in question, and the Marine and Justices' Courts have no jurisdiction. Accordingly, where such an action is presented and such a complaint filed in this court, the plaintiff is entitled to costs upon obtaining a verdict for damages, although the forfeiture and eviction be waived at the trial and the recovery be for less than fifty dollars. *Id.*

8. In an action for damages from the bite of a dog, an allegation in the pleadings that the plaintiff, when injured, was in a place where he had no right to be, does not put in issue a claim of title to real property, so as entitle the plaintiff to costs in a court of record upon recovering less than fifty dollars. (Code, § 304, subd. 1.) *Pierret* v. *Moller,* 574

9. A percentage, by way of extra costs, upon the recovery in an action under the mechanics' lien law, cannot be allowed, where the damages, in default of the defendant to answer, have been assessed under a writ of inquiry. *Randolph* v. *Foster,* 648

10. Where no issue is joined upon the pleadings, a proceeding to determine the amount of the plaintiff's recovery is not a "trial," within § 308 of the Code. *Id.*

11. The power to grant an extra allowance, where "a trial has been had," in an action "for the recovery of money," is abolished by the amendments to which § 308 of the Code was subjected, in the act of April 17, 1857. (Laws of 1857, vol. 2, chap. 723, p. 558.) (*Note.*) *Id.*

### COUNTER CLAIM.

See PRACTICE, *Counter Claim,* 32.

### COVENANT.

See COMPOSITION DEED, 1.
    LANDLORD AND TENANT, 1, 2, 4, 5, 19, 21.
    WAGES, 1.

### CROSS EXAMINATION.

See EVIDENCE, 43, 44, 51.

### CROTON WATER.

See LANDLORD AND TENANT, 1.

### D

### DAMAGES.

1. Whether, in an action on the case in the nature of deceit, for a false warranty, where the *scienter* is averred and established, the measure of damages will be confined strictly to the difference in value? *Quere. Fowler* v. *Abrams,* 1

2. In an action for a breach of covenant, an averment in the complaint of the *amount* of damages is not the

proper subject of a denial. It is not issuable matter, and the defendant does not admit the amount alleged, by neglecting to deny it. *Hackett* v. *Richards*, 13

3. The denial should be of the breach; for it follows as matter of law, that if the covenant is broken, the plaintiff is entitled to damage, and if not, that he is not so entitled. The amount is not traversable, and must be proved, whether denied or not. *Id.*

4. *It seems*, that even on default, the amount of damage must be proved, or the plaintiff take judgment for a merely nominal sum. *Id.*

5. In an action, by the owners of a steamboat, against the owners of another boat, for negligence producing a collision; the plaintiffs cannot recover as damages the probable loss of profits which they might have realized from a return trip from a place, whither their boat was bound when injured by the collision. *Hunt* v. *The Hoboken Land Improvement Co.*, 144

6. It is not enough for a plaintiff to prove a state of facts warranting only a conjecture that he may be entitled to recover. He must make out, *primâ facie*, a right of action, and must furnish some criterion whereby some amount of recovery can be fixed without danger of injustice; and where his own evidence leaves in doubt, not only what amount the plaintiff is entitled to, but whether he is entitled to recover at all, his complaint should be dismissed. *Fox* v. *Decker*, 150

7. In an action for injuries to a horse and wagon by negligently driving against them, no special damage being alleged in the complaint; *held*, that a question put to a witness, "Whether the plaintiff hired another horse," unconnected with evidence that his own horse was rendered in any degree useless by the injuries, was inadmissible. *Aberhall* v. *Roach*, 346

8. In an action for an assault and battery, if it appear that the defendant acted under an honest belief that he was in immediate danger of an assault from the plaintiff, and that self-defence

required force to repel such assault; that belief, if induced by the conduct of the plaintiff at the time, but not otherwise, should relieve the defendant from vindictive or exemplary damages. *Keyes* v. *Devlin*, 518

9. Mere words do not amount to an assault, and no words will justify an assault and battery, though they may be proved in mitigation of damages. *Id.*

10. Whether the amount recovered by the owners of the vessel, against the consignees of the goods, in an action for demurrage, forms a rule of damage in an action by the latter against a purchaser charged with delay in unlading? *Quere. Gillespie* v. *Durand*, 531

See ACTION, 41, 43.
AGREEMENT, 30.
ASSIGNMENT, 6, 8.
BAILMENT, 2.
INJUNCTION, 2.
MALICIOUS PROSECUTION, 2, 3.
NEGLIGENCE, 2 to 4, 6, 9.
PASSENGER CARRIERS, 3.
PLEADING, 30.
PRACTICE, *Recoupment*, 127.
TROVER, 11.

## DEBTOR AND CREDITOR.

1. In the absence of fraud, the note of a third person, received by a creditor in payment of a note of his debtor, discharges the latter, although, at the time of the transaction, such third person, without the knowledge of the parties, is insolvent and has absconded. *Heidenheimer* v. *Lyon*, 54

2. A receipt may be explained. *Ranney* v. *Gwynne*, 59

3. A parol promise, made by a debtor upon the request of his creditor, that he will pay for a bill of goods to be delivered to such creditor out or on account of such indebtedness, in consideration of which promise the seller delivers the goods, is a valid promise, and not within the statute of frauds. *Phillips* v. *Gray*, 69

4. The parties being all present and as-

senting, it is tantamount to an assignment *pro tanto*, by the creditor to the seller of the goods, of the amount due by the debtor, assented to by such debtor, and a promise by him to make payment to the assignee. *Id.*

5. Where a debtor, upon the presentation to him of a bill for clothing, struck out one item, and wrote after it, "Never got it;" *held*, sufficient to warrant the inference that he received and was chargeable with the other articles enumerated therein. *Power* v. *Root*, 70

6. A composition deed, executed by the plaintiff and other creditors of the defendant, contained a covenant to accept fifty per cent. of the defendant's indebtedness, in three installments, payable in about six, twelve, and eighteen months, and that such payments should be in full satisfaction and discharge of all claims; but a condition was annexed, requiring that three-fourths, in amount, of the creditors, should sign the deed, without any limitation, however, as to the time within which the signatures must be procured. To this was added a covenant, by the plaintiff, that if the defendant paid the installments as they respectively became due, he would not prosecute the defendant for the debt until the expiration of the term limited for the payments, and that until then the instrument should operate as an absolute discharge of all suits commenced or which might be commenced against him. *Held*, that the defendant had the full period thus limited, within which to obtain the signatures of three-fourths of his creditors, and that the instrument was a good defence to an action brought by the plaintiff within the stipulated time, if the installments were paid as they became payable by the terms of the composition deed. *Harvier* v. *Guion*, 76

7. The defendants, being indebted to a non-resident, against whose property an attachment was issued, in New York, at the suit of one of his creditors, were served with a copy of the warrant; and afterwards, judgment having been entered and execution issued, paid to the sheriff the amount

of their said indebtedness. *Held*, that the payment having been made by the defendants without compulsory process, and after notice to them of an assignment by the debtor of all his property before the attachment issued, was a voluntary payment, affording them no protection from liability to the assignee. *Lyman* v. *Cartwright*, 117

8. Whether property incapable of manual delivery is attached, where the sheriff simply serves a copy of the warrant, without making and returning "an inventory" under § 232 of the Code, and without giving a "notice showing the property levied on," under § 235? *Quere.* *Id.*

9. Where A. and B. were jointly and severally liable to C. for the sum of two hundred dollars; *held*, that a receipt signed by C., acknowledging the payment by A. of one hundred dollars, "in full of his obligation," did not operate to release or discharge *either* of the joint obligors. *Buckingham* v. *Oliver*, 129

10. Where a creditor, in consideration of part payment, gives to one of two joint debtors an instrument intended as a separate discharge of him, but which operates to release both; *quere*, whether such joint debtor, by informing his co-debtor that such is in fact the effect of the instrument, violates a stipulation—given by him as a condition of the discharge—to aid, in every way within his power, the collection of the balance from such co-debtor? *Id.*

11. Where an action is brought upon a *chose in action* not negotiable, in the name of an assignee thereof, and the defendant seeks to set off a claim in his own favor, he must prove that the claim belonged to him before notice of the assignment. *Solomon* v. *Holt*, 139

12. Whether such set-off can be made, if such claim was not both due and payable before notice of the assignment? *Quere.* *Id.*

13. Whether § 112 of the Code of Procedure has not so far altered the Re-

vised Statutes, that in case of such assignment a claim may be set off which did not exist against the assignor at the time of the assignment, but afterwards arose and was acquired by the defendant before notice of such assignment? *Quere.* *Id.*

14. A judgment for the defendants in an action on contract against two who are sought to be charged as joint contractors or co-partners, and in which the joint liability is denied, is no bar to an action by the same plaintiff, on the same contract, against one of the former defendants, in which he is charged as sole contractor. *O'Connor* v. *Bagley,* 149

15. If the judgment in the first action was rendered upon a plea of payment, or other defence, which when established would be equally a defence in the second suit; then such judgment is conclusive against the plaintiff. *Id.*

16. A representation by a debtor, that he knows the note of a third person to be good, in reliance upon which a creditor takes the note and agrees to receive it in payment of a debt, when in fact the maker is insolvent, will relieve the creditor from his agreement, although the maker's insolvency was not known to the debtor when he made the representation. *Galoupeau* v. *Ketchum,* 175

17. Whether a note is received in payment for goods sold, or to be accounted for if collected, is a question of fact, the determination of which by a justice, upon conflicting and doubtful testimony, will not be interfered with on appeal. *Id.*

See BANK CHECKS, 1 to 6.
BILLS OF EXCHANGE, &c., 17 to 20.
BROKER, 1 to 3.
EVIDENCE, 12 to 14, 46, 85, 86.
EXECUTORS AND ADMINISTRATORS, 8, 9.
FOREIGN CORPORATION, 1.
LANDLORD AND TENANT, 19 to 21.
MECHANICS' LIEN LAW, 17, 18, 98.
MORTGAGE, 3 to 12.
PARTNERSHIP, 7 to 16.
PRACTICE, *Discovery,* 42 to 50.

PRACTICE, *Provisional Remedies,* 110 to 126.
SALES, 12, 19, 22 to 24, 26, 35.
SHERIFF'S SALE, 1 to 7.
SURETY, 1 to 5.
TROVER, 10, 11.

## DECEIT.

See ACTION, 1 to 6.
TROVER, 11.

## DEFAULT.

See APPEAL, 18, 21, 30 to 32, 48, 49.
MARINE COURT, 17.
MORTGAGE, 9 to 11.
PRACTICE, *Default,* 34 to 39.

## DEFENCES.

See APPEAL, 13, 17.
BILLS OF EXCHANGE, &c., 14.
COMPOSITION DEED, 1.
EVIDENCE, 74, 75.
JUDGMENT, 13 to 15, 17.
LANDLORD AND TENANT, 3.
MECHANICS' LIEN LAW, 5, 119 to 133.
PRACTICE, *Attachment,* 21 to 25.
PRACTICE, *Default,* 34 to 39.
PRACTICE, *Recoupment,* 127.
PRACTICE, *Set Off,* 128 to 135.
SALES, 22 to 24.
TROVER, 11.

## DEMAND.

See REPLEVIN, 2.
TROVER, 1, 5.

## DEMURRER.

See MECHANICS' LIEN LAW, 130.
PARTNERSHIP, 11.
PRACTICE, *Demurrer,* 40, 41.
TRUST AND TRUSTEE, 1, 2, 4.

## DELIVERY.

See ASSIGNMENT, 22.
COMMON CARRIERS, 7.
DEMURRAGE, 1 to 3.

## DEMURRAGE.

1. A party who purchases goods arriving in bond, is not liable for demurrage of the vessel wherein they were transported to this port, for detention occurring before the vendor obtains from the custom house a permit for the delivery.   *Gillespie* v. *Durand*, 531

2. The purchaser may refuse to receive the goods until the proper papers are obtained from the custom house, without incurring any liability for demurrage, although the removal of the goods might have been sooner effected by the illegal consent of a subordinate government officer.   *Id.*

3. Whether the amount recovered by the owners of the vessel, against the consignees of the goods, in an action for demurrage, forms a rule of damage in an action by the latter against a purchaser charged with delay in unlading?   *Quere.*   *Id.*

## DEMURRER.

See MECHANICS' LIEN LAW, 130.
PARTNERSHIP, 11.
PRACTICE, *Demurrer*, 40, 41.
TRUST AND TRUSTEE, 1, 2, 4.

## DEVIATION.

See SHIPS AND SHIPPING, 1, 2.

## DISCOVERY.

See PRACTICE, *Discovery*, 42 to 50.

## DISTRICT COURTS.

1. *It seems*, that where a process, in the Marine or District Courts, is issued against a defendant by a fictitious name, and is returned served by copy; it must appear that the summons was left at the residence or place of business of the person whose real name may afterwards be inserted as defendant, in case he does not appear on the return day. *Heidenheimer* v. *Lyon*, 54

2. Where a return from the Marine Court certified that the defendant did not appear in the cause, that no pleadings were put in, and that the justice received a statement of facts from the attorneys of the respective parties, whereon he rendered judgment, without examining any witnesses; *held*, that the judgment could not be sustained.   *Id.*

3. Where issue has been joined, in a justice's court, and the cause adjourned for trial, the defendant is not entitled, as a matter of right, to a further adjournment, on the ground that his counsel is engaged in another court. *Ranney* v. *Gwynne*, 59

4. An error of a justice, in receiving evidence of the execution of an instrument without the production of the subscribing witness, is not available to an appellant, unless it appears, from the return, that an objection was taken at the trial.   *Id.*

5. The court has power to allow an amendment of the entry of judgment of affirmance, ordered on appeal from the inferior courts, where erroneously entered through mistake, and the power will be exercised when no injustice is caused thereby. *Bagley* v. *Brown*, 66

6. Such amendment of an erroneous entry, not in any way affecting the merits of the judgment of affirmance, may be directed by a single judge at special term.   *Id.*

7. The Code provides, that on filing a transcript of a judgment of the Marine or Justices' Courts, the same shall be enforced in the same manner as, and "be deemed," a judgment of this court. *It seems*, therefore, that the same power exists *to* allow a set off of such a judgment. as of a judgment originally entered in this court. *Id.*

8. A plaintiff in the Marine or a justice's court, may be nonsuited on his own election, or by reason of incompetency or insufficiency of evidence. *Peters* v. *Diossy*, 115

9. In either case the nonsuit must be

directed at the trial; or, *it seems,* when the cause is submitted to a jury, before the coming in of the verdict. *Id.*

10. Such judgment of nonsuit is no bar to a second action. *Id.*

11. Where the case has been submitted to the justice and he reserves his decision, it is no longer within the power of the plaintiff to submit to a nonsuit, nor of the justice to grant it. *Id.*

12. If, after such submission and reservation, he gives judgment in favor of the defendant, in the form of a judgment of nonsuit, the same can nevertheless be pleaded in bar of a second action. *Id.*

13. The return of a justice of the Marine or District Court, should set forth— when the summons or process was returnable, the day issue was joined, the adjournments, if any, the date of the trial, and the day whereon judgment was rendered. *Id.*

14. Where a defendant in the Marine Court, moved to dismiss the process, on the ground that he was improperly sued by a short summons, objecting, also, to the form of the summons, the manner in which security was taken upon commencing the action, and the sufficiency of the constable's return; at the same time pleading to the merits and demanding a jury; *held,* that the objections were waived by the plea to the merits, and that the decision of the justice upon the objections could not be reviewed on appeal. *Ingersoll* v. *Gillies,* 119

15. Where a defendant has once appeared in the Marine or one of the justices' courts, and afterwards suffers judgment by default, having mistaken the time to which the cause was adjourned; the 366th section of the Code confers no power upon the appellate court to grant relief. *Williams* v. *McCauley,* 120

16. Where the evidence, upon which a plaintiff, in the judgment of the appellate court, is clearly entitled to recover, is uncontradicted and unimpeached, a finding in disregard of the

proof will be treated as founded in some erroneous view of the law applicable to the case. *Goldsmith* v. *Obermeier,* 121

17. The Marine Court of the city of New York must render judgment within four days after a cause is finally submitted, or it loses jurisdiction; and a judgment rendered after the lapse of the four days will be reversed. *Kane* v. *Dulex,* 127

18. The amendatory act of April 7, 1857, appears to have left the law unchanged in this respect. (*Note.*) *Id.*

19. *It seems,* that where the case is tried by a jury, and a verdict for the defendant has been rendered, the omission of the court to render judgment thereon will not deprive him of the benefit of the verdict in his favor. *Id.*

20. Such verdict may be pleaded by him in bar of another action, although no judgment is entered thereon. *Id.*

21. The plaintiff in such case, cannot, after verdict, elect to be nonsuited, and then maintain another action for the same cause. *Id.*

22. Whether a defendant, in a district or justice's court, appears and denies the complaint, or does not appear at all, the plaintiff "must prove his case." (Code, § 64, subd. 8.) *Jones* v. *Pridham,* 155

23. Accordingly, where the plaintiff, in an action against the indorser of a note, merely proves the making of the note and the indorsement thereof, without showing demand of payment and notice of non-payment; he is not entitled to recover. *Id.*

24. Where the defendant does not appear on the trial in the court below, the appellate court will not be astute to discover defects in the plaintiff's evidence, especially when it is not claimed that injustice has been done, nor that the appellant has any defence on the merits. *The Mayor* v. *Hyatt,* 156

25. All the evidence, documentary and parol, used on the trial in the Marine

or a justice's court, should be furnished to the appellate court upon an appeal. *Ogden* v. *Sanderson,* 167

26. It is not, on appeal to this court, a sufficient reason for setting aside a judgment rendered in one of the lower courts, by default, that the defendant's failure to appear was caused by his reliance upon the promise of the assignor of the plaintiff (with whom—after receiving notice of the assignment—he was negotiating for a settlement), to stop the proceedings in the suit. *Travis* v. *Bassett,* 171

27. In actions in the Marine court, applications to open defaults for such a cause should be made in that court. *Id.*

28. The existence of a valid set off against the assignor of the plaintiff, though it might have been used against the assignee, but for which the defenant may still maintain an action against such assignor, does not prove that "manifest injustice has been done" (within the meaning of § 366 of the Code), by a judgment for the plaintiff by default in the Marine Court. *Id.*

29. Where a summons, issued from a justice's court, in an action for the fees of an attorney and counsel, required "the defendant to answer the complaint of the plaintiff for professional services;" *held,* a sufficient statement of the cause of action. *Bissell* v. *Dean,* 172

30. It is only required in such statement, to show a cause of action over which the court below has jurisdiction. *Id.*

31. A defendant who suffers judgment in one of the lower courts, having "failed to appear before the justice," and who shows to this court that "manifest injustice has been done," may "excuse his default," and entitle himself to relief under § 366 of the Code, by showing that he had paid a portion of the demand sued for, and omitted to attend under a mistake respecting the object of the action, supposing the action to be simply for the balance. *Id.*

32. When it appears in an application under that section, that the defendant had made a payment on account of the claim in suit, not credited at the trial; relief will not be withheld on the plaintiff's showing that he had performed services for the defendant other than those sued for, and that therefore the amount sued for is justly due. *Id.*

33. Whether a note is received in payment for goods sold, or to be accounted for if collected, is a question of fact, the determination of which by a justice, upon conflicting and doubtful testimony, will not be interfered with on appeal. *Galoupeau* v. *Ketchum,* 175

34. The mere allegation of other engagements of the defendant or of his counsel elsewhere, does not constitute a sufficient excuse to justify this court in setting aside a judgment by default rendered in one of the district courts. *Mulhern* v. *Hyde,* 177

35. The mere fact that the defendant in a justice's court "forgot the time of trial," unaccompanied by any circumstances in explanation, is not "satisfactorily excusing" his default, within the meaning of § 366 of the Code, so as to warrant this court in ordering a new trial. *Beebe* v. *Roberts,* 194

36. Whether, where the defendant appears on the return of the summons and afterwards at successive adjournments, but finally fails to attend on the trial, he "fails to appear before the justice," under the true construction of § 366 of the Code? *Quere. Id.*

37. On appeals from justices' courts, affidavits can only be received, 1, To show the commission of an error in fact in the proceedings, not affecting the merits, and not within the knowledge of the justice; and 2, To excuse default in failing to appear below. *Id.*

38. Where the record of a judgment entered in a district or justice's court, appears upon appeal to be plainly erroneous, being in form against two defendants when the return shows that the plaintiff at the trial discontinued his action as to one of them;

*quere*, whether this court has power to correct the error by conforming the judgment to the evident intention of the justice? *Fanning* v. *Lent*, 206

39. In any event, a judgment so docketed will not be permitted to stand. *Id.*

40. A notice of appeal, to this court from one of the lower courts, cannot be served upon an attorney, where the client resides in the city of New York. *Earll* v. *Chapman*, 216.

41. The mere delivery of a notice of appeal to the attorney, where it is not left with him, but is immediately taken back with an understanding that efforts will be made to make service on the party himself, is insufficient although such party may prove to have been a non-resident. *Id.*

42. *It seems*, that on a motion to dismiss the appeal, proof that the notice has been served upon the attorney will be deemed sufficient *primâ facie*, although the appellant deposes to the respondent's non-residence only upon information and belief, in case there are no circumstances to negative that conclusion. *Id.*

43. Where both parties attended the trial of a cause in one of the district or justice's courts, this court on appeal cannot look beyond the return—original or amended—although the appellant produces affidavits of facts which, had they appeared in the return, would require a reversal of the judgment. *Trust* v. *Delaplaine*, 219

44. Where an action is in substance the former action of waste, the complaint alleging a forfeiture and praying for a recovery of possession, the title to real estate appears by the pleadings to be in question, and the Marine and Justices' Courts have no jurisdiction. *Snyder* v. *Beyer*, 235

45. Objection to the manner of the service of the summons in the Marine and Justices' Courts, is matter in abatement only, and is waived by pleading to the merits. *Miln* v. *Russell*, 303

46. Whether the summons may be served

by a person under the age of twenty-one years? Quere. *Id.*

47. In the Marine and District or Justices' Courts, a plaintiff may present his cause of action in as many aspects as he can, if they are not inconsistent with each other, and all exhibit causes of action which may be joined. *Wentworth* v. *Buhler*, 305

48. An objection to evidence as incompetent or inadmissible cannot be raised for the first time in this court, on appeal from the justices' courts. *Rouillier* v. *Wernicki*, 310

49. The rule to be derived from the cases of *Gottsberger* v. *Harned*, 2 E. D. Smith, 128, and *Beebe* v. *Roberts*, *ante*, 194, is, That a defendant, having suffered judgment by default in a justice's court and applying for a new trial under § 366 of the Code, cannot excuse his failure to appear below on the mere unexplained ground that he forgot the return day of the summons; but, That where it clearly appears that his default was occasioned by mistaking the day, from erroneous information or other like cause, this court, in a proper case, may grant relief. *Gardner* v. *Wight*, 334

50. The doctrine, heretofore established by this court, that in order to show "manifest injustice," under that section, the defendant's affidavit—if contradicted by the affidavit of the plaintiff, and especially if the latter be corroborated—must be sustained by one or more witnesses, stated and applied to this case. *Id.*

51. Where, after commencing the trial, the justice, upon the application of the plaintiff, opposed by the defendant, adjourned the cause for thirteen days, in consequence of the absence of a witness; *held*, that the adjournment was illegal and rendered further proceedings void. *Aberhall* v. *Roach*, 345

52. The provisions of the latest laws relative to adjournments in these courts, referred to in connection with former statutes, and with decisions on the subject. (*Note.*) *Id.*

53. *It seems*, that this court will not reverse the judgment of one of the lower courts, upon a ground not assigned in the notice of appeal. *Damb* v. *Hoffman*, 361

54. Whether a supplemental answer can be filed in the Marine and District or Justices' Courts? *Quere.* *Russell* v. *Ruckman*, 419

55. Pending an appeal from the Marine or a District Court, when one of the parties to the action is ascertained to be an infant, this court, upon the application of the other party, as well as upon the infant's request, will appoint a guardian *ad litem*, where none has been appointed by the justice.— *Fish* v. *Ferris*, 567

56. The application will be heard at special term. *Id.*

57. The appointment, however, in the absence of any special cause for immediate action, will not be made until the return is filed. *Id.*

58. The district court consolidation act, of April 13, 1857, prescribes the mode of appointing guardians in those courts. (See Laws of 1857, vol. 1, chap. 344, §11, p. 710.) (*Note.*) *Id.*

59. Where a plaintiff voluntarily brings his suit before the justice of a district wherein neither the plaintiff nor the defendant resides, and goes to trial upon the merits and recovers a judgment against the defendant, though for less than the plaintiff demands, it in no wise appearing on the trial that the parties do not reside within such district; the plaintiff cannot, by appealing from such judgment, require the appellate court to reverse the judgment, upon the ground that the justice had no jurisdiction by reason of such non residence. *Fairbanks* v. *Corlies*, 582

60. A judgment so obtained is not, as to the plaintiff, procured contrary to the meaning and intent of the statute requiring suits in the district or justices' courts, to be brought in the district wherein one of the parties resides; and if otherwise, the plaintiff is so far precluded by his own voluntary acts,

that he cannot have a reversal on appeal. *Id.*

61. See 2 Revised Laws of 1813, § ciii. p. 379. The act of April 13, 1857, "To reduce the several acts relating to the district courts in the city of New York into one act," retains the provision of the act of 1813, requiring actions in these courts to be instituted in the district wherein at least one of the parties resides. Some exceptions to meet special circumstances are allowed, but they are not material to the questions determined in the above case. See § 4 of the act first above mentioned. (Session Laws of 1857, vol. 1, chap. 344, p. 708.) (*Note.*) *Id.*

62. Where nothing appears on the trial nor in any of the proceedings before the justice, showing that the parties do not reside within his district, and both appear and go to trial upon the merits, without objection; it is not his duty to volunteer any inquiry into their residence. *Id.*

63. As a general rule, it is only a party who is aggrieved by a judgment, who can reverse it. *Id.*

64. The principles governing the review of the judgments of the district or justices' courts, are not necessarily changed by the provisions of the Code altering the mode in which such review is to be made. *Id.*

65. Where the plaintiff has obtained judgment in a district court, but being dissatisfied with the amount thereof, appeals to this court, and it appears that the judgment was erroneous and invalid, for the want of jurisdiction in the district court: whether, the defendant having paid the judgment, the limitation upon the prosecution of writs of error in favor of the party recovering the judgment (2 R. S. marg. p. 592, § 3), would furnish a principle for the guidance of the appellate court, and whether § 369 of the Code contemplates restitution in such a case? *Quere.* *Id.*

66. A judgment may be void, and yet the prevailing party stand in such a

position in respect thereto, that it cannot be reversed on his appeal. *Id.*

67. The recovery in a district court must be limited to the service declared upon in the complaint and set forth in a bill of particulars, where such bill is furnished. *Id*

68. The refusal, by the justice of a district court, after the trial of a cause is commenced and witnesses examined, to suspend the trial to enable the plaintiff's witness to leave the court to institute a search for papers mentioned in a subpœna *duces tecum* served upon such witness by the plaintiff shortly before the witness was sworn, is no ground for a reversal of the judgment. *Id.*

69. Whether the justice has authority, after the examination of witnesses has commenced, to suspend the trial, without the consent of both parties, except for the single cause that there is not time to conclude it on the day. *Dub. Id.*

70. An objection to testimony is too late, when made for the first time on appeal. *Id.*

71. If the return is defective, in omitting to note objections taken at the trial, the appellant, by motion, should cause it to be corrected and its omissions supplied. *Id.*

72. The authority of an attorney or agent to appear for a party in the Marine or District Courts, must be demanded, if at all, at the time of the appearance. *Treadwell* v. *Bruder*, 597

See APPEAL, 44.
    ASSIGNMENT, 13.
    ATTORNEYS AND COUNSELLORS, 9 to 13.
    EVIDENCE, 38, 42, 62, 90.
    JURISDICTION, 11.
    MARINE COURT, 21 to 30, 38, 39, 47 to 49.
    PLEADING, 29.

## DOGS.

See TRESPASS, 1 to 3, 9, 10.

## E

### EQUITABLE RELIEF.

See ACTION, 44 to 46.
    INJUNCTION, 1 to 7.
    MECHANICS' LIEN LAW, 18.
    PARTNERSHIP, 9, 10.
    PRACTICE, *Discovery*, 42 to 44.

### ESTOPPEL.

See DISTRICT COURTS, 60.
    PARTNERSHIP, 7, 10 to 12.
    SHERIFF'S SALE, 4.

### EVICTION.

See LANDLORD AND TENANT, 8 to 11, 2.

### EVIDENCE.

1. In an action on the case in the nature of deceit, for a false warranty on a sale of goods, the warranty being express, it is not necessary to allege or prove that there was fraud on the part of the seller. It is enough to aver and establish the warranty, and that the warranty is false. *Fowler* v. *Abrams*, 1

2. If fraud be averred, it is not necessary that it should be proved to entitle the plaintiff to maintain the action. *Id.*

3. Therefore, where the plaintiff averred that the defendant, " by falsely and fraudulently warranting a horse sold by him to the plaintiff," etc. (in the ancient form of declaration in actions on the case for a false warranty), and, on the trial, proved an express warranty and that it was false; *held*, that he was entitled to recover, although the jury found specially that there was no fraud. *Id.*

4. In an action for a breach of covenant, an averment in the complaint of the *amount* of damages, is not the proper subject of a denial. It is not issuable matter, and the defendant does not admit the amount alleged, by neglecting to deny it. *Hackett* v. *Richards*, 13

5. The denial should be of the breach; for it follows as matter of law, that if the covenant is broken, the plaintiff is entitled to damage, and if not, that he is not so entitled. The amount is not traversable, and must be proved, whether denied or not. *Id.*

6. In an action against two or more defendants, upon a contract made by or on behalf of a firm or association; if one of the defendants makes default, and others appear and deny their liability, it is sufficient on the trial for the plaintiff to prove that the contract was made by the firm or association, and that the defendants who appear were members thereof, and it is not necessary to prove that the defaulting defendant was also a member. *Downing* v. *Mann,* 36

7. Where two or more persons are declared against upon a joint contract, a judgment cannot be obtained against one, upon proving a *several* liability on his part alone ; and if, after verdict, under such circumstances, the court, under § 173 of the Code, can correct the error by striking out the name of the party who appears to have been improperly joined, and conforming the allegations to the facts established, the power should be exercised upon such terms as would certainly protect the rights of the defendant, and if the slightest reason exists to suspect that the verdict was obtained by unfair means—although the evidence in this respect be not such as would warrant setting it aside for that cause alone—an award of a new trial should be the condition of allowing the amendment. *Id.*

8. Under the present system of practice in this state, several promissors can be proceeded against in one action, and a joint judgment recovered. *It seems,* therefore, that where the defendants are declared against as joint promissors, and the evidence shows that the promise was not made jointly, but by each defendant separately, the variance between the pleading and proof would be disregarded or cured by allowing an amendment, where their liabilities, as between themselves, would not be altered by this form of recovery against them. *Id.*

9. Where a person expressly allowed the use of his name, as a member of a committee of arrangements for a ball to be given by an association, and subscribed to some of the preliminary expenses, but took no further part, and did not attend the ball; it was *held,* that he was not liable for the cost of a supper provided for the occasion without his knowledge or consent. *Id.*

10. An error of a justice, in receiving evidence of the execution of an instrument without the production of the subscribing witness, is not available to an appellant, unless it appears, from the return, that an objection was taken at the trial. *Ranney* v. *Gwynne,* 59

11. A receipt may be explained. *Id.*

12. Where a debtor, upon the presentation to him of a bill for clothing, struck out one item, and wrote after it, " Never got it ;" *held* sufficient to warrant the inference that he received and was chargeable with the other articles enumerated therein. *Power* v. *Root,* 70

13. In an action upon a judgment, brought by the representatives of a deceased judgment creditor ; proof of payment to the attorney of record, made after the death of the plaintiff, and before administration was granted on his estate, will not maintain an issue raised by the pleadings of payment to the administrators. *Clark* v. *Richards,* 89

14. An attorney for the plaintiff in a judgment, when called by the defendant on the trial of an issue on *scire facias* to revive the judgment in favor of the plaintiff's representatives, may be permitted to testify to an alleged admission of payment, made to him by his client after judgment recovered, and before execution was issued, while the authority of the attorney to issue execution and to satisfy the judgment continued, and though the communication was made as a guide to him in issuing or withholding the execution. Such a communication is not confidential and privileged. WOODRUFF, J., *dissenting.* *Id.*

15. To make a communication privileged, so that an attorney may not disclose it, it is not necessary that it should relate to a suit actually pending, if it be made to him in his professional capacity, and while acting in that capacity for the client in the matter to which the communication relates. *Per* WOODRUFF, J. *Id.*

16. When a railroad company are duly authorized to lay their track in one of the streets of the city, they are not, at all events and without proof of negligence or want of skill and reasonable care, liable for accidents which may be caused thereby. Proof of such negligence or want of care or skill in the manner of constructing or maintaining the track, are necessary, as between them and persons exercising the common right of passing and repassing through or across the street. *Mazetti* v. *The N. Y. and Harlem R. R. Co.*, 98

17. Although the court may be of opinion that upon the evidence, as it appears on paper, they should have found differently, they will not, where the evidence is conflicting, set aside the report of a referee upon the facts, unless the evidence against the finding so greatly preponderates, or his finding is so far without evidence in its support, as to warrant the inference of bias, corruption, partiality, or some bad faith or unfairness in the referee, or some mistake in law or in its application to the case. *Id.*

18. An agreement to labor contained a covenant of forfeiture, in respect to all wages which might be earned and unpaid whenever the party employed should fail to perform; but it was provided, that the forfeiture should not operate, if his neglect were caused by sickness, and a physician, engaged by the employer, "should certify, that such sickness unfits him to do his work." *Held*, that a written certificate was not required, and it was sufficient that the physician told the laborer, and others similarly situated, that they were unfit for work, and must prepare and leave the place where their services had been required. *Lyons* v. *Story*, 113

19. Where the defendant employed the plaintiff to assist him in finding and procuring the purchase of a house—acknowledged that the services rendered were useful, and promised to pay for them; *held*, that he was liable therefor, on a *quantam meruit*, although it was not proved distinctly that the purchase was consummated by the plaintiff's agency. *Goldsmith* v. *Obermeier*, 121

20. Where the evidence, upon which a plaintiff, in the judgment of the appellate court, is clearly entitled to recover, is uncontradicted and unimpeached, a finding in disregard of the proof will be treated as founded in some erroneous view of the law applicable to the case. *Id.*

21. Where A. and B. were jointly and severally liable to C. for the sum of two hundred dollars; *held*, that a receipt signed by C. acknowledging the payment by A. of one hundred dollars, "in full of his obligation," did not operate to release or discharge *either* of the joint obligors. *Buckingham* v. *Oliver*, 129

22. If a seaman, after the voyage has been actually entered upon by him, seeks to excuse or justify his abandonment of the vessel before the voyage is ended, the burden rests upon him to show that the act of congress was not complied with by the master in those particulars which are to be done after the due execution and delivery of the articles. *Botker* v. *Towner*, 132

23. Where an action is brought upon a *chose in action* not negotiable, in the name of an assignee thereof, and the defendant seeks to set off a claim in his own favor, he must prove that the claim belonged to him before notice of the assignment. *Soloman* v. *Holt*, 139

24. It is not enough for a plaintiff to prove a state of facts warranting only a conjecture that he may be entitled to recover. He must make out, *primâ facie*, a right of action, and must furnish some criterion whereby some amount of recovery can be fixed without danger of injustice; and where his own evidence leaves in doubt, not

only what amount the plaintiff is entitled to, but whether he is entitled to recover at all, his complaint should be dismissed. *Fox* v. *Decker*, 150

25. Where the defendant does not appear on the trial in the court below, the appellate court will not be astute to discover defects in the plaintiff's evidence, especially when it is not claimed that injustice has been done, nor that the appellant has any defence on the merits. *The Mayor, &c.,* v. *Hyatt,* 156

26. All the evidence, documentary and parol, used on the trial in the Marine or a Justice's Court, should be furnished to the appellate court upon an appeal. *Ogden* v. *Sanderson,* 167

27. Whether a note is received in payment for goods sold, or to be accounted for if collected, is a question of fact, the determination of which by a justice, upon conflicting and doubtful testimony, will not be interfered with on appeal. *Galoupeau* v. *Ketchum,* 175

28. The Marine Court cannot strike out the name of a plaintiff and permit him to be examined as a witness, on a mere suggestion of mistake without any proof. *Agreda* v. *Faulberg,* 178

29. Where a defendant agreed, in writing, "to pay B. and H., real estate brokers, fifty dollars commission on purchase by him of two lots, belonging to J. and R., payable on delivery of deed within thirty days;" held, that the contract might fairly be interpreted as admitting the fact of a purchase by the defendant, and that commissions were due thereupon. *Beebe* v. *Roberts,* 194

30. Under such circumstances, in the absence of contradictory evidence, the commissions may be recovered without further proof that a purchase has been effected. *Id.*

31. The general statement of a witness, that the deed was tendered in pursuance of the agreement between the parties, is sufficient, *primâ facie,* to sustain a finding that it was delivered within the thirty days. *Id.*

32. Where a complaint sought to rescind a contract of sale on the ground that the defendant, "by false and fraudulent representations and with intent to defraud the plaintiff of certain goods," had obtained possession thereof, and the evidence revealed a desire on the part of the seller to effect the sale rather than any application by the purchaser to make the purchase; it was *held,* there being no proof of any representations whatever, that the insolvency of the defendant and his neglect to disclose it were insufficient to sustain the action. *Fisher* v. *Conant,* 199

33. In an action for negligence, brought by the owner of a wagon against L. and M. as the proprietors of a stage; the plaintiff's son testified that two gentlemen with whom he was wholly unacquainted, called upon the father and conversed upon the subject, one of whom answered to the name of L. and wished the wagon sent to his place to be repaired, and both " were satisfied that it was their stage " by which the injury was caused. *Held,* that there was no sufficient identification to warrant a recovery against the defendants or either of them. *Fanning* v. *Lent,* 206

34. An attorney who assumes to appear for a party in a district or justice's court, must, if required, prove his authority. *Hirshfield* v. *Landman,* 208

35. A parol authorization is sufficient. And the attorney is himself a competent witness to prove it. *Id.*

36. The proper time to require proof of the attorney's authority, is upon the appearance, before joining issue and going to trial. *Id.*

37. Where an attorney, upon evidence of his authority being demanded, testified that he received such authority from the plaintiff's brother, and that the latter had exhibited to the witness written authority from the plaintiff himself to collect the claim; held, that although this testimony was inadmissible without producing the writing, and without proving its execution by the plaintiff, yet, that having been introduced without objection at the

time, it was sufficient to establish the attorney's right to prosecute.        *Id.*

38. Where the plaintiff, in a suit upon a promissory note, brings by his attorney the note into court, duly indorsed to himself or in blank, and the attorney testifies that he brought the action by the plaintiff's direction, and the alleged transferrer testifies that he did transfer the note to the plaintiff, and received his note as the consideration for the transfer; the court on appeal will hold the finding of a justice, that the plaintiff is the real party in interest and the owner of the note, conclusive, notwithstanding there is some evidence that such transfer was in bad faith and for the mere purpose of having a suit brought in the plaintiff's name to prevent a defence thereto. *Westervelt* v. *Allcock*,        243

39. Whether a defendant, under an answer containing only a "general denial," may set up and prove that the plaintiff, who brings the note indorsed in blank into court, is a merely nominal holder having no real interest therein? *Quere.*        *Id.*

40. The decisions made by this court—dissenting from the Supreme Court in some of the districts—reaffirmed, to the effect that it is not necessary for an assignee of a cause of action to give notice of an intention to examine his assignor as a witness, under § 399 of the Code, unless the evidence is offered against an assignee, or an executor or administrator. (See *note.*) *Freeman* v. *Newton*,        246

41. Evidence that a witness, who has been examined, has been of imbecile mind and memory, is admissible to affect the credibility of his testimony, although it is not offered as an objection to his competency before he is sworn. It is not proper to reject the evidence altogether, merely because the terms in which *it* is offered relate indefinitely to some time preceding the trial. *Rivara* v. *Ghio*,        264

42. The rule established in the decisions of this court since appeals from justices' courts were heard therein is, that where there is evidence in support of the finding of a justice, and

no such amount of countervailing evidence as warrants a conclusion that the justice has been governed by bias, partiality, or other improper motive, or has acted under a misapprehension or mistake, or unless there be a plain state of the proofs which would warrant the court in setting aside the verdict of a jury as against evidence; the judgment below will not be interfered with.        *Id.*

43. Where a witness is called, sworn, and examined by the plaintiff, and the defendant declines to cross examine him, but after the plaintiff rests his case the defendant moves for a nonsuit, which being denied, he calls the witness again to the stand; it is not proper for the referees to administer the oath a second time, even although the defendant requests it. *Parsons* v. *Suydam*,        276

44. Under the circumstances last stated, the examination of the plaintiff's witness by the defendant, after the plaintiff has rested, is in the nature of a cross examination, and the defendant does not by such examination make the witness his own in such a sense that he may not contradict him by other testimony.        *Id.*

45. The rule that a party may not contradict his own witness, does not import that he may not give evidence in direct support of the issue on his part, however much it may conflict with the testimony of his witness, but only that he may not contradict his own witness for the purpose of impeaching his credibility.        *Id.*

46. *It seems*, that under § 399 of the Code, when an assignor of a claim is examined as a witness, to prove the plaintiff's whole case under a complaint founded on a general charge of indebtedness by the defendant, the adverse party may offer himself, not only to prove that no such indebtedness ever existed, but even to prove that it did not exist at the time of suit brought if it had existed before.        *Id.*

47. Where the whole merits have been examined before referees, the court will not reverse a judgment, because there is a variance between the com-

plaint and the proofs in a particular in which the parties have not been misled; but will, on appeal, either disregard the variance, or direct an amendment. *Id.*

48. Where the facts involved in a suit occurred at a distance, statements contained in alleged letters of third persons to one of the parties—although not strictly evidence—may be used temporarily, before time can be had to obtain formal proof thereof, to sustain, with other testimony, a remedy purely provisional. *Merritt* v. *Thompson,* 284

49. Where the owner of a lot contracted with a carpenter for the erection of a house, including, among other details, the painting, and the sashes and blinds, and an action was brought against the owner by a third person to recover for the sashes and blinds—such third person alleging that he made them by the owner's request, and on his credit; *held,* that proof that the owner employed the person who did the painting, was not competent, and did not tend to establish the employment, in like manner, of a different person from the original contractor, to make the sashes and blinds. *Fuller* v. *Clark,* 302

50. A parol agreement, first, by the plaintiff to let a store to the defendant —secondly, by the defendant to employ the plaintiff as clerk—and thirdly, to sell and deliver goods to the latter, the whole forming one entire parol contract; may be proved and insisted upon, notwithstanding that a bill of sale of the goods is afterwards made, which contains nothing in relation to the hiring of the store or the agreement to employ the plaintiff as clerk. Such bill of sale will be deemed a part performance of the parol contract, and not a reducing of the whole contract to writing. *Wentworth* v. *Buhler,* 305

51. Where a witness for the defendant testified to the amount of sales made per day by the plaintiff, for the purpose of proving that he neglected the defendant's business in a store of which the plaintiff had charge as a clerk; *held,* that it was not incompetent, upon cross examination, for the plaintiff to inquire the amount per day sold in another and larger store of the defendant in the neighborhood, in charge of the defendant personally—where a greater number of clerks were employed—for the purpose of testing the memory of the witness and affecting his credibility. *Id.*

52. Proof that a married woman and her husband occupy a house together, and that the "millinery business," in relation to which both take a part, is there carried on, connected with evidence that the defendant hired a room in the house from the wife by a parol agreement, is not sufficient to enable the wife to sue alone for the rent as her separate property. *Rouillier* v. *Wernicki,* 310

53. Such proof does not show that the wife has any separate estate. *Id.*

54. An objection to evidence as incompetent or inadmissible, cannot be raised for the first time in this court, on appeal from the justices' courts. *Id.*

55. Whether a plaintiff, having rested, shall, after the defendant has examined his witnesses, be permitted to examine witnesses in further support of the case made by himself, is a matter within the discretion of the court. *Silverman* v. *Foreman,* 322

56. The exercise of such discretion, in either admitting or rejecting the further testimony, unless in a case of palpable and gross injustice, is no ground for the reversal of a judgment. *Id.*

57. Testimony offered by a plaintiff is not necessarily rebutting evidence, merely because it tends to contradict the defendant's witnesses. Rebutting testimony must be in denial of some affirmative case or fact which the defendant has endeavored to prove. *Id.*

58. Accordingly, where, in an action for an assault and battery in striking the defendant, after the plaintiff had rested his case upon the evidence of witnesses who testified to the blow, and after the defendant had called and exam-

ined witnesses to disprove the striking, the court refused to permit the plaintiff to call witnesses to prove an alleged admission of the defendant that he struck the plaintiff; *held*, no error. *Id.*

59. In an action for damages sustained by a passenger in a public stage coach, the onus of proving the cause of the injury to have been such as cou d not have been prevented by proper care and foresight on the part of the carrier, is on the defendant. *Wilkie* v. *Bolster*, 327

60. Accordingly, where a passenger and his family, while seated in an omnibus in the city of New York, were injured by the bursting of a lamp; a judgment in their favor was sustained upon the ground, that the owners had not shown affirmatively that the burning fluid or material used in the lamp was a safe and proper article. *Id.*

61. The liability, in such case, of the owners of a stage or omnibus, extends to all damages suffered by a passenger to either his person or apparel, which prudence and foresight can guard against. *Id.*

62. Where a defendant is charged with damages from the use of an article alleged to be dangerous, the fact that it is so, if material to be shown affirmatively, must be established by evidence, and the justice cannot assume the fact from any knowledge of his own respecting the nature of the article in question. *Id.*

63. The decision in *Ingalls* y. *Bills*, (9 Metcalf, p. 1,)—in which the injury was proved to have resulted from a hidden cause which the exercise of vigilance would not have removed—cited and distinguished from this case. *Id.*

64. Where a libel relates to one of several persons, but does not specify to which, such persons cannot, by prosecuting an action for damages, put the defendants upon their defence and compel them to disclose to whom the libel referred. *Giraud* v. *Beach*, 337

65. In order to sustain the action, a plaintiff must prove affirmatively that

he is the person referred to in the libel. *Id.*

66. It is settled, that the purchaser of personal property which is in the possession of a third party, may, after a demand thereof and a refusal to deliver to him, maintain an action for the illegal detention. The vendor, in such case, is not the assignor of a thing in action, within the meaning of § 399 of the Code. He is the vendor of personal property. And the examination of such vendor as a witness for the plaintiff, does not entitle the defendant to offer himself as a witness, under that section. *McGinn* v. *Worden*, 355

67 Whether, in an action against husband and wife, brought by the assignee of a contract or thing in action, if the plaintiff thinks proper to examine his assignor; the wife and the husband (defendants)—or either of them—are not competent witnesses, under § 399 of the Code? *Quere.* *Id.*

68. And whether, by voluntarily calling the assignor, the plaintiff does not waive all objections to their competency? *Quere.* *Id.*

69. The amendments to that section, passed April 13, 1857, allow parties, under some restrictions, to be witnesses in their own behalf. (*Note.*) *Id.*

70. Whether in an action upon an agreement of suretyship annexed to a lease, in which agreement the defendant becomes surety for the payment of the rent and the performance of the covenants mentioned in the lease, and agrees, in case of default by the lessee, to pay any deficiency and satisfy the conditions of the lease without requiring any notice of non payment or proof of demand; *quere,* whether the burden is upon the plaintiff to show that a deficiency has arisen, or upon the surety to prove that the rent has been paid in full, pursuant to the requirements of the lease? *Damb* v. *Hoffman*, 361

71. Where a landlord, at the request of of an agent of a tenant of lands, delivered some loads of hay upon the

premises, and the tenant, upon a bill therefor being presented to him, remarked that there was more than he should want, but that he would see about it ; it was *held*, that the proof of the agent's authority to give the order being defective, the tenant should not be charged with so much of the hay as was left by him upon the premises at the termination of the tenancy.— *Vanderbilt* v. *Persse*, 428

72. By § 398 of the Code, " No person offered as a witness shall be excluded by reason of his interest in the event of the action." The words in § 399, providing that, " The last section shall not apply to a party to the action, nor to any person for whose immediate benefit it is prosecuted or defended, are repealed in the amendatory act of April 13, 1857. (Laws of 1857, vol. i. chap. 353, p. 744.) A party or person so interested may now be examined, under restrictions contained in the act last mentioned. The indemnitors of a sheriff might now, therefore, be admitted as witnesses for him, upon the proper preliminary service of a notice to the adverse party. (*Note.*) *Ely* v. *Carnley*, 489

73. A referree, in his sound discretion, may, even upon his own motion, open a case for further testimony, although several days have elapsed since the evidence was closed and since the cause was summed up and submitted for his decision. *Duguid* v. *Ogilvie*, 527

74. In an *action for services* rendered, proof that the plaintiff, many months after the alleged cause of action arose, gave to the defendant a promissory note which was paid at maturity, is sufficient, *primâ facie*, to defeat a recovery. *Id.*

75. But the presumption thus raised in the defendant's favor, may be removed by evidence that the note was given for a temporary loan obtained by the plaintiff from the defendant. *Id.*

76. Whether the amount recovered by the owners of the vessel, against the consignees of the goods, in an action for demurrage, forms a rule of damage in an action by the latter against a pur-

chaser charged with delay in unlading ? *Quere.* *Gillespie* v. *Durand*, 631

77. The petition for a discovery should set forth specifically the papers and documents required. *Jackling* v. *Edmonds*, 539

78. The rule, requiring the petition to be verified by affidavit, stating that the books and papers, whereof discovery is sought, are not in the possession nor under the control of the party applying therefor, and that he is advised by his counsel, and verily believes, that such discovery is necessary to enable him to plead or prepare for the trial, must be observed. *Id.*

79. Applications of this nature will be scrutinized by the court, and will be denied when indefinite, and made under circumstances of suspicion. *Id.*

80. And the court will act with great caution when the suit is brought by administrators, and a discovery of papers of their intestate is sought. *Id.*

81. Accordingly, a discovery was refused to the defendant, when applied for two years after the complaint was served, the original plaintiff having in the mean time died and been succeeded in the prosecution of the action by his personal representative, and where the application called for numerous papers relating to transactions with the decedent, some of which were not specifically described, and others alleged to be memoranda made by the defendant himself, who, at one period, had admitted indebtedness and had stated, without requiring the papers in question, that he had *completed within a few items*, an account which he was preparing to exhibit the true balance alleged by him to be due. *Id.*

82. A check is a bill of exchange, within the meaning of the statute authorizing a recovery upon a lost note or bill of exchange, upon tendering a bond of indemnity and giving parol proof of the contents. (2 R. S. part iii. chap. vii. title· iii. p. 652, marg. p. 406.) *Jacks* v. *Darrin*, 543

83. The statute above referred to ap

plies, although the bill, note, or check be lost after the action is commenced. *Id.*

84. The dictum to the contrary cited in 2 Cowen's Treatise (2d ed. p. 184), is erroneous. *Id.*

85. The making of an inventory is not absolutely necessary to constitute a valid levy under execution. *Watts* v. *Cleaveland,* 553

86. In an action by a constable for the value of goods disposed of by the defendant after an alleged levy thereon under an execution against a third party; it appeared, that the execution debtor and the defendant (the property being in the latter's possession), were present when the officer approached to make the levy; that the goods were within view; that the officer touched a case with his foot, made a memorandum on the execution that he had levied upon a lot of dry goods, and thereupon so stated: and that the defendant upon being asked by the attorney of the execution creditor what amount had been levied upon, replied, "more than double enough to pay the execution." *Held,* that under the circumstances, there was a sufficient levy to sustain the action. *Id.*

87. Under the statute respecting lost notes and bills of exchange, a party is entitled to recover upon a lost check upon proving the contents thereof and tendering a bond of indemnity at the trial although the loss occurred subsequently to the commencement of the action. (2 R. S. p. 652, marg. p. 406.) *Jacks* v. *Darrin,* 557

88. Where a check, payable at a future day, is passed away by the payee, before its maturity, and the indorsee, having upon taking the check, paid the full amount thereof, transfers it to the plaintiff: the latter is entitled to recover against the drawer, irrespective of any equities existing between the original parties. *Id.*

89. The drawer of a check, by stopping its payment at the bank, relieves the holder, as against him, from any

necessity of presentment and notice of non-payment. *Id.*

90. Where the testimony establishing a case is direct, unequivocal and consistent, and the witnesses stand unimpeached and uncontradicted, a court or jury cannot unreasonably discredit them; and where the finding of a justice or jury is in conflict with what is sworn to under such circumstances, it will be set aside as against evidence. *Id.*

91. The mere acceptance by the landlord, of the key of the demised premises, from a tenant who quits possession during the term, is not an acceptance of the surrender, where the landlord states that he receives the key but not the premises. *Townsend* v. *Albers,* 560

92. In an action for goods sold by two persons as partners, it appeared that they had together boarded with the defendant, and that each had told him "that what one might call for would be the same as if both should order it." *Held,* that the defendant's account for liquors, etc., furnished to each, created a joint obligation against both and constituted a valid counter claim to the plaintiff's demand. *Hartung* v. *Siccardi,* 560

93. Where the plaintiff calls the defendant as a witness to sustain the complaint, and the defendant upon cross examination in his own behalf, proves a counter claim set up in the answer; the plaintiff may be examined on his own behalf, to disprove such counter claim. (See Code, §§ 390, 395.) *Harpell* v. *Irwin,* 565

94. By § 398 of the Code, "No person offered as a witness, shall be excluded by reason of his interest in the event of the action." Before the amendment of April 13, 1857 (Session Laws of 1857, vol. 1, chap. 353, p. 744), § 399 provided that § 398 should "not apply to a party to the action, nor to any person for whose immediate benefit it is prosecuted or defended." The amendment referred to, in remodelling § 399, omits the restrictive words last quoted, and enacts that a party "may be examined as a witness on

his own behalf," upon the preliminary service of a notice, etc. The language of the sections construed in the decision of this case respecting the right of a party to examine his adversary as a witness remains unchanged. (*Note.*) *Id.*

95. In an action for wages as a seaman, proof that the plaintiff worked on board a sloop and that the defendant was the owner thereof, is *primâ facie* sufficient to sustain a recovery. *Dougherty* v. *Gallagher*, 570

96. But where the master testified, that he and the defendant were jointly interested in the business wherein the sloop was employed—that by arrangment between them, the defendant was to pay half the dockage and the witness to pay the hands—that the witness engaged the plaintiff and then told him of the arrangement and that he was to look to the witness for his wages; *held*, that this testimony being uncontradicted, established a special agreement between the witness and the plaintiff, and formed a bar to the action against the defendant. *Id.*

97. Where a writ in the nature of a writ of replevin, is issued in the name of a party, and he executes and delivers to the sheriff an undertaking to prosecute the action and to return the property if a return be adjudged, and for the payment of whatever may be adjudged to the defendant therein, and the sheriff thereupon, by direction of the attorney in replevin, or his clerk, takes the goods of a third person under the writ, after which the plaintiff in replevin—in order to entitle him to claim a delivery to himself of the property so taken by the sheriff—voluntarily proceeds to a justification of the sufficiency of his undertaking and actually justifies; these facts are *primâ facie* evidence that such plaintiff in replevin authorized the seizure of the very goods which were taken. *Aldrich* v. *Ketcham*, 577

98. A verdict of a jury upon this testimony, in favor of the actual owner of the goods, in an action for such wrongful taking, is not without evidence to sustain it. *Id.*

99. A plea in abatement for misjoinder of defendants, cannot be presented, directly or indirectly, after issue has been joined, and proof taken on the merits. *Montfort* v. *Hughes*, 591

100. The court cannot, pending the trial of an action of tort against several defendants, direct the acquittal of one of them, unless the case so far fails as that a nonsuit as to him would be proper, or a verdict against him be subject to be set aside as unwarranted by the evidence. *Id.*

101. The decision of the Court of Appeals, in *Beal* v. *Finch*, 9 How. Pr. Rep. 385, 1 Kern. 128, respecting the extent of the competency of a defendant as a witness for a co-defendant, commented upon in respect to this case. *Id.*

102. In an action for rent, proof that the defendant, a German, was in the occupation of the premises, though it was not shown for what period, and that, an account being presented and explained to him, in which a sum of money, described as rent for the term mentioned in the complaint, was stated to be due the plaintiff, the defendant promised to pay it; *held*, sufficient, *primâ facie*, to sustain a judgment. *Treadwell* v. *Bruder*, 596

103. The money being stated in the bill to be due the plaintiff, the promise is a sufficient admission of liability to him, although made to a third person, by whom the bill is presented, and also, as a promise, inures to the plaintiff's benefit. *Id.*

104. Under such circumstances, whether the plaintiff became entitled to the rent as owner of the premises, or as lessee, or even by assignment of the rent, is immaterial. *Id.*

105. Title in a third person, as against a party claiming the rent, must be shown by the usual muniments of title, or by evidence of possession for such a period as raises a presumption of title. *Id.*

106. Infancy of a plaintiff cannot be proved as a ground of nonsuit on the trial. It must be pleaded in abate-

ment, or the question be raised by motion to set the proceedings aside for irregularity in respect to the appointment of a guardian or next friend. *Id.*

See ACTION, 43.
    AGREEMENT, 30.
    APPEAL, 41, 49.
    ASSAULT AND BATTERY, 2 to 4.
    ASSIGNMENT, 13.
    BAILMENT, 3.
    BILLS OF EXCHANGE, &c., 16.
    COMMON CARRIERS, 5, 7.
    DAMAGES, 7.
    DISTRICT COURTS, 22, 23, 51, 68 to 71.
    JUDGMENT, 17, 18.
    LANDLORD AND TENANT, 3.
    MALICIOUS PROSECUTION, 1, 3.
    MECHANICS' LIEN LAW, 134, 135.
    MORTGAGE, 4, 12.
    NEGLIGENCE, 2 to 8.
    PARTNERSHIP, 11.
    POLICE DEPARTMENT, 4.
    SALES, 23.
    SHERIFF'S SALE, 5.
    TRESPASS, 2.
    TROVER, 10, 11.

## EXCEPTIONS.

See APPEAL, 53 to 55, 64.

## EXECUTION.

See DEBTOR AND CREDITOR, 7, 8.
    EVIDENCE, 14.
    MECHANICS' LIEN LAW, 12, 13, 19, 98.
    PRACTICE, *Execution*, 51 to 61.
    PRACTICE, *Provisional Remedies*, 112.

## EXECUTORS AND ADMINISTRATORS.

1. In an action upon a judgment, brought by the representatives of a deceased judgment creditor; proof of payment to the attorney of record, made after the death of the plaintiff, and before administration was granted on his estate, will not maintain an issue raised by the pleadings of payment to the administrators. *Clark v. Richards,* 89

2. An attorney for the plaintiff in a judgment, when called by the defendant on the trial of an issue on *scire facias* to revive the judgment in favor of the plaintiff's representatives, may be permitted to testify to an alleged admission of payment, made to him by his client after judgment recovered, and before execution was issued, while the authority of the attorney to issue execution and to satisfy the judgment continued, and though the communication was made as a guide to him in issuing or withholding the execution. Such a communication is not confidential and privileged. WOODRUFF, J., *dissenting.* *Id.*

3. The statute of 1847, amended in 1849, giving a right of action, for the benefit of the next of kin, to the representatives of a deceased person, whose death has been caused by the negligence of a company or individual, does not limit the amount to be recovered to the loss of those only whose relations to the deceased were such as to give them a legal right to some pecuniary benefit which would result from a continuance of the life. *Per* WOODRUFF, J., *dub.* *Oldfield v. The N. Y. and Harlem R. R. Co.,* 103

4. These statutes, being intended to secure care on the part of persons and corporations, engaged in a business which endangers the lives of citizens, should be so construed as to give full effect to their object, and punish those who are guilty of negligence. *Per* INGRAHAM, FIRST J. Accordingly, in an action brought by an administrator, for the benefit of the mother of a dependent child about seven years of age, the verdict of a jury assessing the plaintiff's damages at $1,300, was sustained by the court. *Id.*

5. Where a deed of trust provides that the interest of a fund shall be paid during life to the person executing the same, and directs the principal to be given to third persons; an action after his death to recover interest accumulated in the hands of the trustee, cannot be maintained by them, but must be brought by the personal representatives of the grantor. *Clarkson v. Mitchell,* 269

6. Upon applications for a discovery of books and documents, the court will act with great caution when the suit is brought by administrators and a discovery of papers of their intestate is sought. *Brown's administratrix v. Edmonds,* 539

7. Accordingly, a discovery was refused to the defendant, when applied for two years after the complaint was served, the original plaintiff having in the mean time died and been succeeded in the prosecution of the action by his personal representative, and where the application called for numerous papers relating to transactions with the decedent, some of which were not specifically described, and others alleged to be memoranda made by the defendant himself, who at one period had admitted indebtedness, and had stated, without requiring the papers in question, that he had completed, within a few items, an account which he was preparing to exhibit the true balance alleged by him to be due. *Id.*

8. An administrator, by indorsing a promissory note, and delivering it before maturity for a debt contracted by the intestate's widow for necessaries furnished to her after the decease, renders himself personally liable, although in making the indorsement he adds to his name the title of administrator. *Sieckman v. Allen,* 561

9. The suspension, by the creditor, in accepting the note, of his right of action against the widow, constitutes a good consideration to support the promise involved in the indorsement. *Id.*

See ASSIGNMENT, 8, 12.

## F

### FATHER AND SON.

See WAGES, 2.

### *FEME COVERT.*

See HUSBAND AND WIFE, 1.
MARRIED WOMEN, 1 to 4.
MECHANICS' LIEN LAW, 34, 35.

### FERRY BOATS.

See STEAMBOATS, 2 to 5.

### FICTITIOUS NAME.

See MARINE COURT, 2.

### FIRE DEPARTMENT.

1. The act of the legislature of the state of New York, passed February 21, 1837, requiring the agent, in the city of New York, of any individual or association, not incorporated by the laws of this state, although incorporated by any other state or country, to pay an annual tax, into the state treasury, as a condition to the right of effecting insurances against losses by fire; and the acts subsequently passed, requiring under a penalty such payment to be made to the treasurer of the Fire Department, for the use and benefit thereof, are constitutional (*a*). (See Session Laws of 1837, chap. 30, p 21; 1849, chap. 178, p. 239; 1857, chap. 548, vol. 2, p. 171; 1 R. S. marg p. 714.) *Fire Department v. Noble,* 440

2. These statutes do not contravene the section of the constitution of the United States, which provides that the citizens of each state shall be entitled to all the privileges and immunities of citizens of the United States. (U. S. Cons. Art. IV. § 2, subd. 1.) *Id.*

3. Nor the provisions of the United States and state constitutions, forbidding the taking of private property for public use, without just compensation. (Amendts. to U. S. Cons. Art. V.; Cons. of N. Y. Art. I. § 6.) *Id.*

4. It is competent for the legislature to regulate the business of insurance within this state—to designate who may effect insurances—to prohibit agencies therefor—and to impose the payment of a tax as a condition to the establishment of such agencies. *Id.*

5. A tax upon a particular business may

---

(*a*) Affirmed in the Court of Appeals.

be levied for the benefit of a public charity, and may be made payable directly to the persons having the direction thereof.                *Id.*

6. The Fire Department of the city of New York is the representative of a public charity.                *Id.*

7. The constitutional questions determined by this court in the case of *The Fire Department* v. *Noble* (*ante*, p. 440), having being raised and reargued upon this appeal, while that case was under advisement, the court adopt and affirm in this cause, the decision therein made. *The Fire Department* v. *Wright*,        453

8. Accordingly, *held*, that the acts of the legislature of the state of New York—requiring the agent of every individual or association of individuals, not incorporated by the laws of this state, to pay to the treasurer of the Fire Department in the city of New York, for the use of that department, a percentage of all premiums of insurance effected by such agent in that city, and prohibiting him from making or procuring such insurance until he shall have executed a bond with sureties, securing an accounting of premiums received, and the payment of the percentage—are valid and constitutional enactments.        *Id.*

### FOREIGN ATTACHMENT.

See DEBTOR AND CREDITOR, 7.

### FOREIGN CORPORATION.

A judgment entered by default in favor of a foreign corporation, will not be set aside for the failure to file security for costs before the commencement or during the pendency of the action. *The Merchants' Bank* v. *Mills*,        210

### FORFEITURE.

See MORTGAGE, 3, 10.
WAGES, 1.

### FRAUD.

See ACTION, 41.
AGREEMENT, 25.
COMMON CARRIERS, 5, 6.
DEBTOR AND CREDITOR, 1, 16.
INJUNCTION, 1 to 5.
JURISDICTION, 10.
LANDLORD AND TENANT, 13, 14.
MECHANICS' LIEN LAW, 50, 51.
MORTGAGE, 3 to 12.
PARTNERSHIP, 10.
SALES, 1 to 7, 16 to 18.
TROVER, 11.

### FREIGHT.

1. The assignee of a bill of lading, who as such receives the goods, is liable for the freight, although the assignment of the bill of lading was made after the goods were sent to the public warehouse under a general order to discharge the ship. *The N. Y. and Havre Steam Navigation Co.* v. *Young*,        187

2. See, also, *Burton* v. *Strachan* (*note*,)        192

3. A charter party, which does not give the charterer entire control of the vessel, nor postpone the payment of the charter money beyond the delivery of the cargo, does not divest the general owner of his lien for freight, nor of his right to collect the same. *Mactaggert* v. *Henry*,        390

4. Although the master of the vessel, being the agent of the general owner, waive the lien by delivering the goods without demanding the freight; such general owner may afterwards compel the consignee to pay it.        *Id.*

5. Where the charter party is of the character above mentioned; the payment of the freight, by the consignee of the goods to the general owner of the vessel, is a bar to any claim therefor by the charterer, although the latter, before the payment, may have given formal notice to the consignee, not to pay the same to the owner. *Id.*

See COMMON CARRIERS, 6.

## G

### GUARANTY.

See SALES, 30.
SURETY, 1 to 5.

### GUARDIAN *AD LITEM.*

See DISTRICT COURTS, 55 to 58.
PLEADING, 34.

## H

### HIRE OF CHATTELS.

1. Where a chattel is hired for a limited period, as for a day or a night, at a definite price, and the hirer detains it for a much longer period; he is not liable, in an action brought to recover for the use of the chattel, to be charged at the same rate for every day or period during which the detention may continue after the specified time has elapsed. *Russell* v. *Roberts,* 318

2. The recovery should be limited to the value of the use for the entire period of the detention. *Id.*

3. And where the detention continued for several months, and a computation by the day amounted to many times the whole value of the chattel; *held,* that the price agreed upon for one day's use was not the standard of value for such entire period. *Id.*

### HUSBAND AND WIFE.

1. Where a wife is designated by the husband as his agent for the management of his property during his absence, repairs made by a tenant under authority, granted by her and for which she promised to pay, are chargeable to the landlord. *Rosenbaum* v. *Gunter,* 204

2. Whether, in an action against husband and wife, brought by the assignee of a contract or thing in action, if the plaintiff thinks proper to examine his assignor; the wife and the husband (defendants)—or either of them—are not competent witnesses under § 399 of the Code? *Quere. McGinn* v. *Worden,* 355

See MARRIED WOMEN, 1 to 4.
MECHANICS' LIEN LAW, 34, 35.

## I

### IMPRISONMENT FOR DEBT.

See PRACTICE, *Provisional Remedies,* 113, 124.

### INFANCY.

See DISTRICT COURTS, 55 to 58.
PRACTICE, *Nonsuit,* 88.

### INJUNCTION.

1. Where a suit was commenced to recover the proceeds of the sale, by the defendant as agent, of a ship owned jointly by him and the plaintiff, and which had been sold twice, first in California and again in China; and the plaintiff produced affidavits to show that the California sale was not *bona fide*—that the alleged purchaser there bid in the vessel under the defendant's direction—that the defendant, thereupon, as the pretended agent of such purchaser, took her to China and effected a sale for a larger sum—and that the plaintiff was therefore entitled to share in the proceeds of the latter sale: *Held,* that an injunction, restraining, *pendente lite,* a disposal of the last mentioned proceeds—identified in the defendant's hands in specie, drafts and credits—should be continued, although the answer and affidavits on the part of the defendant denied the allegations concerning the California sale, provided, upon all the depositions used on the motion, it appears to the court that the plaintiff's case is not overborne. INGRAHAM, FIRST J., *dissenting. Merritt* v. *Thompson,* 283

2. Where a claim in suit is for the proceeds of a sale made by the defendant as the plaintiff's agent, the same being identified in the defendant's hands as the very proceeds of the plaintiff's property; the right to enjoin the use or disposal thereof, *pendente lite,* is unquestionable, although the fraudulent agent may be of sufficient responsibility to make reparation in damages. *Id.*

3. *It seems,* that where a trust results from the sale of property owned jointly by the plaintiff and defendant, and the whole proceeds come to the hands of the defendant as the agent of both; a court will enjoin, upon the distinct ground of restraining a breach of trust and the commission of a fraud. *Id.*

4. The injunction should only be laid upon the actual proceeds of the sale of the plaintiff's property, or upon funds misapplied even although invested in other property, if still capable of identification as in equity belonging to the plaintiff; but not upon moneys merely due to him in general account with the defendant. *Id.*

5. Although the Code, in chap. 1, title 7, part 2, entitles a complainant to an order of arrest, when he establishes a fraud and breach of trust; he is not, by the provisions last referred to, necessarily limited to that remedy, where the case is such as to furnish grounds for an equitable interposition by injunction. *Id.*

6. The 219th section of the Code applies as well to a foundation for injunction existing at or before the action is brought, as where the grounds thereof appear during the litigation. *Id.*

7. The power to enjoin has been enlarged, rather than restricted, by the Code. *Id.*

INSOLVENCY.

See DEBTOR AND CREDITOR, 1, 16.
PRACTICE, *Provisional Remedies,* 112, 120, 125.
SALES, 16.

INSOLVENT ASSIGNMENT.

1. The defendants, being indebted to a non-resident against whose property an attachment was issued, in New York, at the suit of one of his creditors, were served with a copy of the warrant; and afterwards, judgment having been entered, and execution issued, paid to the sheriff the amount of their said indebtedness. *Held,* that the payment having been made, by the defendants without compulsory process, and after notice to them of an assignment by the debtor of all his property before the attachment issued, was a voluntary payment, affording them no protection from liability to the assignee. *Lyman* v. *Cartwright,* 117

2. When the special partner, under a limited partnership, does not pay in the amount of his capital specified in the certificate, and the firm, having become insolvent, assign the property thereof for the benefit of creditors; he may, upon a complaint in equity, filed by the trustee, be compelled to pay in the deficiency of his capital, to be used in the payment of the partnership debts. *Robinson* v. *McIntosh,* 221

3. The admissions made by the partners in a limited partnership, in filing the certificate and affidavit, in no respect conclude creditors; nor are they conclusive upon trustees under the co-partnership assignment for the benefit of creditors, who bring suit, in behalf of their *cestui que trusts,* to compel the delinquent special partner to pay in the capital mentioned in the certificate. *Id.*

4. A co-partnership assignment to trustees for the benefit of creditors, in all respects equitable and just to all parties, made in a condition of hopeless insolvency by all of those who, by the terms of the actual arrangement between the members, are the active managing partners in the business, will be sustained. *Id.*

5. Such an assignment is valid, when made by the general partner only, of a limited partnership. *Id.*

6. And where parties take all the usual steps to form a limited co-partnership, excepting in some particular the ne-

glect whereof renders the special part-
ner liable as a general partner, he
does not thereby become an active,
but may he regarded as a dormant
partner, in such sense as warrants the
general partner to assign the partner-
ship effects to a trustee for the benefit
of creditors.                         *Id.*

See ASSIGNMENT, 2 to 4.

## INSURANCE.

See CONSTITUTIONAL LAW, 1 to 4, 7.

## INTEREST.

See MECHANICS' LIEN LAW, 7.
    TRUST AND TRUSTEE, 1 to 4.

# J

## JOINT CONTRACTORS.

See PARTNERSHIP, 1 to 4, 5, 6.
    RELEASE, 1, 2.
    SALES, 35.

## JOINT OWNERS.

See INJUNCTION, 1, 3.

## JUDGMENT.

1. *It seems*, that even on default, the
amount of damage must be proved, or
the plaintiff take judgment for a merely
nominal sum. *Hackett* v. *Richards*,
                                        13

2. Although, *on the trial* of an action
brought by the landlord against the
original lessee, which trial takes place
after the expiration of the term, the
evidence shows that the plaintiff since
the action was commenced and since
the issue was joined, has received from
the new tenant the rent in full, yet, in
giving judgment, the rights of the par-
ties must be determined as they exist-
ed when the suit was brought, unless
the defendant by supplemental answer
sets up such receipt of rent after suit

brought as a defence arising after the
former answer was put in under § 177
of the Code. WOODRUFF and DALY
JJ., *concurring ;* INGRAHAM FIRST J.,
*dissenting.*                         *Id.*

3. Where two or more persons are de-
clared against upon a joint contract, a
judgment cannot be obtained against
one, upon proving a *several* liability
on his part alone ; and if after verdict
under such circumstances, the Court,
under § 173 of the Code. can correct
the error by striking out the name of
the party who appears to have been
improperly joined, and conforming the
allegations to the facts established, the
power should be exercised upon such
terms as would certainly protect the
rights of the defendant, and if the
slightest reason exists to suspect that
the verdict was obtained by unfair
means—although the evidence in this
respect be not such as would warrant
setting it aside for that cause alone—
an award of a new trial should be the
condition of allowing the amendment.
*Downing* v. *Mann,*                  36

4. Under the present system of practice
in this state, several promissors can be
proceeded against in one action, and
a joint judgment recovered. *It seems,*
therefore, that, where the defendants
are declared against as joint promis-
sors, and the evidence shows that the
promise was not made jointly, but by
each defendant separately, the vari-
ance between the pleading and proof
would be disregarded or cured by al-
lowing an amendment, where their
liabilities, as between themselves,
would not be altered by this form of
recovery against them.               *Id.*

5. Where a return from the Marine
Court certified that the defendant did
not appear in the cause, that no plead-
ings were put in, and that the justice
received a statement of facts from the
attorneys of the respective parties,
whereon he rendered judgment with-
out examining any witnesses ; *held,*
that the judgment could not be sus-
tained. *Heidenheimer* v. *Lyon,*    54

6. The court has power to allow an
amendment of the entry of judgment
of affirmance, ordered on appeal from
the inferior courts, where erroneously

entered through mistake, and the power will be exercised when no injustice is caused thereby. *Bagley* v. *Brown*, 66

7. Such amendment of an erroneous entry, not in any way affecting the merits of the judgment of affirmance, may be directed by a single judge at special term. *Id.*

8. Where application to allow a set off of a judgment is made in the name of the judgment creditor, by his attorney acting in person, on the motion and urging that the set off should be allowed ; it is not a sufficient objection to the application, that the attorney is interested in the judgment, for in that case he only, and not the adverse party, would be prejudiced by granting the motion. *Id.*

9. The Code provides, that on filing a transcript of a judgment of the Marine or Justices' Courts, the same shall be enforced in the same manner as, and "be deemed," a judgment of this court. *It seems*, therefore, that the same power exists to allow a set off of such a judgment as of a judgment originally entered in this court. *Id.*

10. In an action upon a judgment, brought by the representatives of a deceased judgment creditor ; proof of payment to the attorney of record, made after the death of the plaintiff and before administration was granted on his estate, will not maintain an issue raised by the pleadings of payment to the administrators. *Clark* v. *Richards*, 89

11. An attorney for the plaintiff in a judgment, when called by the defendant on the trial of an issue on *scire facias* to revive the judgment in favor of the plaintiff's representatives, may be permitted to testify to an alleged admission of payment, made to him by his client after judgment recovered and before execution was issued, while the authority of the attorney to issue execution and to satisfy the judgment continued, and though the communication was made as a guide to him in issuing or withholding the exe-

cution. Such a communication is not confidential and privileged. WOODRUFF, J., *dissenting.* *Id.*

12. The relation of attorney and client does not for all purposes cease with the entry of judgment. *Per* WOODRUFF, J. *Id.*

13. A judgment for the defendants in an action on contract against two who are sought to be charged as joint contractors or co-partners, and in which the joint liability is denied, is no bar to an action by the same plaintiff on the same contract, against one of the former defendants, in which he is charged as sole contractor. *O'Connor* v. *Bagley*, 149

14. If the judgment in the first action was rendered upon a plea of payment or other defence, which when established would be equally a defence in the second suit ; then such judgment is conclusive against the plaintiff. *Id.*

15. A surety, in an action brought by his principal upon a money demand, may set up as a defence the recovery of a judgment against him, on his contract of suretyship. *Hannay* v. *Pell*, 432

16. Unless he has actually made some payment on account of his liability as such, a surety is not entitled to relief at law, and can only proceed in equity to compel the principal to make payment and the creditor to receive it. *Id.*

17. Yet, under the Code of Procedure, where the principal brings against the surety an action upon an account, in the form of an action at law, and the answer sets up the recovery against the surety of a judgment by the creditor and prays affirmative relief ; the court, when it appears, upon a finding of the facts by referees or otherwise, that the amount due on the account is less than the judgment, may adjudge that the plaintiff pay to the creditor the judgment, deducting the amount so due from the defendant, and may provide that the payment by the defendant to such creditor, of the amount last mentioned, shall discharge the defendant from the plaintiff's claim. *Id*

18. Where the facts are correctly found by a referee, the court, on appeal from the judgment entered upon his report, may disregard his conclusions of law, if erroneous, and may direct the entry of such judgment upon the facts found, as in the opinion of the court should have been recommended by the referee. *Id.*

19. On an appeal from a judgment, the hearing thereon is like the former review by a writ of error, and the rulings on the trial and the charge to the jury are only open to examination so far as they were excepted to. *Keyes* v. *Devlin,* 518

20. A judgment against the plaintiff, in an action for the price or value of personal property delivered upon an alleged contract of sale, is no bar to an action by the same plaintiff against the same defendant, for damages for the wrongful detention of the property, proceeding upon the ground that, there having been no valid sale, the plaintiff is entitled to its possession. *Ball* v. *Larkin,* 555

21. As a general rule, it is only a party who is aggrieved by a judgment, who can reverse it. *Fairbanks* v. *Corlies,* 582

22. Where the plaintiff has obtained judgment in a district court, but being dissatisfied with the amount thereof, appeals to this court, and it appears that the judgment was erroneous and invalid, for the want of jurisdiction in the district court; whether, the defendant having paid the judgment, the limitation upon the prosecution of writs of error in favor of the party recovering the judgment (2 R. S. marg. p. 592, § 3), would furnish a principle for the guidance of the appellate court, and whether § 369 of the Code contemplates restitution in such a case? *Quere.* *Id.*

23. A judgment may be void, and yet the prevailing party stand in such a position in respect thereto, that it cannot be reversed on his appeal. *Id.*

24. The recovery in a district court must be limited to the service declared upon in the complaint and set forth in a bill of particulars, where such bill is furnished. *Id.*

25. In actions of tort, if a several judgment can be rendered against the guilty and the others be acquitted, a misjoinder of defendants is not available in any form. *Montfort* v. *Hughes,* 591

26. Where the complaint contains averments sufficient to authorize a judgment, the court may grant any remedy warranted by the facts. (*Note.*) *Lewis* v. *Varnum,* 690

See APPEAL, 24 to 29, 33, 34.
    DISTRICT COURTS, 10, 12, 13.
    EVIDENCE, 56, 60.
    LANDLORD AND TENANT, 29.
    MARINE COURT, 12, 14, 15.
    MECHANICS' LIEN LAW, 83, 89, 90, 91, 92, 94, 97.
    PRACTICE, *Default,* 36 to 39.
    PRACTICE, *Provisional Remedies,* 111, 112, 118, 123.
    RELIGIOUS CORPORATIONS, 1 to 3.

## JUDICIAL DECISIONS.

See RELIGIOUS CORPORATIONS, 1 to 3.

## JURISDICTION.

1. The Marine Court of the city of New York must render judgment within four days after a cause is finally submitted, or it loses jurisdiction; and a judgment rendered after the lapse of the four days will be reversed. *Kane* v. *Dulex,* 127

2. *It seems,* that where the case is tried by a jury, and a verdict for the defendant has been rendered, the omission of the court to render judgment thereon will not deprive him of the benefit of the verdict in his favor. *Id.*

3. Where a summons, issued from a justice's court, in an action for the fees of an attorney and counsel, required "the defendant to answer the complaint of the plaintiff for professional services;" *held,* a sufficient statement of the cause of action. It is only required, in such statement, to show a cause of action over which the court

below has jurisdiction. *Bissell* v. *Dean*,                                         172

4. *It seems*, that an action cannot be commenced in the Marine Court, by warrant returnable immediately, where neither the plaintiff nor defendant is a non-resident of the city and county of New York. (*Vide* §§ 90 and 112 of chap. 86, 2 Rev. Laws of 1813, pp. 372, 383.) *Agreda* v. *Faulberg*,                              178

5. *It seems*, that it is irregular to issue the warrant at all without security, where the ground thereof is the non-residence of the plaintiff.          *Id.*

6. Whether a defendant, after he has objected to the jurisdiction on the ground that the warrant is improperly issued, and after his objection has been overruled, waives the objection and confers jurisdiction by then pleading to the merits? *Quere.*          *Id.*

7. Where a warrant is issued in the Marine Court in a case unauthorized by law, a defendant, by pleading to the merits, waives objection to the process and submits to the jurisdiction.          *Id.*

8. A judgment entered by default in favor of a foreign corporation, will not be set aside for the failure to file security for costs before the commencement or during the pendency of the action. *The Merchants' Bank* v. *Mills*,                               210

9. Where an action is in substance the former action of waste, the complaint alleging a forfeiture and praying for a recovery of possession, the title to real estate appears by the pleadings to be in question, and the Marine and Justices' Courts have no jurisdiction. *Snyder* v. *Beyer*,                  235

10. Where the equitable power of the court is invoked to compel an accounting—to enforce a trust—to prevent a fraudulent misapplication of funds, or a misappropriation of property held as trustee; the jurisdiction is as ample now as before the Code. *Merritt* v. *Thompson*,                          284

11. Where a party, having been injured

while groping, in the evening, along the unfinished hall of a building in course of erection on the front of a lot, sues the owner for negligence in view of the dangerous condition of the hall, and, the owner having charged that the plaintiff was a trespasser, the latter claims to have been there of right and in virtue of a title in his daughters—as tenants of a rear building on the same lot—to a way across the premises, under which he avers a presumptive license in himself as their visitor; *quere*, whether the case involves a question of title to real estate in such sense as to oust the Marine and District or Justices' Courts of jurisdiction ? *Roulston* v. *Clark*,                               367

12. In an action for damages from the bite of a dog, an allegation in the pleadings that the plaintiff, when injured, was in a place where he had no right to be, does not put in issue a claim of title to real property, so as to entitle the plaintiff to costs in a court of record upon recovering less than fifty dollars. (Code, § 304, subd. 1.) *Pierret* v. *Moller*,              574

13. Where a plaintiff voluntarily brings his suit before the justice of a district wherein neither the plaintiff nor the defendant resides, and goes to trial upon the merits and recovers a judgment against the defendant, though for less than the plaintiff demands, it in no wise appearing on the trial that the parties do not reside within such district ; the plaintiff cannot, by appealing from such judgment, require the appellate court to reverse the judgment, upon the ground that the justice had no jurisdiction by reason of such non-residence. *Fairbanks* v. *Corlies*,                             582

14. Where the plaintiff has obtained judgment in a district court, but being dissatisfied with the amount thereof, appeals to this court, and it appears that the judgment was erroneous and invalid, for the want of jurisdiction in the district court; whether, the defendant having paid the judgment, the limitation upon the prosecution of writs of error in favor of the party recovering the judgment (2 R. S. marg. p. 592, § 3), would furnish a principle

for the guidance of the appellate court, and whether § 369 of the Code contemplates restitution in such a case? *Quere.* *Id.*

15. Whether a justice has authority, after the examination of witnesses has commenced, to suspend the trial, without the consent of both parties, except for the single cause that there is not time to conclude it on the day? *Dub.* *Id.*

See DISTRICT COURTS, 51.
    MARINE COURT, 38, 39, 47 to 49.

## JUSTICES' COURTS.

See DISTRICT COURTS.
    MARINE COURT.

## L.

### LABOR AND MATERIALS.

See AGREEMENT, 31 to 33.

### LANDLORD AND TENANT.

1. Where premises were demised for one year, "at the yearly rent of $500 (and Croton water tax) for the said term, payable quarterly," and the lease contained, *in addition to the* above words, a distinct covenant to pay the regular annual rent or charge which might be assessed, according to law, for the Croton water; *held,* that the amount of such assessment was not payable to the landlord, quarterly, in the same manner as the rent, but to the city authorities at the time prescribed by law, and that in default of making such payment, the tenant became liable to the landlord for the amount, and for any interest and penalty incurred thereon, in case the latter assumed and paid the same. *Per* WOODRUFF, J.; DALY, J., *concurring;* INGRAHAM, FIRST J., *dissenting.* (*a*) *Hackett* v. *Richards,* 14

(*a*) Affirmed in the Court of Appeals.

2. Where a lease provided, that in case of a breach of any covenant thereof, the landlord might enter and relet the premises, applying the avails thereof, first, to the expenses incurred in the reëntry, secondly, to the payment of the rent due by the terms of the lease, and the balance, if any, to pay to the tenant, the latter agreeing to make up any loss or deficiency during the residue of the term; it was *held,* that the landlord, having taken possession of and relet the premises during the term, was not entitled, in accounting to the first tenant for the rent realized from the second, to make any deduction by reason of expenditures for improvements of a permanent character, whereby the premises were enhanced in value and an increased rent obtained on the reletting. INGRAHAM, FIRST J., and WOODRUFF, J., *concurring;* DALY, J., *dissenting.* *Id.*

3. Under such circumstances, where one of the quarter days, designated in the original lease, occurs intermediate the dispossession and the expiration of the term, the lessee should be charged, in account with the landlord, the rent falling due on such quarter day under the provisions of the lease, and should be credited whatever has up to that time been paid by the new tenant, and either party is thereupon entitled to recover any balance that on such accounting may be stated in his favor, leaving a final settlement to be made at the end of the term. when it may appear what amount is finally realized from the new tenant. And although, *on the trial* of an action, brought by the landlord against the original lessee, which trial takes place after the expiration of the term, the evidence shows that the plaintiff, since the action was commenced and since the issue was joined, has received from the new tenant the rent in full, yet, in giving judgment, the rights of the parties must be determined as they existed when the suit was brought, unless the defendant by supplemental answer sets up such receipt of rent after suit brought as a defence arising after the former answer was put in under § 177 of the Code. WOODRUFF and DALY, JJ., *concurring;* INGRAHAM, FIRST J., *dissenting.* (See the three following notes, which are abstracted from the

opinion of the Court of Appeals re-
viewing this case.)            *Id.*

4. Where the lessee covenants, that
if the lessor shall reënter during the
term for condition broken, and shall
be unable to relet the premises for a
sum equal to the amount of the rent
reserved, that he will pay the lessor
the deficiency, and the lessor reënters
and relets the premises for the residue
of the term, he can only recover of
the lessee the difference between the
amount of the rent reserved by the
original lease and the amount of all
the rent realized during the term from
the original lessee and the tenant to
whom the premises were relet.    *Id.*

5. And where the lessor, after a reëntry
and a reletting of the premises, brings
an action upon such covenant before
the rent reserved from the tenant to
whom he relet is due, he can only re-
cover the deficiency which exists,
after allowing the amount of this rent
towards the rent reserved from the
original lessee.            *Id.*

6. Nor is such lessor entitled to any al-
lowance as against the original lessee,
for expenditures made upon the pre-
mises after the reëntry, although
thereby he was enabled to and did
obtain more rent for the residue of the
term from the tenant to whom he re-
let the premises.            *Id.*

7. A surrender of a written lease cannot
be made by parol. It must be by
writing or by operation of law.    *Og-
den* v. *Sanderson,*            166

8. An eviction of a tenant is an inter-
ference with his possession of the de-
mised premises, or some part thereof,
by or with the consent of the land-
lord, whereby the tenant is deprived
of the use without his assent.    *Id.*

10. Where a tenant left the demised
premises in the middle of a quarter, to
allow the repair of damages caused by
a fire, the lease providing that in such
case the rent should cease until the
reparation was completed; *held,* that
a subsequent occupation of the pre-
mises, with the landlord's assent, by a
third person as tenant, terminating
before the completion of the repairs,

could not be deemed an eviction of
the original tenant, he having been
present at a negotiation between the
landlord and such third person for re-
letting to the latter, and at the same
time himself proposing to surrender
his lease.    .    .    *Id.*

11. Acts amounting to a temporary
eviction of a tenant, simply suspend
the rent during the continuance of the
eviction; and the same being termi-
nated, the landlord is entitled to the
rent which had accrued when such
eviction commenced.    .    *Id.*

12. The proposal, to his landlord by a
tenant, who has temporarily left the
demised premises during repairs ren-
dered necessary by a fire, to surrender
the premises, and the temporary oc-
cupation thereof by a third person
under the procurement of the land-
lord, and with the tenant's consent,
such third person being in negotiation
to obtain a reletting to himself, in
place of the first tenant, do not con-
stitute an alteration of the original
lease, exempting a surety from liabil-
ity for the rent, the lease not being
altered by any writing signed by the
landlord, and the proposed surrender
not having been accepted by him.    *Id.*

13. A fraudulent representation, by the
lessee of a house, as to the amount
paid by him under his lease, will not
avoid a contract made by him for hir-
ing to a third person a part of the
premises, at a specified rent, it being
within the power of the latter to as-
certain the value by a personal exam-
ination.    *Rosenbaum* v. *Gunter,*    203

14. A party cannot avoid a contract on
the ground that he was induced to
enter into it by fraudulent represen-
tations, where, after discovering the
fraud, he has continued for a length
of time in the enjoyment of any bene-
fit derived from such contract.    Ac-
cordingly, a tenant, having continued
in possession of the demised premises
for months after learning the fraudu-
lent character of statements whereby
he was led to become a party to the
lease, cannot obtain a rescission
thereof by reason of the fraud.    *Id.*

15. Where a wife is designated by the

husband as his agent for the management of his property during his absence, repairs made by a tenant under authority granted by her, and for which she promised to pay, are chargeable to the landlord. *Id.*

16. In an action against the surety for the rent of the premises, moneys paid by the tenant for repairs which the landlord or his agent agreed to pay by deduction from the rent, are in effect payments on account of the rent, and as such may be allowed to the surety in reduction of the plaintiff's recovery. *Id.*

17. Where a lease requires the rent to be paid quarterly, the landlord's acceptance of the rent by the tenant's request in monthly payments, does not change the written lease, nor discharge a surety given by the tenant for the payment of the rent. *Ogden* v. *Rowe,* 312

18. Where a lease reserved to the landlord the right to relet the premises, if they became vacant, and apply what he should receive to the rent reserved, and a surety, upon notice from the tenant that he could not pay the rent, arranged with the agent of the landlord that he should let them, and the agent, having put up a bill, agreed to a letting, whereupon the original lessee removed and was succeeded by the new tenant, who entered and paid rent for a short time; *held,* that this was not a substituted tenancy operating as a surrender in law, and that the original tenant and his surety both continued liable. *Id.*

19. The acceptance of rent from an assignee of a lease, though acknowledged to have been paid by such assignee and in his own name, does not discharge the original lessee from his covenant to pay the rent thereafter accruing, nor affect the liability of the surety for such lessee. *Damb* v. *Hoffman,* 361

20. Such acceptance of rent from an assignee of the lease, does not bring the case within the rule, that the creation of a new tenancy and substitution of another tenant, under an agreement to that effect, amounts to a surrender, and discharges the former lessee and his surety. *Id.*

21. Whether in an action upon an agreement of suretyship annexed to a lease, in which agreement the defendant becomes surety for the payment of the rent and the performance of the covenants mentioned in the lease, and agrees, in case of default by the lessee, to pay any deficiency and satisfy the conditions of the lease without requiring any notice of non-payment or proof of demand; *quere,* whether the burden is upon the plaintiff to show that a deficiency has arisen, or upon the surety to prove that the rent has been paid in full, pursuant to the requirements of the lease. *Id.*

22. Where a tenant represents that he is the owner of, and sells to a subtenant, as personal property, articles upon the demised premises which are a part of the freehold and to which he has no title except as tenant, the purchaser may recover damages arising from the failure of the vendor's title. *Beckmann* v. *Bormann,* 409

23. *So held,* where the property forming the subject of such representation and sale, was a kitchen and chimney connected with the main building upon the premises. *Id.*

24. The subsequent destruction of the property, during the demised term, by a removal for public purposes, or the forfeiture of the lease to the original landlord, may affect the quantum of damages, but does not defeat the vendee's right of action. *Id.*

25. Where, in an action for use and occupation, it appeared that the premises were hired by an agent, who signed a lease under seal, and the tenant afterwards occupied the premises and paid the rent for one quarter in accordance with the terms of the lease; *held,* that the plaintiff was entitled to recover the same rent for a subsequent quarter, although the agent's authority was by parol and did not extend to the execution of a sealed instrument. *Vanderbilt* v. *Persse,* 428

26. The courts in this state have been disposed to restrict, rather than ex-

tend, the rule laid down in the case of *Dyett* v. *Pendleton* (8 Cowen, 727), in respect to what circumstances may constitute the eviction of a tenant or relieve him from his obligation to pay rent.　　　　　　　　　*Id.*

27. Where a landlord, at the request of an agent of a tenant of lands, delivered some loads of hay upon the premises, and the tenant, upon a bill therefor being presented to him, remarked that there was more than he should want, but that he would see about it; it was *held*, that the proof of the agent's authority to give the order being defective, the tenant should not be charged with so much of the hay as was left by him upon the premises at the termination of the tenancy.　　　　　　　　　*Id.*

28. The mere acceptance by the landlord, of the key of the demised premises, from a tenant who quits possession during the term, is not an acceptance of the surrender, where the landlord states that he receives the key but not the premises. *Townsend* v. *Albers*,　　　　　　　　　560

29. In an action for rent, proof that the defendant, a German, was in the occupation of the premises, though it was not shown for what period, and that an account being presented and explained to him in which a sum of money, described as rent for the term mentioned in the complaint, was stated to be due the plaintiff, the defendant promised to pay it; *held*, sufficient *primâ facie*, to sustain a judgment. *Treadwell* v. *Bruder*,　　　　596

30. Under such circumstances, whether the plaintiff became entitled to the rent as owner of the premises, or as lessee, or even by assignment of the rent, is immaterial.　　　　　*Id.*

31. Title in a third person, as against a party claiming the rent, must be shown by the usual muniments of title or by evidence of possession for such a period as raises a presumption of title.　　　　　　　　　*Id.*

　　See AGREEMENT, 27.
　　　　MARRIED WOMEN, 1.
　　　　TRESPASS, 5 to 7.

## LEASE.

See LANDLORD AND TENANT.

## LETTERS.

See EVIDENCE, 48.

## LEVY.

See EVIDENCE, 85, 86.
　　PRACTICE, *Attachment*, 23, 25.

## LIBEL.

1. An action for a libel against members of a company or of an association, neither being partners nor persons having a community of pecuniary interest wherein they could sustain damage, cannot be maintained by them jointly. *Giraud* v. *Beach*,　337

2. So held, where the libel consisted of a newspaper article, charging that members of a certain hose company, without specifying the persons referred to, had committed a theft. *Id.*

3. Whether in such case any one member of the company could maintain the action? *Dub.*　　　　　　　*Id.*

4. Where a libel relates to one of several persons, but does not specify to which, such persons cannot, by prosecuting an action for damages, put the defendants upon their defence and compel them to disclose to whom the libel referred.　　　　　　*Id.*

5. In order to sustain the action a plaintiff must prove affirmatively that he is the person referred to in the libel.　　　　　　　　*Id.*

6. In an action commenced by an association of persons to recover damages for a libel; *held*, that it was error to allow at the trial, the names of several of the original plaintiffs to be stricken out and the substitution of others, without imposing terms or allowing to the defendants any opportunity to prepare for a defence after such change had been made.　　*Id.*

## LICENSE.

See STATUTE OF FRAUDS, 3, 4.

## LIEN.

See BAILMENT, 1.
FREIGHT, 3 to 5.
MECHANICS' LIEN LAW.

## LIMITED PARTNERSHIP.

See PARTNERSHIP, 7, 10 to 16.

## LOST NOTES AND BILLS.

See BANK CHECKS, 1 to 6.

# M

## MALICIOUS PROSECUTION.

1. In an action for a malicious prosecution, if want of probable cause is shown, malice may be inferred; express malice need not be proved. *Garrison* v. *Pearce*, 255

2. If a party is kept in prison for any period, however short, without probable cause, the law presumes that he sustains damages. *Id.*

3. Special damage need not, in such case, be averred nor proved. *Id.*

4. Whether the defendant had probable cause or not for the prosecution, is a question for the court when the facts are not disputed. *Id.*

5. And when the facts are in dispute, it becomes a question of law and fact, upon which the jury must pass upon the questions of fact, under instructions from the court respecting the rules of law applicable to the subject declaring what facts constitute probable cause. *Id.*

## MARINE COURT.

1. Where a return from the Marine Court certified that the defendant did not appear in the cause, that no pleadings were put in, and that the justice received a statement of facts from the attorneys of the respective parties, whereon he rendered judgment, without examining any witnesses; *held*, that the judgment could not be sustained. *Heidenheimer* v. *Lyon*, 54

2. *It seems*, that where a process, in the Marine or District Courts, is issued against a defendant by a fictitious name, and is returned served by copy; it must appear that the summons was left at the residence or place of business of the person whose real name may afterwards be inserted as defendant, in case he does not appear on the return day. *Id.*

3. The Code provides, that on filing a transcript of a judgment of the Marine or Justices' Courts, the same shall be enforced in the same manner as, and "be deemed," a judgment of this court. *It seems*, therefore, that the same power exists to allow a set off of such a judgment, as of a judgment originally entered in this court. *Bayley* v. *Brown*, 66

4. A plaintiff in the Marine or a Justice's Court, may be nonsuited on his own election, or by reason of incompetency or insufficiency of evidence. *Peters* v. *Diossy*, 115

5. In either case the nonsuit must be directed at the trial; or, *it seems*, when the cause is submitted to a jury, before the coming in of the verdict. *Id.*

6. Such judgment of nonsuit is no bar to a second action. *Id.*

7. Where the case has been submitted to the justice and he reserves his decision, it is no longer within the power of the plaintiff to submit to a nonsuit, nor of the justice to grant it. *Id.*

8. If, after such submission and reservation, he gives judgment in favor of the defendant, in the form of a judgment of nonsuit, the same can nevertheless be pleaded in bar of a second action. *Id.*

9. The return of a justice of the Marine

or a district court, should set forth—when the summons or process was returnable, the day issue was joined, the adjournments, if any, the date of the trial, and the day whereon judgment was rendered.                              *Id.*

10. Where a defendant in the Marine Court, moved to dismiss the process, on the ground that he was improperly sued by a short summons, objecting, also, to the form of the summons, the manner in which security was taken upon commencing the action, and the sufficiency of the constable's return; at the same time pleading to the merits and demanding a jury; *held*, that the objections were waived by the plea to the merits, and that the decision of the justice upon the objections could not be reviewed on appeal. *Ingersoll* v. *Gillies*,                      119

11. Where a defendant has once appeared in the Marine or one of the justices' courts, and afterwards suffers judgment by default, having mistaken the time to which the cause was adjourned; the 366th section of the Code confers no power upon the appellate court to grant relief. *Williams* v. *McCauley*,             120

12. The Marine Court of the city of New York must render judgment within four days after a cause is finally submitted, or it loses jurisdiction; and a judgment rendered after the lapse of the four days will be reversed. *Kane* v. *Dulex*,                             127

13. The amendatory act of April 7, 1857, appears to have left the law unchanged in this respect. (*Note*.)               *Id.*

14. *It seems*, that where the case is tried by a jury, and a verdict for the defendant has been rendered, the omission of the court to render judgment thereon will not deprive him of the benefit of the verdict in his favor. *Id.*

15. Such verdict may be pleaded by him in bar of another action, although no judgment is entered thereon.       *Id.*

16. The plaintiff, in such case, cannot, after verdict, elect to be nonsuited, and then maintain another action for the same cause.                       *Id.*

17. All the evidence, documentary and parol, used on the trial in the Marine or a justice's court, should be furnished to the appellate court upon an appeal.                                    *Id.*

18. It is not, on appeal to this court, a sufficient reason for setting aside a judgment rendered in one of the lower courts by default, that the defendant's failure to appear was caused by his reliance upon the promise of the assignor of the plaintiff (with whom—after receiving notice of the assignment—he was negotiating for a settlement), to stop the proceedings in the suit. *Travis* v. *Bassett*,               171

19. In actions in the Marine Court, applications to open defaults for such a cause should be made in that court. *Id.*

20. The existence of a valid set off against the assignor of the plaintiff, though it might have been used against the assignee, but for which the defendant may still maintain an action against such assignor, does not prove that "manifest injustice has been done" (within the meaning of § 366 of the Code), by a judgment for the plaintiff by default in the Marine Court. *Id.*

21. When a defendant is brought into the Marine Court upon a warrant, and the action cannot, "by reason of other business or other cause," be tried immediately, the defendant must give security or be committed. (2 Rev. Laws of 1813, p. 385, § 119; and § 133–4.) *Agreda* v. *Faulberg*,               178

22. And when, after demanding a jury, the defendant departs without giving security or submitting to a commitment, it is no ground for a reversal that the court do not order a jury to be summoned, and adjourn the cause for that purpose.                   *Id.*

23. The defendant having, by such departure, rendered it impossible to comply with his demand without violating the law forbidding an adjournment without a commitment or security for his appearance, cannot complain that a jury was not summoned. *Id.*

24. *It seems*, that an action cannot be

commenced in the Marine Court, by warrant returnable immediately, where neither the plaintiff nor defendant is a non-resident of the city and county of New York. (*Vide* §§ 90 and 112 of of chap. 86, 2 Rev. Laws of 1813, pp. 372, 383.) *Id.*

25. *It seems*, that it is irregular to issue the warrant at all without security, where the ground thereof is the non-residence of the plaintiff. *Id.*

26. Whether a defendant after he has objected to the jurisdiction on the ground that the warrant is improperly issued, and after his objection has been overruled, waives the objection and confers jurisdiction by then pleading to the merits? *Quere.* *Id.*

27. Suitable points should be furnished by counsel on the submission of an appeal, and the appellate court be referred to such authorities and statutory enactments as are relied upon by a respondent to sustain a judgment. *Id.*

28. The liberal provisions of the Code, allowing amendments by striking out the names of parties, are not applied to the Marine and District or Justices' Courts. *Id.*

29. The Marine Court cannot strike out the name of a plaintiff and permit him to be examined as a witness, on a mere suggestion of mistake without any proof. *Id.*

30. Where a warrant is issued in the Marine Court in a case unauthorized by law, a defendant, by pleading to the merits, waives objection to the process and submits to the jurisdiction. *Id.*

31. The statute (2 R. S. 3d ed. p. 519, marginal p. 424), allowing the amendment of process and pleadings, continues in force together with and unrepealed by the Code of Procedure, and that provision of the Revised Statutes applies to the Marine Court. *Id.*

32. Where the name of one of several plaintiffs is shown to have been inserted in the process by mistake, the Marine Court has power to strike it out. *Id.*

33. Where an action is in substance the former action of waste, the complaint alleging a forfeiture and praying for a recovery of possession, the title to real estate appears by the pleadings to be in question, and the Marine and Justices' Courts have no jurisdiction. *Snyder* v. *Beyer*, 235

34. Whether, in the Marine Court, the summons may be served by a person under the age of twenty-one years? *Quere.* *Miln* v. *Russell*, 303

35. See note, referring to the recent statutes affecting this question. *Id.*

36. Objection to the manner of the service of the summons in the Marine and Justices' Courts, is matter in abatement only, and is waived by pleading to the merits. *Id.*

37. In the Marine and District or Justices' Courts, a plaintiff may present his cause of action in as many aspects as he can, if they are not inconsistent with each other, and all exhibit causes of action which may be joined. *Wentworth* v. *Buhler*, 305

38. By an adjournment of a cause, without the consent of parties or in their absence for a period not allowed by law, the Marine Court loses jurisdiction. *Wight* v. *McClave*, 316

39. Where, on appeal from a judgment of the Marine Court, it appeared, that after the trial in that court commenced and witnesses were examined, the case was adjourned for nine days, at the expiration of which the judge was prevented by sickness from attending, and the return did not state by whom nor in what manner the cause was continued, otherwise than that "it appeared by the records of the court" that the case was adjourned from the last adjourned day for the time of four days, and again repeatedly afterwards, and finally again for seven days—it not appearing that either of the parties was present at any adjournment except the first two, nor that any consent was given; *held,* that that court had lost jurisdiction, and that a

judgment rendered upon proofs produced by the plaintiff, *ex parte*, after the day last named, was erroneous. *Id.*

40. Whether a supplemental answer can be filed in the Marine and District or Justices' Courts? *Quere.* *Russell* v. *Ruckman*, 419

41. Pending an appeal from the Marine or a District Court, when one of the parties to the action is ascertained to be an infant, this court, upon the application of the other party, as well as upon the infant's request, will appoint a guardian *ad litem*, where none has been appointed by the justice. *Fish* v. *Ferris*, 567

42. The application will be heard at special term. *Id.*

43. The appointment, however, in the absence of any special cause for immediate action, will not be made until the return is filed. *Id.*

44. The district court consolidation act, of April 13, 1857, prescribes the mode of appointing guardians in those courts. (See Laws of 1857, vol. 1, chap. 344, § 11, p. 710.) *(Note.)* *Id.*

45. *It seems*, that a non-resident defendant may be sued in the Marine Court by a summons, as well as by a warrant, although the action is not founded upon contract. *Aldrich* v. *Ketcham*, 577

46. A defect in the process, in the Marine Court, is waived by appearing and pleading to the merits. *Id.*

47. Where a defendant, being prosecuted in the Marine Court, neglected to appear on the return of the summons, whereupon the plaintiff declared, and after several adjournments, proceeded to trial before a jury empanelled at his request, and completed the examination of a witness; *held*, that it was error to receive from the defendant a plea to the merits, and continue the trial. *Montfort* v. *Hughes*, 591

48. Whether the statute empowering the Marine Court to open defaults (Session Laws of 1853, chap. 617, § 5, p. 1165)

warrants that court in suffering a defendant, under such circumstances, to appear and answer, even although the plaintiff, by a suspension of the trial, is allowed an opportunity to make new preparation therefor and to examine witnesses *de novo?* *Quere.* *Id.*

49. *It seems*, that after the trial is commenced and testimony taken, such an indulgence to a defendant could not be exercised in the district courts. *Id.*

50. The authority of an attorney or agent to appear for a party in the Marine or District Courts, must be demanded, if at all, at the time of the appearance. *Treadwell* v. *Bruder*, 597

See EVIDENCE, 38, 90.
JURISDICTION, 11.
PLEADING, 29.

## MARRIED WOMEN.

1. Proof that a married woman and her husband occupy a house together, and that the "millinery business," in relation to which both take a part, is there carried on, connected with evidence that the defendant hired a room in the house from the wife by a parol agreement, is not sufficient to enable the wife to sue alone for the rent as her separate property. *Rouillier* v. *Wernicki*, 310

2. Such proof does not show that the wife has any separate estate. *Id.*

3. The recent statutes of this state, entitled "for the protection of married women," etc., do not enable them to become sole traders—buy and sell—make agreements—take leases—become liable for the rent—and incur responsibilities of that nature. *Id.*

4. Whether the indulgence in such privileges would prove for their protection? *Quere.* *Id.*

See HUSBAND AND WIFE, 1.
MECHANICS' LIEN LAW, 34, 35.

## MASTER AND SERVANT.

1. The owner of a dog is not liable for

the willful act of his servant in setting the dog upon the cattle of another. *Steele* v. *Smith*, 321

2. The mere fact that the owner stood near will not warrant a judgment against him in such case, without proof that the servant acted by his command or direction. *Id.*

3. And this is especially true where it appears that the owner, so soon as he saw the act, gave immediate orders to take off the dog. *Id.*

4. Master and servant may be joined as defendants when the action is to recover damages for the negligence of the servant. *Montfort* v. *Hughes*, 591

5. Where the action is founded solely upon the negligence of the servant, the master not being present nor acting in the matter, if the servant be acquitted there can be no recovery against the master. ° *Id.*

MECHANICS' LIEN LAW.

I. CONSTITUTIONALITY OF THE LAW.

II. NATURE AND EXTENT OF THE LIEN AUTHORIZED.

   1. *As to the property bound thereby.*
   2. *As to the liability of the owner of the building.*
   3. *As to the amount which may be claimed under the lien; and herein, of the effects of payments made to the contractor before the claim is filed.*

III. BY AND AGAINST WHOM THE LIEN MAY BE ACQUIRED, AND IN WHAT CASES.

IV. HOW AND AT WHAT TIME THE LIEN MAY BE ACQUIRED; REQUISITES OF NOTICE, &c.

V. FORECLOSURE OF THE LIEN.

   1. *When the lien may be enforced.*
   2. *Nature of the proceeding; pleadings, practice, judgment, and execution therein; appeal.*
   3. *Parties to the proceeding.*

4. *Defence—payments, &c.*
5. *Evidence.*
6. *Costs.*

I. CONSTITUTIONALITY OF THE LAW.

1. The application of the act of 1851 to labor performed under contracts made before its passage, is not open to constitutional objection, as altering the rights of the parties to the contract so as to impair its obligation. *Hauptman* v. *Catlin*, 666

2. Nor as taking the property of the owner without due process of law. *Id.*

3. Nor as being retro-active in its operation. *Id.*

4. The recovery under this statute must, however, be limited to work done or materials furnished after it took effect, on the first of August, 1851. *Id.*

II. NATURE AND EXTENT OF THE LIEN AUTHORIZED.

   1. *As to the property bound thereby.*
   2. *As to the liability of the owner of the building.*
   3. *As to the amount which may be claimed under the lien; and herein, of the effects of payments made to the contractor before the claim is filed.*

5. The recovery, in an action under the mechanics' lien law, is limited to the "bill of particulars of the amount claimed to be due," prescribed in § 5. *Lutz* v. *Ey*, 621

6. A provision in the building contract, that the claimant shall take in payment the note of the owner, payable in one year, with a satisfactory indorser, does not, where the note is not delivered pursuant to the contract, deprive him of his right of action, under this statute, to enforce a lien for the value of his labor and materials. *Id.*

7. The claimant, however, is not entitled to interest for the period during which the note would have been running to maturity. *Id.*

8. *It seems*, that a notice, averring that the work was done and the materials furnished in pursuance of a contract for the erection of certain specified buildings, whereof the defendant, naming him, is the owner, is *primâ facie* sufficient, without alleging by whom such contract of erection was made by the owner.    ..    *Id.*

9. An owner may be relieved, even upon a motion, from a lien filed after six months from the performance. *Id.*

10. Or, he may avail himself of the irregularity as matter of defence to an action founded on the alleged lien. *Id.*

11. The remedies created in the mechanics' lien law are of a purely statutory and extraordinary nature, and the provisions for their enforcement must be strictly construed. *Roberts v. Fowler,*        632

12. The sale of the owner's interest in a building and lot of land, pursuant to a judgment in a proceeding under the act for the better security of mechanics and others, is absolute. *Randolph v. Leary,*    .    637

13. It is like a sale under the foreclosure of a mortgage, and it conveys all the right and title of the owner existing when the lien was effected. *Id.*

14. This view of the nature of the sale results from the principles uniformly adopted by this court in the construction of that statute, and is sanctioned by the amendatory act of 1855. (Laws of 1855, chap. 404, p. 760.)    *Id.*

15. Where the sale is made by the sheriff, he is bound to execute to the purchaser a deed of conveyance of the owner's interest in the premises. *Id.*

16. A mere certificate of sale, as in cases of sales of interests in real estate to satisfy ordinary claims, with a view to a redemption under the statute (2 R. S. marg. p. 370) is not sufficient. *Id.*

17. The right of redemption, given by the Revised Statutes to a debtor and to his heirs, devisees and grantees, upon a sale of real estate under an execution, does not apply to proceedings *in rem.* (2 R. S. part 3, chap. 6, title 5, art. 2, §§ 47, 48, etc.)    . . .   *Id.*

18. From the first adjudication under this statute, the court has held the proceeding thereunder to be an equitable one—*in rem* and not *in personam* —and as the foreclosure of a lien, not an ordinary action for the collection of a debt.      .      *Id.*

19. Whether, under the legislative interpretation of the lien law contained in the act of 1855, the judgment directing the sale of the owner's interest is not of itself a sufficient warrant for the sale, without the necessity of issuing an execution where no costs or other moneys are to be collected from the defendant personally? *Quere.* *Id.*

20. The judgment, in an action under the mechanics' lien law of 1851 and under the amendatory act of 1855, must direct the sale, not of the land and premises upon which the lien exists, but of the owner's interest therein, to the extent of his right at the time the notice of lien was filed.— *Smith v. Corey,*      642

21. Accordingly, where the sheriff, although the direction in the judgment was correct, sold the property itself; a resale was ordered by the court, to the end that only the owner's interest might be sold.      .   *Id.*

22. It is unnecessary that the sale should be in terms expressed to be subject to mortgages or other incumbrances, because the subject of the sale is the owner's interest only, pursuant to the statute, and any superior rights of other persons in the premises are preserved by operation of law.    *Id.*

23. The sale of the owner's interest under that statute is absolute.    *Id.*

24. The owner has no right of redemption, and the offer to the purchaser of a certificate of sale, as in cases where a debtor's interest in lands is sold under ordinary executions, is erroneous    . . . . *Id.*

25. A percentage, by way of extra costs, upon the recovery in an action under the mechanics' lien law, cannot be allowed, where the damages in default of the defendant to answer, have been assessed under a writ of inquiry. *Randolph* v. *Foster,* 648

26. Where no issue is joined upon the pleadings, a proceeding to determine the amount of the plaintiff's recovery is not a "trial," within § 308 of the Code. *Id.*

27. In a proceeding to enforce an alleged lien under the act for the better security of mechanics and others, it appeared that the owner of land agreed with a contractor to erect thereon an addition to a building; that no stipulation was made in respect to the price or terms of payment, except that the construction should be accomplished by days' work; that the contractor proceeded therewith, but absconded before the building was inclosed. *Held,* that a subcontractor was without remedy, under this statute, for materials furnished by him and employed in the unfinished erection. *Cunningham* v. *Jones,* 650

28. *Held,* further, that the contract was entire, and that the contractor was not entitled to any payment from the owner for the value of the part performance. *Id.*

29. A voluntary payment on account does not alter the legal effect of such a contract, and render the owner liable for the value of the work left unfinished by the contractor. *Id.*

30. The rule that where there has been a substantial compliance, the contractor may enforce payment with a reasonable reduction, does not apply to cases where the work is abandoned in a grossly unfinished state. *Id.*

31. The right of a subcontractor to recover against the owner, under the lien law, depends upon the possession, by the contractor, at or subsequently to the filing of the lien, of a claim which the latter could himself enforce. *Id.*

32. Although, by the *terms* of the building contract, payments may become

payable from the owner to the contractor after the lien is filed; a subcontractor has no remedy under the act of 1851, if such payments have in good faith been previously anticipated and discharged. *Lynch* v. *Cashman,* 660

33. Otherwise, however, if the prepayments were designed to evade the statute, and defraud the laborer or material man of its benefits. *Id.*

34. Where a notice of lien stated a claim against A. and B. his wife, for materials furnished in the erection of a building, and added that such materials were furnished in pursuance of a contract with A. and that the building was owned by B; the notice was held valid, although the contract was in fact made with the husband merely as agent of the wife. *Hauptman* v. *Catlin,* 666

35. Labor performed and materials furnished for the benefit of the separate estate of the wife, may establish a claim resting in contract, which may be enforced by a proceeding under the lien law of 1851; and this, irrespective of the question whether a married woman can make a contract which would be binding upon her as upon a *feme sole.* *Id.*

36. The recovery under this statute must be limited to work done or materials furnished after it took effect, on the first of August, 1851. *Id.*

37. A lien cannot be acquired against the purchaser of a building, for materials furnished or labor performed before the conveyance, by filing a notice of claim subsequently to the purchase, although the purchaser became such with notice of the amount due the claimant, and the premises were conveyed subject to the payment thereof. *Sinclair* v. *Fitch,* 677

38. Although a vendee may have purchased premises under such conditions and with such notice as to render him liable to a claimant for labor or materials furnished pursuant to the employment of the original owner; such liability cannot be enforced in a proceeding under this statute, where the

notice prescribed in the sixth section has not been filed before the purchase. *Id.*

III. BY AND AGAINST WHOM THE LIEN MAY BE ACQUIRED, AND IN WHAT CASES.

39. The statute does not distinctly require the claimant to state in the notice the character—whether as contractor, sub-contractor or laborer—wherein the work was performed or materials were furnished for which the lien is claimed. It is better, however, to allege the fact in that respect. *Lutz* v. *Ey,* 621

40. An owner may be relieved, even upon a motion, from a lien filed after six months from the performance. Or, he may avail himself of the irregularity as matter of defence to an action founded on the alleged lien. *Id.*

41. The power to acquire a lien upon real estate, under the act of 1851, for the better security of mechanics and others, is a personal right, conferred exclusively upon the very person by whom labor is performed or materials are furnished in building, altering, or repairing a house or its appurtenances. *Roberts* v. *Fowler,* 632

42. The lien cannot be effected by an assignee of the claim of a contractor, laborer, or person furnishing materials. *Id.*

43. The remedies created in the mechanics' lien law are of a purely statutory and extraordinary nature, and the provisions for their enforcement must be strictly construed. *Id.*

44. The eleventh section of the act, which provides that the lien may be discharged by filing a certificate of the claimant or his successors in interest, recognizes a transfer of the claim, but only at some period subsequent to the filing and creation of the lien. *Id.*

45. In a proceeding to enforce an alleged lien under the act for the better security of mechanics and others, it

appeared that the owner of land agreed with a contractor to erect thereon an addition to a building; that no stipulation was made in respect to the price or terms of payment, except that the construction should be accomplished by days' work; that the contractor proceeded therewith, but absconded before the building was inclosed. *Held,* that a subcontractor was without remedy, under this statute, for materials furnished by him and employed in the unfinished erection. *Cunningham* v. *Jones,* 650

46. *Held,* further, that the contract was entire, and that the contractor was not entitled to any payment from the owner for the value of the part performance. *Id.*

47. A voluntary payment on account does not alter the legal effect of such a contract, and render the owner liable for the value of the work left unfinished by the contractor. *Id.*

48. The rule that where there has been a substantial compliance, the contractor may enforce payment with a reasonable reduction, does not apply to cases where the work is abandoned in a grossly unfinished state. *Id.*

49. The right of a sub-contractor to recover against the owner, under the lien law, depends upon the possession, by the contractor, at or subsequently to the filing of the lien, of a claim which the latter could himself enforce. *Id.*

50. Although, by the *terms* of the building contract, payments may become payable from the owner to the contractor after the lien is filed; a subcontractor has no remedy under the act of 1851, if such payments have in good faith been previously anticipated and discharged. *Lynch* v. *Cashman,* 660

51. Otherwise, however, if the pre-payments were designed to evade the statute and defraud the laborer or material man of its benefits. *Id.*

52. The mechanics' lien law of 1844 required that the incipient measures to effect a lien should be taken within

twenty days after the making of the contract or commencement of the work. That statute was repealed by the act of 1851, which allows the lien to be filed within six months after the performance of the contract. *Held*, that a laborer or material man, when the latter act had taken effect, might acquire a lien pursuant thereto, at any time within six months after the work was performed or materials were furnished, although the contract therefor was made while the law of 1844 was alone in force. *Hauptman* v. *Catlin*, 666

53. The statute last enacted applies not only to work performed or materials furnished under contracts made after its passage, but also to work performed or materials furnished, after such passage, by virtue of contracts previously made. *Id.*

54. Where a notice of lien stated a claim against A. and B. his wife, for materials furnished in the erection of a building, and added that such materials were furnished in pursuance of a contract with A., and that the building was owned by B. ; the notice was held valid, although the contract was in fact made with the husband merely as agent of the wife. *Id.*

55. Labor performed and materials furnished for the benefit of the separate estate of the wife, may establish a claim resting in contract, which may be enforced by a proceeding under the lien law of 1851; and this, irrespective of the question whether a married woman can make a contract which would be binding upon her as upon a *feme sole*. *Id.*

56. A lien cannot be acquired against the purchaser of a building, for materials furnished or labor performed before the conveyance, by filing a notice of claim subsequently to the purchase, although the purchaser became such with notice of the amount due the claimant, and the premises were conveyed subject to the payment thereof. *Sinclair* v. *Fitch*, 677

57. Although a vendee may have purchased premises under such conditions and with such notice as to render him liable to a claimant for labor or materials furnished pursuant to the employment of the original owner; such liability cannot be enforced in a proceeding under this statute, where the notice prescribed in the sixth section has not been filed before the purchase. *Id.*

IV. How and at what time the Lien may be acquired.

Requisites of Notice, &c.

58. The act of 1851, "for the better security of mechanics and others," provides that the notice to acquire a lien for labor or materials, shall specify "the amount of the claim and the person against whom the claim is made, the name of the owner of the building, and the situation of the building, by its street and number, if the number be known." (Laws of 1851, chap. 513, § 6.) *Lutz* v. *Ey*, 621

59. The statute does not distinctly require the claimant to state in the notice the character—whether as contractor, sub-contractor or laborer—wherein the work was performed or materials were furnished for which the lien is claimed. *Id.*

60. It is better, however, to allege the fact in that respect. *Id.*

61. *It seems*, that a notice, averring that the work was done and materials furnished in pursuance of a contract for the erection of certain specified buildings, whereof the defendant, naming him, is the owner, is *primâ facie* sufficient, without alleging that such contract of erection was made by the owner. *Id.*

62. It is unnecessary to state in the notice, that the labor has been performed or the materials furnished within six months. *Id.*

63. In respect of the limitation contained in this statute, the inquiry is not as to the time when the notice was made out, but when it was actually served upon the county clerk. *Id.*

64. An owner may be relieved, even upon a motion, from a lien filed after six months from the performance. *Id.*

65. Or he may avail himself of the irregularity as matter of defence to an action founded on the alleged lien. *Id.*

66. The remedies created in the mechanics' lien law are of a purely statutory and extraordinary nature, and the provisions for their enforcement must be strictly construed. *Roberts v. Fowler,* . . . . . 632

67. Although, by the *terms* of the building contract, payments may become payable from the owner to the contractor after the lien is filed; a subcontractor has no remedy under the act of 1851, if such payments have in good faith been previously anticipated and discharged. *Lynch* v. *Cashman,* 660

68. Otherwise, however, if the prepayments were designed to evade the statute and defraud the laborer or material man of its benefits. *Id.*

69. The notice to create a lien, pursuant to the act of 1851, as amended in 1855, must be verified in the same manner as a pleading under the Code of Procedure. *Conklin* v. *Wood,* 662

70. An affidavit subscribed to the notice alleging that the statement of the balance due, as therein set forth, is true according to the deponent's knowledge, is not sufficient. *Id.*

71. The defect is fatal to the whole proceeding to acquire and enforce a lien under this law; and it cannot be amended. *Id.*

72. The defendant may avail himself of the objection at the trial, and need not raise it upon the return of the notice to account, nor in his answer to the complaint. *Id.*

73. The mechanics' lien law of 1844 required that the incipient measures to effect a lien should be taken within twenty days after the making of the contract or the commencement of the work. That statute was repealed by the act of 1851, which allows the lien

to be filed within six months after the performance of the contract. *Held,* that a laborer or material man, when the latter act had taken effect, might acquire a lien pursuant thereto, at any time within six months after the work was performed or materials were furnished, although the contract therefor was made while the law of 1844 was alone in force. *Hauptman* v. *Catlin,* 666

74. The statute last enacted applies not only to work performed or materials furnished under contracts made after its passage, but also to work performed or materials furnished, after such passage, by virtue of contracts previously made. *Id.*

75. Where a notice of lien stated a claim against A. and B. his wife, for materials furnished in the erection of a building, and added that such materials were furnished in pursuance of a contract with A., and that the building was owned by B.; the notice was held valid, although the contract was in fact made with the husband merely as agent of the wife. *Id.*

76. Labor performed and materials furnished for the benefit of the separate estate of the wife, may establish a claim resting in contract, which may be enforced by a proceeding under the lien law of 1851; and this, irrespective of the question whether a married woman can make a contract which would be binding upon her as upon a *feme sole.* *Id.*

77. Although a vendee may have purchased premises under such conditions and with such notice as to render him liable to a claimant for labor or materials furnished pursuant to the employment of the original owner; such liability cannot be enforced in a proceeding under this statute, where the notice prescribed in the sixth section has not been filed before the purchase. *Sinclair* v. *Fitch,* 677

V. FORECLOSURE OF THE LIEN.

1. *When the Lien may be enforced.*

78. Although a vendee may have pur-

chased premises under such conditions and with such notice as to render him liable to a claimant for labor or materials furnished pursuant to the employment of the original owner; such liability cannot be enforced in a proceeding under this statute, where the notice prescribed in the sixth section has not been filed before the purchase. *Sinclair* v. *Fitch*,                678

2. *Nature of the proceeding—Pleadings — Practice — Judgment, and Execution therein—Appeal.*

79. The principle that where the evidence is contradictory and is such as to legally warrant a finding for either party, the court on appeal will be concluded by the referee's report upon the facts, applied to an action under the mechanics' lien law.   *Lutz* v. *Ey*,                621

80. The power to acquire a lien upon real estate, under the act of 1851, for the better security of mechanics and others, is a personal right, conferred exclusively upon the very person by whom labor is performed or materials are furnished in building, altering, or repairing a house or its appurtenances. *Roberts* v. *Fowler*,                632

81. The remedies created in the mechanics' lien law are of a purely statutory and extraordinary nature, and the provisions for their enforcement must be strictly construed.        *Id.*

82. The eleventh section of the act, which provides that the lien may be discharged by filing a certificate of the claimant or his successors in interest, recognizes a transfer of the claim, but only at some period subsequent to the filing and creation of the lien.        *Id.*

83. The sale of the owner's interest in a building and lot of land, pursuant to a judgment in a proceeding under the act for the better security of mechanics and others, is absolute.   *Randolph* v. *Leary*,                637

84. It is like a sale under the foreclosure of a mortgage, and it conveys all the right and title of the owner existing when the lien was effected.        *Id.*

85. This view of the nature of the sale results from the principles uniformly adopted by this court in the construction of that statute, and is sanctioned by the amendatory act of 1855. (Laws of 1855, chap. 404, p. 760.)        *Id.*

86. Where the sale is made by the sheriff, he is bound to execute to the purchaser a deed of conveyance of the owner's interest in the premises.   *Id.*

87. A mere certificate of sale. as in cases of sales of interests in real estate to satisfy ordinary claims, with a view to a redemption under the statute (2 R. S. marg. p. 370) is not sufficient.        *Id.*

88. The right of redemption, given by the Revised Statutes to a debtor and to his heirs, devisees, and grantees, upon a sale of real estate under an execution, does not apply to proceedings *in rem.*  (2 R. S. part 3, chap. 6, title 5, article 2, §§ 47, 48, etc.)        *Id.*

89. From the first adjudication under this statute, the court has held the proceeding thereunder to be an equitable one—*in rem* and not *in personam*—and as the foreclosure of a lien, not an ordinary action for the collection of a debt.        *Id.*

90. Whether, under the legislative interpretation of the lien law contained in the act of 1855, the judgment directing the sale of the owner's interest is not of itself a sufficient warrant for the sale, without the necessity of issuing an execution where no costs or other moneys are to be collected from the defendant personally?   *Quere.*   *Id.*

91. The judgment, in an action under the mechanics' lien law of 1851 and under the amendatory act of 1855, must direct the sale, not of the land and premises upon which the lien exists, but of the owner's interest therein, to the extent of his right at the time the notice of lien was filed. *Smith* v. *Corey*,                642

92. Accordingly, where the sheriff, although the direction in the judgment was correct, sold the property itself; a resale was ordered by the court, to

the end that only the owner's interest might be sold. *Id.*

93. It is unnecessary that the sale should be in terms expressed to be subject to mortgages or other incumbrances, because the subject of the sale is the owner's interest only, pursuant to the statute, and any superior rights of other persons in the premises are preserved by operation of law. *Id.*

94. The sheriff, as an officer of the court, is bound to execute the judgments and decrees thereof. He cannot go behind any direction contained therein, and refuse obedience because in his opinion such direction is erroneous. *Id.*

95. So held, where the sheriff refused to deliver a deed to a purchaser at a sale directed by a judgment under the mechanics' lien law, although the delivery of the deed was required in the judgment. *Id.*

96. The sale of the owner's interest under that statute is absolute. *Id.*

97. A direction in the judgment, that the sheriff deliver to the purchaser an absolute deed of conveyance of the interest in question, is proper. *Id.*

98. The owner has no right of redemption, and the offer to the purchaser of a certificate of sale, as in cases where a debtor's interest in lands is sold under ordinary executions, is erroneous. *Id.*

99. A percentage, by way of extra costs, upon the recovery in an action under the mechanics' lien law, cannot be allowed, where the damages, in default of the defendant to answer, have been assessed under a writ of inquiry. *Randolph* v. *Foster,* 648

100. Where no issue is joined upon the pleadings, a proceeding to determine the amount of the plaintiff's recovery is not a "trial," within § 308 of the Code. *Id.*

101. The enforcement of a mechanic's lien, whatever may be its analogies, is not, within the scope of that section, "the foreclosure of a mortgage," nor

a proceeding "to compel the determination of claims to real property." *Id.*

102. The complaint, in a proceeding to enforce a lien under the act for the better security of mechanics and others, is governed by the same general rules applicable to pleadings in ordinary actions. *Duffy* v. *McManus,* 657

103. It is not sufficient to recite the proceedings to acquire and enforce the lien and state the contents of the notice filed with the county clerk. *Id.*

104. The complaint must go further, and must itself allege, not only the taking of the statutory proceedings, but the facts constituting the grounds of the alleged claim and showing the plaintiff's right to the remedies provided in the act. *Id.*

105. The description, in the complaint, of the premises affected by the lien, must be such as will enable the sheriff, when it shall be inserted in a judgment of sale, to determine the building intended. *Id.*

106. Where the street number of the building is omitted, the plaintiff should allege the reason of the omission. *Id.*

107. The notice to create a lien, pursuant to the act of 1851, as amended in 1855, must be verified in the same manner as a pleading under the Code of Procedure. *Conklin* v. *Wood,* 662

108. An affidavit subscribed to the notice, alleging that the statement of the balance due, as therein set forth, is true according to the deponent's knowledge, is not sufficient. *Id.*

109. The defect is fatal to the whole proceeding to acquire and enforce a lien under this law, and it cannot be amended. *Id.*

110. The defendant may avail himself of the objection at the trial, and need not raise it upon the return of the notice to account nor in his answer to the complaint. *Id.*

111. Any one of several causes of action, set forth in the complaint in an action

under the mechanics' lien law, will be held bad on demurrer, where such cause of action fails in itself to show any connection between the facts therein alleged and a party defendant by whom the demurrer is interposed. *Sinclair* v. *Fitch*, 677

112. A fatal defect in one cause of action separately stated, cannot be remedied by allegations constituting another cause of action contained in the same complaint. *Id.*

113. *It seems*, however, that preliminary to statements of several causes of action, the plaintiff may make general averments applicable to all, so that each, with such preliminary allegations, may be perfect in itself. *Id.*

114. The principle, that where the complaint contains averments sufficient to authorize a judgment, the court may grant any remedy warranted by the facts, although differing from the relief demanded, does not apply to actions under the mechanics' lien law. *Id.*

115. Accordingly, although. a vendee may have purchased premises under such conditions and with such notice as to render him liable to a claimant for labor or materials furnished pursuant to the employment of the original owner; such liability cannot be enforced in a proceeding under this statute, where the notice prescribed in the sixth section has not been filed before the purchase. *Id.*

**3.** *Parties to the proceeding.*

116. The lien cannot be effected by an assignee of the claim of a contractor, laborer, or person furnishing materials. *Roberts* v. *Fowler*, 632

117. The eleventh section of the act, which provides that the lien may be discharged by filing a certificate of the claimant or his successors in interest, recognizes a transfer of the claim, but only at some period subsequent to the filing and creation of the lien. *Id.*

118. Although a vendee may have purchased premises under such conditions and with such notice as to render him liable to a claimant for labor or materials furnished pursuant to the employment of the original owner; such liability cannot be enforced in a proceeding under this statute, where the notice prescribed in the sixth section has not been filed before the purchase. *Sinclair* v. *Fitch*, 678

**4.** *Defences—Payments, &c.*

119. A provision in the building contract, that the claimant shall take in payment the note of the owner, payable in one year, with a satisfactory indorser, does not, where the note is not delivered pursuant to the contract, deprive him of his right of action, under this statute, to enforce a lien for the value of his labor and materials. *Lutz* v. *Ey*, 621

120. The claimant, however, is not entitled to interest for the period during which the note would have been running to maturity. *Id.*

121. An owner may be relieved, even upon a motion, from a lien filed after six months from the performance; or, he may avail himself of the irregularity as matter of defence to an action founded on the alleged lien. *Id.*

122. In a proceeding to enforce an alleged lien under the act for the better security of mechanics and others, it appeared,. that the owner of land agreed with a contractor to erect thereon an addition to a building; that no stipulation was made in respect to the price or terms of payment, except that the construction should be accomplished by day's work; that the contractor proceeded therewith, but absconded before the building was inclosed. *Held*, that a subcontractor was without remedy, under this statute, for materials furnished by him and employed in the unfinished erection. *Cunningham* v. *Jones*, 650

123. *Held*, further, that the contract was entire, and that the contractor was not entitled to any payment from the owner for the value of the part performance. *Id.*

124. A voluntary payment on account

does not alter the legal effect of such a contract, and render the owner liable for the value of the work left unfinished by the contractor. *Id.*

125. The rule that where there has been a substantial compliance, the contractor may enforce payment with a reasonable reduction, does not apply to cases where the work is abandoned in a grossly unfinished state. *Id.*

126. Although, by the *terms* of the building contract, payments may become payable from the owner to the contractor after the lien is filed; a subcontractor has no remedy under the act of 1851, if such payments have in good faith been previously anticipated and discharged. *Lynch v. Cashman,* 660

127. Otherwise, however, if the prepayments were designed to evade the statute and defraud the laborer or material man of its benefits. *Id.*

128. The notice to create a lien, pursuant to the act of 1851, as amended in 1855, must be verified in the same manner as a pleading under the Code of Procedure. An affidavit subscribed to the notice, alleging that the statement of the balance due, as therein set forth, is true according to the deponent's knowledge, is not sufficient. The defect is fatal to the whole proceeding to acquire and enforce a lien under this law, and it cannot be amended. *Conklin v. Wood,* 662

129. The defendant may avail himself of the objection at the trial, and need not raise it upon the return of the notice to account nor in his answer to the complaint. *Id.*

130. Any one of several causes of action, set forth in the complaint in an action under the mechanics' lien law, will be held bad on demurrer, where such cause of action fails in itself to show any connection between the facts therein alleged and a party defendant by whom the demurrer is interposed. *Sinclair v. Fitch,* 677

131. A fatal defect in one cause of action separately stated, cannot be remedied by allegations constituting another cause of action contained in the same complaint. *Id.*

132. *It seems,* however, that preliminary to statements of several causes of action, the plaintiff may make general averments applicable to all, so that each, with such preliminary allegations, may be perfect in itself. *Id.*

133. Although a vendee may have purchased premises under such conditions and with such notice as to render him liable to a claimant for labor or materials furnished pursuant to the employment of the original owner; such liability cannot be enforced in a proceeding under this statute, where the notice prescribed in the sixth section has not been filed before the purchase. *Id.*

### 5. *Evidence.*

134. The principle, that where the evidence is contradictory and is such as to legally warrant a finding for either party, the court on appeal will be concluded by the referee's report upon the facts, applied to an action under the mechanics' lien law. *Lutz v. Ey,* 621

135. The peculiar proofs adduced in this case, to establish the value of the the work and materials for which the lien was claimed, held sufficient. *Hauptman v. Catlin,* 666

### 6. *Costs.*

136. A percentage, by way of extra costs, upon the recovery in an action under the mechanics' lien law, cannot be allowed; where the damages, in default of the defendant to answer, have been assessed under a writ of inquiry. *Randolph v. Foster,* 648

137. Where no issue is joined upon the pleadings, a proceeding to determine the amount of the plaintiff's recovery is not a "trial," within § 308 of the Code. *Id.*

138. The power to grant an extra allowance, where "a trial has been had,"

in an action "for the recovery of money," is abolished by the amendments to which this section of the Code was subjected, in the act of April 17, 1857. (Laws of 1857, vol. 2, chap. 723, p. 558.) (*Note.*) *Id.*

139. The enforcement of a mechanic's lien, whatever may be its analogies, is not, within the scope of that section, "the foreclosure of a mortgage," nor a proceeding "to compel the determination of claims to real property." *Id.*

140. Whether, under the legislative interpretation of the lien law contained in the act of 1855, the judgment directing the sale of the owner's interest is not of itself a sufficient warrant for the sale, without the necessity of issuing an execution, where no costs or other moneys are to be collected from the defendant personally. *Quere.* *Randolph* v. *Leary,* 637

MINORS.

See WAGES, 2.

MISTAKE.

See APPEAL, 18, 30.
BAILMENT, 3.
DISTRICT COURTS, 49.
MARINE COURT, 29, 32.
PRACTICE, *Default,* 39.

MONEY HAD AND RECEIVED.

See SALES, 14.

MORTGAGE.

1. The holder of a mortgage upon personal property, payable on demand, may maintain an action against a person wrongfully taking the property and disposing thereof, without proving a demand of the debt due on the mortgage. *Brown* v. *Cook,* 123

2. The interest of the mortgagor may be subject to a levy and sale. Whether an officer who sells the property absolutely, will be liable as a wrongdoer? (See note *a.*) *Id.*

3. Where there has been no forfeiture, on the part of a mortgagor of personal property, by non-payment of the mortgage debt within the period limited by the condition of the mortgage; the statute is imperative in its requirement that a true copy shall be filed before the expiration of one year from the filing of the original. (2 R. S. part ii. chap. vii. title ii. §11, marg. p. 136.) *Ely* v. *Carnley,* 489

4. A non-compliance cannot be excused, so as to obviate the declared effect thereof, by proving that the failure was a clerical error, and without fraudulent intent. *Id.*

5. Where, however, an intended copy is duly filed, a clerical error in the copy itself, in order to invalidate the act of filing, must be material. *Id.*

6. But the copy must be substantially correct, and a material variation in the amount conditioned to be paid, or a material error in the statement of the sum remaining due, will render the filing of the intended copy of no effect. *Id.*

7. *So held,* where, the original mortgage being for $546 19, the sum mentioned in the copy and statement was by the error of a copyist written $646 19. *Id.*

8. Whether, when the mortgage has become due and payable, the necessity of filing a copy, with the statement required by the statute, still exists, where the property continues in the possession of the mortgagor? *Quere.* *Id.*

9. The title of the mortgagee becomes absolute by the default of the mortgagor; but the requirement of the statute is, not that the statement to be filed with the copy should specify the amount due to the mortgagee, or that he claims as such; but that a statement be filed exhibiting the interest of the mortgagee in the property claimed by virtue of the mortgage. *Per* WOODRUFF, J. *Id.*

10. While the mortgagor is not in default, the proper mode of exhibiting the interest of a mortgagee is by stating the amount unpaid; but after default, the statement, if required,

should show the default and the consequent forfeiture, whereby it will appear that the title has become absolute. Per WOODRUFF, J. *Id.*

11. *It seems*, that it is unnecessary, having once filed such statement after the mortgage has become due, to again file it at the expiration of another year. *Id.*

12. Where a jury or referees find, upon all the evidence submitted to them, that a chattel mortgage was made in good faith, for a valuable consideration, without any intent to defraud creditors or purchasers; a delay of the mortgagor to enforce payment when the debt becomes due, does not in law invalidate the mortgage as fraudulent. *Id.*

See MECHANICS' LIEN LAW, 93, 101.

## MOTION.

See APPEAL, 41.
 COSTS, 3, 5.
 DISTRICT COURTS, 71.
 MECHANICS' LIEN LAW, 64.
 PLEADING, 32.
 PRACTICE, *Motion*, 62 to 67.
 PRACTICE, *New Trial*, 69 to 71, 74 to 80.
 PRACTICE, *Nonsuit*, 88.
 PRACTICE, *Order*, 89.
 REFERENCE AND REFEREES, 3.
 SHERIFFS' SALE, 2.

## MUNICIPAL AUTHORITY.

See CORPORATION ORDINANCES, 1 to 3.

## N

## NEGLIGENCE.

1. When a railroad company are duly authorized to lay their track in one of the streets of the city, they are not, at all events and without proof of negligence or want of skill and reasonable care, liable for accidents which may be caused thereby. Proof of such negligence or want of care or skill in the manner of constructing or maintaining the track, are necessary, as between them and persons exercising the common right of passing and repassing through or across the street. *Mazetti* v. *The N. Y. and Harlem Railroad Company*, 98

2. The statute of 1847, amended in 1849, giving a right of action, for the benefit of the next of kin, to the representatives of a deceased person whose death has been caused by the negligence of a company or individual, does not limit the amount to be recovered to the loss of those only whose relations to the deceased were such as to give them a legal right to some pecuniary benefit which would result from a continuance of the life. *Per* WOODRUFF, J., *dub.* *Oldfield* v. *The N. Y. and Harlem R.R. Co.*, 103

3. The action may be maintained and damages recovered in any case wherein, if death had not ensued, the injured party himself could have prosecuted; and the principle of liability on the part of the defendant is the same. *Id.*

4. The damages are not confined to such actual pecuniary loss as is susceptible of definite proof; but may include prospective losses, to be determined by the jury when all the facts and circumstances attending the case are before them. INGRAHAM, FIRST J., and DALY, J., *concurring; sed per* WOODRUFF, J., *dub.* *Id.*

5. These statutes, being intended to secure care on the part of persons and corporations, engaged in a business which endangers the lives of citizens, should be so construed as to give full effect to their object, and punish those who are guilty of negligence. *Per* INGRAHAM, FIRST J. *Id.*

6. Accordingly, in an action brought by an administrator, for the benefit of the mother of a dependent child about seven years of age, the verdict of a jury assessing the plaintiff's damages at $1,300, was sustained by the court. *Id.*

7. Negligence is not, as matter of law, to be presumed from the mere fact of

permitting a child, between six and seven years of age, to be alone and unattended in the streets of a city. Whether such permission, where the child is of that age, proves negligence, is for the jury to determine, under the peculiar circumstances of each case. *Id.*

8. Where the complaint, in an action against a railroad company for injuries, alleged that a car of the defendants, in charge of their servant and agent, was wrongfully driven over a child, whereby, &c., and that the defendants, by the negligence of themselves and their agents, ran over the child and caused her death; *held*, that the plaintiff, under the pleadings, was at liberty to show the deficient or defective construction of the car, as well as the carelessness of the driver and others in its management. *Id.*

9. In an action, by the owners of a steamboat, against the owners of another boat, for negligence producing a collision; the plaintiffs cannot recover as damages the probable loss of profits which they might have realized from a return trip from a place, whither their boat was bound when injured by the collision. *Hunt* v. *The Hoboken Land Improvement Co.,* 144

10. When the course of one boat is at right angles to that of the other, the question of negligence depends upon the particular circumstances of the case, and not *alone* upon the question, which turned first, if under the circumstances, the boat that first turned from her course, turned in the wrong direction. *Id.*

11. In an action for negligence, brought by the owner of a wagon against L. and M. as the proprietors of a stage; the plaintiff's son testified that two gentlemen with whom he was wholly unacquainted, called upon the father and conversed upon the subject, one of whom answered to the name of L. and wished the wagon sent to his place to be repaired, and both "were satisfied that it was their stage" by which the injury was caused. *Held,* that there was no sufficient identification to warrant a recovery against the de-

fendants or either of them. *Fanning* v. *Lent,* 206

12. In an action for injuries to a horse and wagon by negligently driving against them, no special damage being alleged in the complaint; *held,* that a question put to a witness, "Whether the plaintiff hired another horse," unconnected with evidence that his own horse was rendered in any degree useless by the injuries, was inadmissible. *Aberhall* v. *Roach,* 346

13. When a party is engaged in erecting a house upon his own ground, he is not, nor are his workmen, bound to put up temporary partitions about stairways, nor floors across beams, nor use other means, for the protection of intruders who voluntarily enter the unfinished house, and venture to walk across the beams or around its well holes. *Roulston* v. *Clark,* 366

14. Where the owner of lots of ground, upon the rear of which are buildings occupied by his tenants, opens a way which they use for their ingress and egress through an adjoining lot, while he is improving the front of the lots by putting up buildings; their visitors have no such license, as visitors, that they can aver a right to pass through the unfinished buildings. *Id.*

15. In such case, when the buildings in front are inclosed and new alley ways, which the tenants in the rear begin to use, are arranged along the walls, an obstruction of such alley ways does not give either the tenants or their visitors a right to pass through the houses. *Id.*

16. And accordingly, where the father of two of the tenants, wishing to visit his daughters in the night season, and finding the alleys along the new houses obstructed, attempted to grope his way through the basement hall and fell down into the cellar; *held,* that he had acted at his peril, and could maintain, for the injury received, no action founded upon the negligence of the mechanics employed in the erection. *Id.*

17. Where a party, having been injured

while groping, in the evening, along the unfinished hall of a building in course of erection on the front of a lot, sues the owner for negligence in view of the dangerous condition of the hall, and, the owner having charged that the plaintiff was a trespasser, the latter claims to have been there of right and in virtue of a title in his daughters—as tenants of a rear building on the same lot—to a way across the premises, under which he avers a presumptive license in himself as their visitor ; *quere*, whether the case involves a question of title to real estate in such sense as to oust the Marine and District or Justices' Courts of jurisdiction. *Id.*

18. Master and servant may be joined as defendants when the action is to recover damages for the negligence of the servant. *Montfort* v. *Hughes*, 591

19. Where the action is founded solely upon the negligence of the servant, the master not being present nor acting in the matter, if the servant be acquitted there can be no recovery against the master. *Id.*

See BAILMENT, 3.
  COMMON CARRIERS, 1, 3, 6.
  PASSENGER CARRIERS, 1 to 5.

### NEW TRIAL.

See APPEAL, 30.
  BILLS OF EXCHANGE, &c., 5.
  PRACTICE, *New Trial*, 68 to 82.

### NEXT FRIEND.

See PLEADING, 34.

### NON RESIDENT.

See APPEAL, 40, 41.
  DEBTOR AND CREDITOR, 7.
  DISTRICT COURTS, 59 to 62.
  MARINE COURT, 24 to 26, 45.

### NONSUIT.

See DISTRICT COURTS, 8 to 12.
  EVIDENCE, 100.

REFERENCE AND REFEREES, 5.
PRACTICE, *Nonsuit*, 83 to 88.

### O

### OATH.

See EVIDENCE, 43.

### OFFERS.

See PRACTICE, *Provisional Remedies*, 111, 112, 118, 123.

### OMNIBUS.

See PASSENGER CARRIERS, 1 to 6.

### ORDER.

See PRACTICE, *Motion*, 63 to 65.
  PRACTICE, *New Trial*, 80.
  PRACTICE, *Order*, 89, 90.
  PRACTICE, *Provisional Remedies*, ·110 to 126.

### OWNER AND CONTRACTOR.

See AGREEMENT, 31 to 33.
  NEGLIGENCE, 13 to 17.

### P

### PARENT AND CHILD.

See WAGES, 2.

### PAROL PROMISE AND AGREEMENT.

See AGREEMENT, 27.
  LANDLORD AND TENANT, 7.
  STATUTE OF FRAUDS, 1, 2.

### PARTIES.

See ASSIGNMENT, 9 to 11.
  BILLS OF EXCHANGE, &c., 12, 13.

EVIDENCE, 72, 93, 94.

EXECUTORS AND ADMINISTRATORS, 5.

MECHANICS' LIEN LAW, 116 to 118.

PRACTICE, *Amendments*, 7 to 11.

PRACTICE, *Parties*, 91 to 109.

## PARTNERSHIP.

1. In an action against two or more defendants, upon a contract made by or on behalf of a firm or association; if one of the defendants makes default, and others appear and deny their liability, it is sufficient on the trial for the plaintiff to prove that the contract was made by the firm or association, and that the defendants who appear were members thereof, and it is not necessary to prove that the defaulting defendant was also a member. *Downing* v. *Mann*, 36

2. Where two or more persons are declared against upon a joint contract, a judgment cannot be obtained against one, upon proving a *several* liability on his part alone; and if, after verdict, under such circumstances, the court, under § 173 of the Code, can correct the error by striking out the name of the party who appears to have been improperly joined, and conforming the allegations to the facts established, the power should be exercised upon such terms as would certainly protect the rights of the defendant, and if the slightest reason exists to suspect that the verdict was obtained by unfair means—although the evidence in this respect be not such as would warrant setting it aside for that cause alone—an award of a new trial should be the condition of allowing the amendment. *Id.*

3. Under the present system of practice in this state, several promisors can be proceeded against in one action, and a joint judgment recovered. *It seems*, therefore, that, where the defendants are declared against as joint promisors, and the evidence shows that the promise was not made jointly, but by each defendant separately, the variance between the pleading and proof would be disregarded or cured by allowing an amendment, where their liabilities, as between themselves, would not be altered by this form of recovery against them. *Id.*

4. Where a person expressly allowed the use of his name, as a member of a committee of arrangements for a ball to be given by an association, and subscribed to some of the preliminary expenses, but took no further part, and did not attend the ball; it was *held*, that he was not liable for the cost of a supper provided for the occasion without his knowledge or consent. *Id.*

5. A judgment for the defendants in an action on contract against two who are sought to be charged as joint contractors or co-partners, and in which the joint liability is denied, is no bar to an action by the same plaintiff, on the same contract, against one of the former defendants in which he is charged as sole contractor. *O'Connor* v. *Bagley*, 149

6. If the judgment in the first action was rendered upon a plea of payment, or other defence, which when established would be equally a defence in the second suit; then such judgment is conclusive against the plaintiff. *Id.*

7. When the special partner, under a limited partnership, does not pay in the amount of his capital specified in the certificate, and the firm, having become insolvent, assign the property thereof for the benefit of creditors; he may, upon a complaint in equity, filed by the trustee, be compelled to pay in the deficiency of his capital, to be used in the payment of the partnership debts. *Robinson* v. *McIntosh*, 221

8. Although it be conceded, that no action at law will lie between partners, to recover moneys accruing to either in the actual conduct of the co-partnership business; yet, *it seems*, that such action at law might be sustained, upon the co-partnership articles, to enforce express stipulations by one to the others. *Id.*

9. A court of equity has power, at the suit of one partner, to compel another to contribute a sum stipulated as capital, or to restore it to the common fund, if he have withdrawn it before the debts are paid. *Id.*

10. In a suit in equity, prosecuted by the general partner in a limited co-partnership on his own behalf to compel a special partner to pay in a sum mentioned in the usual certificate as the special capital paid in; *quere*, whether, in case the defendant answers and puts in issue the facts alleged in the complaint, the plaintiff, being a party to the fraud practised by making the certificate when the money was not in fact paid, would be permitted to deny the truth of such certificate? *Id.*

11. The estoppel, if any, which under such circumstances conclude the general partner, is a mere rule of evidence, and the question, whether the certificate and affidavit, being admissions that the capital was paid in, are conclusive upon him, cannot arise upon a demurrer, because the defendant thereby admits that such capital was not in fact paid. *Id.*

12. The admissions made by the partners in filing such certificate and affidavit, in no respect conclude creditors; nor are they conclusive upon trustees der the co-partnership assignment for the benefit of creditors, who bring suit, in behalf of their *cestui que trusts*, to compel the delinquent special partner to pay in the capital mentioned in the certificate. *Id.*

13. Whether, in case the formation of a limited co-partnership is attempted, the special partner, although he has not so complied with the statute as to entitle himself to the immunities provided for a special partner, may not have subjected himself to all the disabilities thereof? *Quere.* *Id.*

14. A co-partnership assignment to trustees for the benefit of creditors, in all respects equitable and just to all parties, made in a condition of hopeless insolvency by all of those who, by the terms of the actual arrangement between the members, are the active managing partners in the business, will be sustained. *Id.*

15. Such an assignment is valid, when made by the general partner only, of a limited partnership. *Id.*

16. And where parties take all the usual steps to form a limited co-partnership, excepting in some particular the neglect whereof renders the special partner liable as a general partner, he does not thereby become an active, but may be regarded as a dormant partner, in such sense as warrants the general partner to assign the partnership effects to a trustee for the benefit of creditors. *Id.*

17. Where the defendant, upon the plaintiff entering into a contract with a firm for his employment as a clerk, executed to him an agreement guaranteeing that his salary at certain rates agreed upon should amount to $15 per week; *held*, that the defendant's agreement was not within the statute of frauds, and was valid, although the consideration was not expressed therein. The guarantor being a silent partner in the firm, the modification by another partner, acting for the firm, of the contract of employment with the plaintiff, would not discharge the defendant from his guaranty. *Douglass* v. *Jones*, 551

18. A demand from one of two persons, in the joint possession of personal property owned by a third person, is sufficient to sustain an action in the nature of trover against both. *Ball* v. *Larkin*, 555

19. In an action for goods sold by two persons as partners, it appeared that they had together boarded with the defendant, and that each had told him "that what one might call for would be the same as if both should order it." *Held*, that the defendant's account for liquors, etc., furnished to each, created a joint obligation against both, and constituted a valid counter claim to the plaintiff's demand. *Hartung* v. *Siccardi*, 560

See INJUNCTION, 1, 3.
LIBEL, 1.

PASSENGER CARRIERS.

1. In an action for damages sustained by a passenger in a public stage coach, the onus of proving the cause of the injury to have been such as could not

have been prevented by proper care and foresight on the part of the carrier, is on the defendant. *Wilkie* v. *Bolster,* 327

2. Accordingly, where a passenger and his family, while seated in an omnibus in the city of New York, were injured by the bursting of a lamp; a judgment in their favor was sustained upon the ground, that the owners had not shown affirmatively that the burning fluid or material used in the lamp was a safe and proper article. *Id.*

3. The liability in such case, of the owners of a stage or omnibus, extends to all damages suffered by a passenger to either his person or apparel, which prudence and foresight can guard against. *Id.*

4. Where a defendant is charged with damages from the use of an article alleged to be dangerous, the fact that it is so, if material to be shown affirmatively, must be established by evidence, and the justice cannot assume the fact from any knowledge of his own respecting the nature of the article in question. *Id.*

5. The decision in *Ingalls* v. *Bills* (9. Metcalf, p. 1)—in which the injury was proved to have resulted from a hidden cause which the exercise of vigilance would not have removed—cited and distinguished from this case. *Id.*

6. The difference between the liability of the carriers of goods and of passengers, respectively, stated. *Id.*

See COMMON CARRIERS, 3, 5, 6.

## PAYING MONEY INTO COURT.

See PRACTICE, *Set Off,* 131.

## PAYMENT.

1. In an action upon a judgment, brought by the representatives of a deceased judgment creditor; proof of payment to the attorney of record, made after the death of the plaintiff and before administration was granted on his estate, will not maintain an issue raised by the pleadings of payment to the administrators. *Clark* v. *Richards,* 89

2. An attorney for the plaintiff in a judgment, when called by the defendant on the trial of an issue on *scire facias* to revive the judgment in favor of the plaintiff's representatives, may be permitted to testify to an alleged admission of payment, made to him by his client after judgment recovered, and before execution was issued, while the authority of the attorney to issue execution and to satisfy the judgment continued, and though the communication was made as a guide to him in issuing or withholding the execution. Such a communication is not confidential and privileged. WOODRUFF, J., *dissenting.* *Id.*

3. A representation by a debtor, that he knows the note of a third person to be good, in reliance upon which a creditor takes the note and agrees to receive it in payment of a debt, when in fact the maker is insolvent, will relieve the creditor from his agreement, although the maker's insolvency was not known to the debtor when he made the representation. *Galoupeau* v. *Ketchum,* 175

4. Where, upon a sale of goods, the note of a third person is expressly received as payment therefor; it will have legal effect as payment, although the purchaser indorses the note. *Soffe* v. *Gallagher,* 507

5. Where, however, there is an absolute and unqualified guaranty by the purchaser that the note shall be paid; *it seems,* that the note will not operate as payment, but only as a security extending the term of credit. *Id.*

See ACTION, 25, 27.
APPEAL, 18, 19, 62.
CONSTITUTIONAL LAW, 1, 4, 5, 8.
FREIGHT, 5.
LANDLORD AND TENANT, 16, 19.
MECHANICS' LIEN LAW, 6, 46 to 48, 50, 51.
MORTGAGE, 12.
PRACTICE, *Attachment,* 24.
PRACTICE, *Provisional Remedies,* 110 to 126.
RELEASE, 1.
SALES, 12, 13, 19.

SURETY, 2, 3.
VOLUNTARY PAYMENT, 1.

PENALTIES.

See CORPORATION ORDINANCES, 1, 2.

PERSONAL PROPERTY. .

See ACTION, 41 to 43.
EVIDENCE, 66.
HIRE OF CHATTELS, 1 to 3.
MORTGAGE, 1 to 12.
SHERIFF'S SALE, 1 to 7.
TROVER, 10, 11.

PLEADING. .

1. In an action on the case in the nature of deceit, for a false warranty on a sale of goods, the warranty being express; it is not necessary to allege or prove that there was fraud on the part of the seller. It is enough to aver and establish the warranty, and that the warranty is false. *Fowler* v. *Abrams*, 1

2. If fraud be averred, it is not necessary that it should be proved to entitle the plaintiff to maintain the action. *Id.*

3. Therefore, where the plaintiff averred that the defendant, "by falsely and fraudulently warranting a horse sold by him to the plaintiff," etc., (in the ancient form of declaration in actions on the case for a false warranty,) and, on the trial, proved an express warranty and that it was false; *held*, that he was entitled to recover, although the jury found specially, that there was no fraud. *Id.*

4. Whether an allegation of the complaint can be put in issue by a denial "upon information and belief," considered, but not decided by the court *in banco;* INGRAHAM, FIRST J., at general term, affirming the proposition and holding, that where a defendant is informed and believes an averment is untrue, but cannot positively deny it nor conscientiously affirm that he has no knowledge nor information in respect to it sufficient to form a belief, the answer may set up a denial upon information and belief, although this form of pleading be not in terms allowed by the 149th section of the Code of Procedure. DALY, J., at special term, *contra;* WOODRUFF, J., not passing upon the point. *Hackett* v. *Richards*, 13

5. In an action for a breach of covenant, an averment in the complaint of the *amount* of damages, is not the proper subject of a denial. It is not issuable matter, and the defendant does not admit the amount alleged, by neglecting to deny it. *Id.*

6. The denial should be of the breach; for it follows as matter of law, that if the covenant is broken, the plaintiff is entitled to damage, and if not, that he is not so entitled. The amount is not traversable, and must be proved, whether denied or not. *Id.*

7. *It seems*, that even on default, the amount of damage, although averred, must be proved, or the plaintiff take judgment for a merely nominal sum. *Id.*

8. In declaring against the maker of a promissory note, it is necessary for the plaintiff, if he do not adopt the form prescribed by § 162 of the Code, to aver, as matters of fact—The making of the note by the defendant; the promise contained therein or implied in such making; the facts which constitute the plaintiff the holder, promisee, or person entitled to the benefit of the promise; and the breach by the defendant of the promise contained in the note or thereby implied. *Keteltas* v. *Myers*, 83

9. An averment, that "the said sum is due and owing to the plaintiff," is a statement of an inference of law, and is not a sufficient averment of a breach of the promise by the defendant. *Id.*

10. If a party seeks to avail himself of the short mode of declaring, given by § 162 of the Code, he must conform to its requirements. He must not only give a copy of the note, but must state that the sum specified is due on the note and from the defendant. *Id.*

11. The Code allows liberality and free-

dom, as well as brevity and concise-ness, in pleading; but looseness and uncertainty are not sanctioned. *Id.*

12. Where the complaint, in an action against a railroad company for inju-ries, alleged that a car of the defend-ants, in charge of their servant and agent, was wrongfully driven over a child, whereby, etc., and that the de-fendants, by the negligence of them-selves and their agents ran over the child and caused her death; *held*, that the plaintiff, under the pleadings, was at liberty to show the deficient or de-fective construction of the car, as well as the carelessness of the driver and others in its management. *Oldfield v. The N. Y. and Harlem R. R. Co.,* 103

13. *It seems*, that it is no objection to a plea of set off, that the defendant has brought an action against the plaintiff for the same sum, even although the plaintiff has paid the money into court in such former action. *Naylor v. Schenck,* 135

14. Where a warrant is issued in the Marine Court in a case unauthorized by law, a defendant, by pleading to the merits, waives objection to the process and submits to the jurisdiction. *Agreda v. Faulberg,* 178

15. The statute (2 R. S. 3d. ed., p. 519, marg. p. 424), allowing the amend-ment of process and pleadings, con-tinues in force together with and un-repealed by the Code of Procedure. *Id.*

16. Whether a defendant in an action on a note, under an answer containing only a "a general denial," may set up and prove that the plaintiff, who brings a note indorsed in blank into court, is a merely nominal holder having no real interest therein? *Quere. Wes-tervelt v. Allcock,* 243

17. It appearing by the complaint that the plaintiffs were only entitled to the principal of a fund held in trust; an averment that a provision, in the in-strument by which the trust was cre-ated, fixing the rate of interest to be allowed for the use of the fund at five instead of seven per cent., was inserted improperly by the undue influence of the trustee—and the prayer of the complaint, founded upon this state-ment, that the trustee account to the plaintiffs for interest at the rate of seven per cent. from the time of cre-ating the trust—*held* bad on demur-rer, the plaintiffs not being entitled to the interest, if at all, until the princi-pal became due to them. *Clarkson v. Mitchell,* 269

18. *Held*, further, that if the plaintiffs sought interest, as matter of law, upon the principal, after such principal be-came payable to them, they should have so declared, instead of proceed-ing entirely, as in the matter demurred to, upon the ground of illegality in the act of the trustee, and making that the foundation of a claim to seven per cent., or to the two per cent. dif-ference between five and seven per cent. from the time the trust was cre-ated. *Id.*

19. Where a deed of trust provides that the interest of a fund shall be paid during life to the person executing the same, and directs the principal to be given to third persons; an action after his death to recover interest ac-cumulated in the hands of the trustee, cannot be maintained by them, but must be brought by the personal re-presentatives of the grantor. If such third person file a complaint for both the principal and such accumulated interest; the trustee, although both claims are founded upon one instru-ment, may answer the one and demur to the other. *Id.*

20. Where the whole merits have been examined before referees, the court will not reverse a judgment, because there is a variance between the com-plaint and the proofs in a particular in which the parties have not been mis-led; but will, on appeal, either disre-gard the variance or direct an amend-ment. *Parsons v. Suydam,* 276

21. Although the right to file a bill in equity, and to compel an answer for the mere purpose of a discovery, is abolished; yet power to obtain a dis-covery is in effect continued by the Code of Procedure. *Merritt v. Thomp-son,* 284

22. This power is reserved in the provisions for the oral examination of the defendant by order, while the right of appeal to the defendant's conscience as to all the grounds of relief, is preserved by the rules of pleading and verification now in force. .            *Id.*

23. In the Marine and District or Justices' Courts, a plaintiff may present his cause of action in as many aspects as he can, if they are not inconsistent with each other, and all exhibit causes of action which may be joined. *Wentworth* v. *Buhler*,                    305

24. A demurrer is never required in case of a misjoinder of parties, and a defendant may take advantage of the defect whenever it appears during the trial. *Giraud* v. *Beach*,        337

25. In an action wherein the plaintiff, as a ground upon which he demands judgment, avers the failure of the defendants to make advances as required by an agreement between the parties, and also claims that by reason thereof he has been required to make and has made numerous advances, and, on the other hand, the defendants, in their answer, aver that they have made all the advances which they were bound to make; a reference is proper to take the account of the advances respectively made. *Smith* v. *Dodd*,                    348

26. Where the sheriff levies, under a warrant of attachment, upon the property of the plaintiff, including a promissory note in course of prosecution; the levy cannot be set up by the defendant in a supplemental answer, as a defence in bar of the plaintiff's recovery upon the note. *Russell* v. *Ruckman*,                    419

27. It seems, that payment to the sheriff, after the attachment is levied, may be a good defence.        *Id.*

28. Whether a supplemental answer can be filed in the Marine and District or Justices' Courts ? *Quere.*        *Id.*

29. In an action for damages from the bite of a dog, an allegation in the pleadings that the plaintiff, when injured, was in a place where he had no

right to be, does not put in issue a claim of title to real property, so as to entitle the plaintiff to costs in a court of record upon recovering less than fifty dollars. (Code, § 304, subd. 1.) *Pierret* v. *Moller*,        574

30. The fact that the plaintiff, when bitten by the defendant's dog, was trespassing upon the premises of another person, does not affect the right of recovery, and is only material, if at all, upon the question of damages.        *Id.*

31. A plea in abatement for misjoinder of defendants, cannot be presented, directly or indirectly, after issue has been joined and proof taken on the merits. *Mountfort* v. *Hughes*,        591

32. Hence, the court cannot entertain a motion, made in behalf of the defence after the commencement of the trial upon complaint and answer, to strike out the name of one of several defendants as improperly joined.        *Id.*

33. Where it appears, on the trial, that the action cannot be maintained by reason of a misjoinder of defendants, the court has no authority to amend without the plaintiff's consent and against his will.        *Id.*

34. Infancy of a plaintiff cannot be proved as a ground of nonsuit on the trial. It must be pleaded in abatement, or the question be raised by motion to set the proceedings aside for irregularity in respect to the appointment of a guardian or next friend. *Treadwell* v. *Bruder*,        597

35. A fatal defect in one cause of action separately stated, cannot be remedied by allegations constituting another cause of action contained in the same complaint. *Sinclair* v. *Fitch*,        677

36. It seems, however, that preliminary to statements of several causes of action, the plaintiff may make general averments applicable to all, so that each, with such preliminary allegations, may be perfect in itself. .        *Id.*

37. Where the complaint contains averments sufficient to authorize a judgment, the court may grant any remedy warranted by the facts. (*Note.*) *Lewis* v. *Varnum*,        690

See Assignment, 9.
    Damages, 7.
    District Courts, 12.
    Evidence, 7, 8.
    Judgment, 14 to 17.
    Jurisdiction, 9.
    Landlord and Tenant, 3.
    Malicious Prosecution, 3.
    Marine Court, 10, 15, 26, 36.
    Mechanics' Lien Law, 102 to
       107, 110, 130.
    Partnership, 10, 11.
    Practice, *Provisional Remedies,*
       110 to 126.
    Sheriff's Sale, 5.

## POLICE DEPARTMENT.

1. Under the act, "In relation to the police department of the city of New York," passed April 11, 1853, a policeman has a right to his salary while absent from duty in consequence of disease contracted in the public service. *Minto* v. *The Mayor,*   384

2. There is no discretionary power in the mayor to grant or refuse such pay. *Id.*

3. The regulation of the police department, requiring applications for "sick pay" to be accompanied by an affidavit of the policeman and a certificate of the captain and physician as to the character and cause of the disease, is inconsistent with the statute and void. *Id.*

4. And where it appeared that the plaintiff, a member of the police department, who had been absent from duty in consequence of sickness, had been previously, while on duty, exposed to severe weather, and had been found sick while on his post; it was *held,* that the evidence was sufficient to sustain the jury in finding that such sickness was incurred in the discharge of the plaintiff's duty, and that an action might be maintained for the portion of his salary accruing during such absence. *Id.*

## POSSESSION.

See Landlord and Tenant, 8.
    Mortgage, 8, 12.
    Trover, 10, 11.

## PRACTICE.

1. *Action.*
2. *Affidavit of Merits.*
3. *Affidavits.*
4. *Allowances.*
5. *Amendments.*
6. *Answer.*
7. *Appearance.*
8. *Appeal.*
9. *Arrest.*
10. *Assignment of Claims.*
11. *Attachment.*
12. *Attachment for Contempt.*
13. *Bill of Particulars.*
14. *Complaint.*
15. *Costs.*
16. *Counter Claim.*
17. *Cross Examination.*
18. *Default.*
19. *Defences.*
20. *Demurrer.*
21. *Discovery.*
22. *Evidence.*
23. *Exceptions.*
24. *Execution.*
25. *Injunction.*
26. *Judge's Charge.*
27. *Judgment.*
28. *Jurisdiction.*
29. *Mistake.*
30. *Motion.*
31. *New Trial.*
32. *Nonsuit.*
33. *Order.*
34. *Parties.*
35. *Paying Money into Court.*
36. *Pleading.*
37. *Practice in Marine and District Courts.*
38. *Provisional Remedies.*
39. *Recoupment.*
40. *Referees.*
41. *Security.*
42. *Set Off.*
43. *Stay of Proceedings.*
44. *Supplementary Proceedings.*
45. *Summons.*
46. *Trial.*
47. *Variance.*
48. *Verdict.*
49. *Witness.*

## PRACTICE.

### 1. *Action.*

See Action, *ante,* p. 693.

## 2. *Affidavit of Merits.*

1. A general affidavit of merits with proof of mistake in delivering papers to an attorney to defend, is sufficient, ordinarily, to open a judgment entered in this court by default; but if the plaintiff, by affidavit, shows a clear case, the defendant must go further, and reveal the grounds of his defence. *The Merchants' Bank* v. *Mills*, 210

## 3. *Affidavits.*

See APPEAL, (*ante*, p. 702,) 32, 42, 49.
INJUNCTION, (*ante*, p. 741,) 1.
MECHANICS' LIEN LAW, (*ante*, p. 762,) 108.
PRACTICE, *Discovery*, 47.

## 4. *Allowances.*

See COSTS, (*ante*, p. 719,) 9 to 11.

## 5. *Amendments.*

2. Where two or more persons are declared against upon a joint contract, a judgment cannot be obtained against one upon proving a *several* liability on his part alone; and if, after verdict, under such circumstances, the court, under § 173 of the Code, can correct the error by striking out the name of the party who appears to have been improperly joined, and conforming the allegations to the facts established, the power should be exercised upon such terms as would certainly protect the rights of the defendant, and if the slightest reason exists to suspect that the verdict was obtained by unfair means—although the evidence in this respect be not such as would warrant setting it aside for that cause alone—an award of a new trial should be the condition of allowing the amendment. *Downing* v. *Mann*, 36

3. Under the present system of practice in this state, several promisors can be proceeded against in one action, and a joint judgment recovered. *It seems*, therefore, that, where the defendants are declared against as joint promisors, and the evidence shows that the promise was not made jointly, but by each defendant separately, the variance between the pleading and proof would be disregarded or cured by allowing an amendment, where their liabilities, as between themselves, would not be altered by this form of recovery against them. *Id.*

4. The court has power to allow an amendment of the entry of judgment of affirmance, ordered on appeal from the inferior courts, where erroneously entered through mistake, and the power will be exercised when no injustice is caused thereby. *Bagley* v. *Brown*, 66

5. Such amendment of an erroneous entry, not in any way affecting the merits of the judgment of affirmance, may be directed by a single judge at special term. *Id.*

6. Where a jury perversely disregard the explicit directions of the court, given to them in the charge, the verdict will be set aside; but if the court can see that full justice can be done by changing the verdict, so as to conform to the directions, they will permit the party in whose favor the verdict was rendered, to consent to such amendment, and thereby save the expense of a new trial. *Per* WOODRUFF, J. *Clark* v. *Richards*, 89

7. The liberal provisions of the Code, allowing amendments by striking out the names of parties, are not applied to the Marine and District or Justices' Courts. *Agreda* v. *Faulberg*, 178

8. The Marine Court cannot strike out the name of a plaintiff and permit him to be examined as a witness, on a mere suggestion of mistake without any proof. *Id.*

9. The statute (2 R. S. 3d ed. p. 519, marginal p. 424), allowing the amendment of process and pleadings, continues in force together with and unrepealed by the Code of Procedure. *Id.*

10. The above provision of the Revised Statutes applies to the Marine Court. *Id.*

11. Where the name of one of several

plaintiffs is shown to have been inserted in the process by mistake, the Marine Court has power to strike it out. *Id.*

12. In an action commenced by an association of persons to recover damages for a libel; *held*, that it was error to allow, at the trial, the names of several of the original plaintiffs to be stricken out and the substitution of others, without imposing terms or allowing to the defendants any opportunity to prepare for a defence after such change had been made. *Giraud* v. *Beach*, 337

See APPEAL, (*ante*, p. 704,) 33.
MECHANICS' LIEN LAW, (*ante*, p.762,) 109.
PLEADING, (*ante*, p. 772,) 20, 32, 33.

6. *Answer.*

13. Whether an allegation of the complaint can be put in issue by a denial "upon information and belief," considered, but not decided by the court *in banco;* INGRAHAM, FIRST J., at general term, affirming the proposition and holding, that where a defendant is informed and believes an averment is untrue, but cannot positively deny it nor conscientiously affirm that he has no knowledge nor information in respect to it sufficient to form a belief, the answer may set up a denial, upon information and belief, although this form of pleading be not in terms allowed by the 149th section of the Code of Procedure. DALY, J., at special term, *contra;* WOODRUFF, J., not passing upon the point. *Hackett* v. *Richards*, 13

14. In an action for a breach of covenant, an averment in the complaint of the *amount* of damages is not the proper subject of a denial. It is not issuable matter, and the defendant does not admit the amount alleged, by neglecting to deny it. *Id.*

15. The denial should be of the breach; for it follows as matter of law, that if the covenant is broken, the plaintiff is entitled to damage, and if not, that he is not so entitled. The amount is not traversable, and must be proved, whether denied or not. *Id.*

16. Whether a defendant, under an answer containing only "a general denial," may set up and prove that the plaintiff, who brings the note indorsed in blank into court, is a merely nominal holder having no real interest therein? *Quere. Westervelt* v. *Allcock*, 243

17. Where the sheriff levies, under a warrant of attachment, upon the property of the plaintiff, including a promissory note in the course of prosecution; the levy cannot be set up by the defendant in a supplemental answer, as a defence in bar of the plaintiff's recovery upon the note. *Russell* v. *Ruckman*, 419

18. Whether a supplemental answer can be filed in the Marine and District or Justices' Courts? *Quere. Id.*

See INJUNCTION, (*ante*, p. 741,) 1.
JUDGMENT, (*ante*, p. 744,) 17.
LANDLORD AND TENANT, (*ante*, p. 747,) 3.
MECHANICS' LIEN LAW, (*ante*, p. 762,) 110.
PRACTICE, *Discovery*, 42.
PRACTICE, *Provisional Remedies*, 110 to 126.
SHERIFF'S SALE, *post*, 17.
TRUST AND TRUSTEE, 4.

7. *Appearance.*

See APPEAL, (*ante*, pp. 703, 704,) 11, 13, 15, 18, 31, 32.
ATTORNEYS AND COUNSELLORS, 12, 14.
DISTRICT COURTS, (*ante*, pp. 724, 727,) 22, 59, 60, 62.
MARINE COURT, 46, 47 to 49.

8. *Appeal.*

See APPEAL, *ante*, p. 702.

8. *Arrest.*

19. Where the plaintiff averred that the defendant, "by falsely and fraudulently warranting a horse sold by him

to the plaintiff,". &c. (in the ancient form of declaration in actions on the case for a false warranty), and, on the trial, proved an express warranty and that it was false; *held*, that he was entitled to recover, although the jury found specially, that there was no fraud, but under such circumstances, the plaintiff cannot issue an execution against the person of the defendant. *Fowler* v. *Abrams*,     1

20. Although the Code, in chap. 1, title 7, part 2, entitles a complainant to an order of arrest, when he establishes a fraud and breach of trust; he is not, by the provisions last referred to, necessarily limited to that remedy, where the case is such as to furnish grounds for an equitable interposition by injunction. *Merritt* v. *Thompson*,  284

See PRACTICE, *Provisional Remedies*, 112, 117, 124.

### 10. *Assignment of Claims.*

See APPEAL, (*ante*, p. 702,) 15, 16.
 ASSIGNMENT, *ante*, p. 707
 BANK CHECKS, (*ante*, p. 712,) 5.
 BILLS OF EXCHANGE, &c. (*ante*, p. 713 ,) 12, 13.
 LANDLORD AND TENANT, (*ante*, p. 750,) 30.
 MECHANICS' LIEN LAW, (*ante*, p.162,) 116, 117.
 SHERIFF'S SALE, *post*, 3, 6.

### 11. *Attachment.*

21. The defendants, being indebted to a non-resident against whose property an attachment was issued, in New York, at the suit of one of his creditors, were served with a copy of the warrant; and afterwards, judgment having been entered and execution issued, paid to the sheriff the amount of their said indebtedness. *Held*, that the payment having been made by the defendants without compulsory process, and after notice to them of an assignment by the debtor of all his property before the attachment issued, was a voluntary payment, affording them no protection from liability to the assignee. *Lyman* v. *Cartwright*,  117

22. Whether property incapable of manual delivery is attached, where the sheriff simply serves a copy of the warrant, without making and returning "an inventory" under § 232 of the Code, and without giving a "notice showing the property levied on," under § 235? *Quere*.    *Id.*

23. Where the sheriff levies, under a warrant of attachment, upon the property of the plaintiff, including a promissory note in the course of prosecution; the levy cannot be set up by the defendant in a supplemental answer, as a defence in bar of the plaintiff's recovery upon the note. The sheriff may continue the action in the name of the plaintiff, or may be substituted for him at his election. *Russell* v. *Ruckman*,   419

24. *It seems*, that payment to the sheriff, after the attachment is levied, may be a good defence.    *Id.*

25. The execution of an attachment upon a promissory note may be made, by leaving with the holder a certified copy of the warrant, " with a notice showing the property levied on," pursuant to § 235 of the Code.  *Id.*

### 12. *Attachment for Contempt.*

See PRACTICE, *Provisional Remedies*, 110 to 126.

### 13. *Bill of Particulars.*

See MECHANICS' LIEN LAW, (*ante*, p. 755,) 5.

### 14. *Complaint.*

26. In an action on the case in the nature of deceit, for a false warranty on a sale of goods, the warranty being express; it is not necessary to allege or prove that there was fraud on the part of the seller. It is enough to aver and establish the warranty, and that the warranty is false. *Fowler* v. *Abrams*,   1

27. In declaring against the maker of a promissory note, it is necessary for

the plaintiff, if he do not adopt the form prescribed by § 162 of the Code, to aver as matters of fact—The making of the note by the defendant; the promise contained therein or implied in such making; the facts which constitute the plaintiff the holder, promisee, or person entitled to the benefit of the promise; and the breach by the defendant of the promise contained in the note or thereby implied. *Keteltas* v. *Myers*, 83

28. Where the complaint, in an action against a railroad company for injuries, alleged that a car of the defendants, in charge of their servant and agent, was wrongfully driven over a child, whereby, etc., and that the defendants, by the negligence of themselves and their agents, ran over the child and caused her death; *held*, that the plaintiff, under the pleadings, was at liberty to show the deficient or defective construction of the car, as well as the carelessness of the driver and others in its management. *Oldfield* v. *The N. Y. & Harlem R. R. Co.*, 103

29. A fatal defect in one cause of action, separately stated, cannot be remedied by allegations constituting another cause of action contained in the same complaint. *Sinclair* v. *Fitch*, 677

30. *It seems*, however, that preliminary to statements of several causes of action, the plaintiff may make general averments applicable to all, so that each, with such preliminary allegations, may be perfect in itself. *Id.*

31. Where the complaint contains averments sufficient to authorize a judgment, the court may grant any remedy warranted by the facts. (*Note.*) *Lewis* v. *Varnum*, 690

See MECHANICS' LIEN LAW, 102 to 106, 130.
PLEADING, 20.
PRACTICE, *Provisional Remedies*, 121.
TRUST AND TRUSTEE, *post*, 1, 2, 4.

### 15. *Costs.*

See COSTS, *ante*, p. 718.

### 16. *Counter Claim.*

32. In an action for goods sold by two persons as partners, it appeared that they had together boarded with the defendant, and that each had told him "that what one might call for would be the same as if both should order it." *Held*, that the defendant's account for liquors, etc, furnished to each, created a joint obligation against both, and constituted a valid counter claim to the plaintiff's demand. *Hartung* v. *Siccardi*, 560

See EVIDENCE (*ante*, p. 736), 93.

### 17. *Cross Examination.*

33. Where a witness for the defendant testified to the amount of sales made per day by the plaintiff, for the purpose of proving that he neglected the defendant's business in a store of which the plaintiff had charge as a clerk; *held*, that it was not incompetent, upon cross examination, for the plaintiff to inquire the amount per day sold in another and larger store of the defendant in the neighborhood, in charge of the defendant personally —where a greater number of clerks were employed—for the purpose of testing the memory of the witness and affecting his credibility. *Wentworth* v. *Buhler*, 305

See EVIDENCE, 43, 44.

### 18. *Default.*

34. In an action against two or more defendants, upon a contract made by or on behalf of a firm or association; if one of the defendants makes default, and others appear and deny their liability, it is sufficient on the trial for the plaintiff to prove that the contract was made by the firm or association, and that the defendants who appear were members thereof, and it is not necessary to prove that the defaulting defendant was also a member. *Downing* v. *Mann*, 36

35. Even on default, the amount of damage must be proved, or the plaintiff take

judgment for a merely nominal sum. *Hackett* v. *Richards*, 13

36. A judgment entered by default in favor of a foreign corporation, will not be set aside for the failure to file security for costs before the commencement or during the pendency of the action. *The Merchants' Bank* v. *Mills*, 210

37. Where no security has been filed, the defendant waives his right thereto by neglecting to move before judgment. *Id.*

38. *It seems*, that where a judgment by default has been opened and the defendant let in to defend, an order to compel the security would be granted. *Id.*

39. A general affidavit of merits, with proof of mistake in delivering papers to an attorney to defend, is sufficient, ordinarily, to open a judgment entered in this court by default; but if the plaintiff, by affidavit, shows a clear case, the defendant must go further and reveal the grounds of his defence. *Id.*

See APPEAL, (*ante*, p. 703–6,) 18, 21, 30 to 32, 48, 49.
MARINE COURT, (*ante*, p. 752,) 17.

### 19. *Defences.*

See APPEAL, (*ante*, p. 703,) 13, 17.
BILLS OF EXCHANGE, &c., (*ante*, p. 713,) 14.
EVIDENCE, (*ante*, p. 735,) 74, 75.
JUDGMENT, (*ante*, p. 744,) 13 to 15, 17.
LANDLORD AND TENANT, (*ante*, p. 747,) 3.
MECHANICS' LIEN LAW, (*ante*, p. 755, 763,) 5, 119 to 133.
PRACTICE, *Attachment*, 23 to 25.
PRACTICE, *Default*, 34 to 39.
PRACTICE, *Recoupment*, 127.
PRACTICE, *Set Off*, 128 to 135.
SALES. *post*, 22 to 24.
TROVER, *post*, 11.

### 20. *Demurrer.*

40. The defendants, in an action brought by an assignee, having pleaded, in abatement of the action, the non-joinder of the plaintiff's assignor as a party defendant, and that plea being adjudged bad in the court below—the defendants having pleaded to the merits and gone to trial; *held*, on appeal, that the matter in abatement was waived by pleading to the merits, and that the decision on the demurrer could not, therefore, be reviewed. *Freeman* v. *Newton*, 246

41. A demurrer is never required in case of a mis-joinder of parties, and a defendant may take advantage of the defect whenever it appears during the trial. *Giraud* v. *Beach*, 337

See MECHANICS' LIEN LAW, (*ante* p. 764,) 130.
PARTNERSHIP, (*ante*, p. 770,) 11.
TRUST AND TRUSTEE, *post*, 1, 2, 4.

### 21. *Discovery.*

42. Although the right to file a bill in equity and to compel an answer for the mere purpose of a discovery, is abolished; yet power to obtain a discovery is in effect continued by the Code of Procedure. *Merritt* v. *Thompson*, 284

43. This power is reserved in the provisions for the oral examination of the defendant by order, while the right of appeal to the defendant's conscience as to all the grounds of relief, is preserved by the rules of pleading and verification now in force. *Id.*

44. Where the equitable power of the court is invoked to compel an accounting—to enforce a trust—to prevent a fraudulent misapplication of funds, or a misappropriation of property held as trustee; the jurisdiction is as ample now as before the Code. *Id.*

45. Where a libel relates to one of several persons, but does not specify to which, such persons cannot by prosecuting an action for damages, put the defendants upon their defence and compel them to disclose to whom the libel referred. *Giraud* v. *Beach*, 337

46. The petition for a discovery should set forth specifically the papers and documents required. *Jackling* v. *Edmonds,* 539

47. The rule, requiring the petition to be verified by affidavit, stating that the books and papers whereof discovery is sought, are not in the possession nor under the control of the party applying therefor, and that he is advised by his counsel, and verily believes, that such discovery is necessary to enable him to plead or prepare for the trial, must be observed. *Id.*

48. Applications of this nature will be scrutinized by the court, and will be denied when indefinite and made under circumstances of suspicion. *Id.*

49. And the court will act with great caution when the suit is brought by administrators and a discovery of papers of their intestate is sought. *Id.*

50. Accordingly, a discovery was refused to the defendant, when applied for two years after the complaint was served, the original plaintiff having in the mean time died and been succeeded in the prosecution of the action by his personal representative, and where the application called for numerous papers relating to transactions with the decedent, some of which were not specifically described, and others alleged to be memoranda made by the defendant himself, who at one period had admitted indebtedness and had stated, without requiring the papers in question, that he had completed, within a few items, an account which he was preparing to exhibit the true balance alleged by him to be due. *Id.*

## 22. *Evidence.*

See EVIDENCE, *ante,* p. 728.

## 23. *Exceptions.*

See APPEAL, (*ante,* p. 706, 707,) 53 to 55, 64.

## 24. *Execution.*

51. Where the plaintiff averred that the defendant, "by falsely and fraudulently warranting a horse sold by him to the plaintiff," etc. (in the ancient form of declaration in actions on the case for a false warranty), and, on the trial, proved an express warranty and that it was false; *held,* that he was entitled to recover, although the jury found specially, that there was no fraud, but, under such circumstances, the plaintiff cannot issue an execution against the person of the defendant. *Fowler* v. *Abrams,* 1

52. A sale of personal property, made ostensibly under dormant executions, while another execution is in the sheriff's hands, is valid, and vests the title in the purchaser. *Richards* v. *Allen,* 399

53. The remedy of the plaintiff in the other execution, is by motion to have the proceeds of the sale applied to its satisfaction in preference to the dormant executions. *Id.*

54. Where, instead of pursuing that course, he took "supplementary proceedings" against the plaintiff in the dormant executions—who was the purchaser at the sale in question—and obtained the appointment of a receiver, to whom the debtor executed an assignment; *held,* that the receiver could not recover the value of the property in an action against the purchaser. *Id.*

55. Where the holder of the valid execution, being present and apprehending a relinquishment of the sale, requested the sheriff to proceed; *held,* that he could not call in question the validity of the sale. *Id.*

56. And where, in such an action, the answer in claiming title to the property, averred the sale under the dormant executions; it was *held,* that the plaintiff was not entitled to a recovery, although the defendant had failed to set up the valid execution, the latter being shown by the proofs to have been in the hands of the sheriff at the time of the sale. *Id.*

57. Where a judgment debtor, in proceedings supplementary to execution, assents to the jurisdiction of the offi-

cer by whom the order was granted, by executing an assignment to a receiver appointed therein; a third party cannot impeach the title of such assignee, for an irregularity in the proceedings prior to the assignment. *Id.*

58. Although a general direction to the sheriff to delay an execution, renders it dormant and gives priority to a junior execution; yet, although dormant as to other creditors, it may not be so as to the judgment debtor. *Id.*

59. The making of an inventory is not absolutely necessary to constitute a valid levy under execution. *Watts* v *Cleaveland,* 553

60. In an action by a constable for the value of goods disposed of by the defendant after an alleged levy thereon under an execution against a third party; it appeared, that the execution debtor and the defendant (the property being in the latter's possession) were present when the officer approached to make the levy; that the goods were within view; that the officer touched a case with his foot, made a memorandum on the execution that he had levied upon a lot of dry goods, and thereupon so stated; and that the defendant, upon being asked by the attorney of the execution creditor what amount had been levied upon, replied, "more than double enough to pay the execution." *Held* that under the circumstances, there was a sufficient levy to sustain the action. *Id.*

61. The right of redemption, given by the Revised Statutes to a debtor and to his heirs, devisees and grantees, upon a sale of real estate under an execution, does not apply to proceedings *in rem.* (2 R. S. part 3, chap. 6, title 5, art. 2, §§ 47, 48, etc.) *Randolph* v. *Leary,* 637

See Debtor and Creditor, *(ante, p. 721,)* 7, 8.
Evidence, *(ante, p. 729,)* 14.
Mechanics' Lien Law, *(ante,* pp. 756, 762,) 12, 13, 19, 98.
Practice, *Provisional Remedies,* 112.

### 25. *Injunction.*

See Injunction, *ante,* p. 741.

### 26. *Judge's Charge.*

See Practice, *New Trial,* 72, 73, 80 to 82.

### 27. *Judgment.*

See Judgment, *ante,* p. 743.

### 28. *Jurisdiction.*

See Jurisdiction, *ante,* p. 745.

### 29. *Mistake.*

See Appeal, *(ante,* p. 703,) 18, 30.
District Courts, *(ante,* p. 726,) 49.
Marine Court, *(ante,* p. 753,) 29, 32.
Practice, *Default,* 39.

### 30. *Motion.*

62. Where application to allow a set off of a judgment is made, in the name of the judgment creditor, by his attorney acting in person on the motion and urging that the set off should be allowed; it is not a sufficient objection to the application, that the attorney is interested in the judgment; for in that case he only, and not the adverse party, would be prejudiced by granting the motion. *Bayley* v. *Brown,* 66

63. An appeal will not lie from an order, until it is entered and the motion papers are filed with the clerk of the court. *Smith* v. *Dodd,* 215

64. The motion papers must be produced to the court upon the hearing of the appeal. *Id.*

65. Where no papers are used and the motion is made by consent upon mere verbal statements, no appeal can be taken. *Id.*

66. Where the facts involved in a suit occurred at a distance, statements contained in alleged letters of third

persons to one of the parties—although not strictly evidence—may be used temporarily, before time can be had to obtain formal proof thereof, to sustain, with other testimony, a remedy purely provisional. *Merritt v. Thompson,* 284

67. The practice of submitting motions to a judge at special term, upon oral statements, and then appealing to the general term, condemned. *Pierret v. Moller,* 574

See APPEAL, (ante, p. 705,) 41.
  Costs, (ante, p. 719,) 3, 5.
  DISTRICT COURTS, (ante, p. 728,) 71.
  MECHANICS' LIEN: LAW, (ante, p. 760,) 64.
  PLEADING, (ante, p. 774,) 32.
  PRACTICE, New Trial, 69 to 71, 74 to 80.
  PRACTICE, Nonsuit, 88.
  PRACTICE, Order, 89.
  REFERENCE AND REFEREES, post, 3.
  SHERIFF'S SALE, post, 2.

### 31. New Trial.

68. Where two or more persons are declared against upon a joint contract, a judgment cannot be obtained against one, upon proving a *several* liability on his part alone; and if, after verdict, under such circumstances, the court, under §173 of the Code, can correct the error by striking out the name of the party who appears to have been improperly joined, and conforming the allegations to the facts established, the power should be exercised upon such terms as would certainly protect the rights of the defendant, and if the slightest reason exists to suspect that the verdict was obtained by unfair means—although the evidence in this respect be not such as would warrant setting it aside for that cause alone—an award of a new trial should be the condition of allowing the amendment. *Downing v. Mann,* 36

69. A motion by a defendant for a new trial, is not properly a renewal of a motion for a nonsuit. *Id.*

70. The right to move for a nonsuit never exists after verdict, except when leave is expressly reserved, on the trial, to renew such motion, without being prejudiced by the verdict. *Id.*

71. Giving leave, at the trial, to move for a nonsuit notwithstanding any verdict that may be rendered, is not unusual in England, and instances of this practice have occurred in this state; although taking a verdict subject to the opinion of the court upon the law is here more common. *Id.*

72. Where a jury perversely disregard the explicit directions of the court, given to them in the charge; the verdict will be set aside. *Clark v. Richards,* 89

73. But if the court can see that full justice can be done by changing the verdict, so as to conform to the directions, they will permit the party in whose favor the verdict was rendered, to consent to such amendment, and thereby save the expense of a new trial. *Per* WOODRUFF, J. *Id.*

74. The order entered upon the affirmance, at general term, of an order denying a motion for a new trial on a case made, after verdict, should not include a direction that the judgment, where one has been docketed, be affirmed. *Miller v. The Eagle Life and Health Ins. Co.,* 184

75. An affirmance of the judgment is only proper when the judgment itself is the subject of the appeal. *Id.*

76. Accordingly, after an order denying a motion for a new trial has been affirmed, if the moving party desires a formal affirmance of the judgment in order to carry the cause to the Court of Appeals, he must again bring the case before the general term by appealing from the judgment. *Id.*

77. Where, after verdict, the defendant took the usual steps to have the cause heard upon a motion for a new trial on a case made, but the plaintiff entered judgment upon the verdict and served a notice thereof whereby the thirty days within which an appeal from the judgment must be taken would expire before the final disposi-

tion of the motion for a new trial; the court, on application to vacate the judgment and notice, deeming the case a proper one for a stay of proceedings, allowed the judgment to remain as security to the plaintiff, but set aside the notice. *Id.*

78. Where a judgment has been opened and a new trial ordered, but the judgment allowed to stand as security, a new judgment may be entered for the amount recovered on the second trial, without reference to the previous judgment. *Id.*

79. But a plaintiff having obtained a verdict, and having entered judgment thereon pending the defendant's proceedings to obtain, by motion, a new trial on a case made, was allowed at his option, after the affirmance of an order denying a new trial, to vacate the judgment and enter a new one so as to include therein all the costs, or let the judgment remain and serve a notice thereof, a previous notice given by him, when the judgment was docketed, having been set aside. *Id.*

80. Upon a motion for a new trial and upon an appeal from an order made on such motion, the court may review all the proceeding had upon the trial, and consider alleged erroneous rulings, although not formally excepted to, and where there has been, in the charge to the jury, a misdirection which the court perceive may have wrought injustice, a new trial would be ordered, although no exception was taken. *Keyes* v. *Devlin*, 518

81. But on an appeal from a judgment, the hearing thereon is like the former review by a writ of error, and the rulings on the trial and the charge to the jury are only open to examination so far as they were excepted to. *Id.*

82. A general exception to the whole charge and to every part thereof, where the charge embraces many separate propositions, is improper and will not be entertained. *Id.*

See APPEAL, (*ante*, p. 704,) 30.
BILLS OF EXCHANGE, &c., (*ante*, p. 712,) 5.

### 32. *Nonsuit.*

83. A motion by a defendant for a new trial, is not properly a renewal of a motion for a nonsuit. *Downing* v. *Mann*, 87

84. The right to move for a nonsuit never exists after verdict, except when leave is expressly reserved, on the trial, to renew such motion, without being prejudiced by the verdict. *Id.*

85. Giving leave, at the trial, to move for a nonsuit notwithstanding any verdict that may be rendered, is not unusual in England, and instances of this practice have occurred in this state; although taking a verdict subject to the opinion of the court upon the law is here more common. *Id.*

86. The plaintiff cannot, after verdict, elect to be nonsuited, and then maintain another action for the same cause. *Kane* v. *Dulex*, 127

87. It is not enough for a plaintiff to prove a state of facts warranting only a conjecture that he may be entitled to recover. He must make out, *primâ facie*, a right of action, and must furnish some criterion whereby some amount of recovery can be fixed without danger of injustice; and where his own evidence leaves in doubt, not only what amount the plaintiff is entitled to, but whether he is entitled to recover at all, his complaint should be dismissed. *Fox* v. *Decker*, 150

88. Infancy of a plaintiff cannot be proved as a ground of nonsuit on the trial. It must be pleaded in abatement, or the question be raised by motion to set the proceedings aside for irregularity in respect to the appointment of a guardian or next friend. *Treadwell* v. *Bruder*, 597

See EVIDENCE, (*ante*, p. 737,) 100.
DISTRICT COURTS, (*ante*, p. 723,) 8 to 12.
REFERENCE AND REFEREES, *post*, 5.

### 33. *Order.*

89. A mere opinion of the court, given upon deciding a motion to determine a

party's right to costs upon a verdict, is not an order from which an appeal may lie, although such opinion, stating that " the plaintiff is entitled to costs," be entered as an order with the clerk at special term. *Snyder* v. *Beyer*, 235

90. It is but an opinion, and until rendered effective by some judgment or award, it avails nothing. *Id.*

See PRACTICE, *Motion*, 63 to 65.
PRACTICE, *New Trial*, 80.
PRACTICE, *Provisional Remedies*, 110 to 126.

### 34. *Parties.*

91. In an action against two or more defendants, upon a contract made by or on behalf of a firm or association; if one of the defendants makes default, and others appear and deny their liability, it is sufficient on the trial for the plaintiff to prove that the contract was made by the firm or association, and that the defendants who appear were members thereof, and it is not necessary to prove that the defaulting defendant was also a member. *Downing* v. *Mann*, 36

92. Where two or more persons are declared against upon a joint contract, a judgment cannot be obtained against one, upon proving a *several* liability on his part alone; and if, after verdict, under such circumstances, the court, under § 173 of the Code, can correct the error by striking out the name of the party who appears to have been improperly joined, and conforming the allegations to the facts established, the power should be exercised upon such terms as would certainly protect the rights of the defendant, and if the slightest reason exists to suspect that the verdict was obtained by unfair means—although the evidence in this respect be not such as would warrant setting it aside for that cause alone—an award of a new trial should be the condition of allowing the amendment. *Id.*

93. Under the present system of practice in this state, several promisors can be proceeded against in one action, and a joint judgment recovered. *It*

*seems,* therefore, that, where the defendants are declared against as joint promisors, and the evidence shows that the promise was not made jointly, but by each defendant separately, the variance between the pleading and proof would be disregarded or cured by allowing an amendment, where their liabilities, as between themselves, would not be altered by this form of recovery against them. *Id.*

94. Where a person expressly allowed the use of his name, as a member of a committee of arrangements for a ball to be given by an association, and subscribed to some of the preliminary expenses, but took no further part, and did not attend the ball; it was *held,* that he was not liable for the cost of a supper provided for the occasion without his knowledge or consent. *Id.*

95. An action for a libel against members of a company or of an association, neither being partners nor persons having a community of pecuniary interest wherein they could sustain damage, cannot be maintained by them jointly. *Giraud* v. *Beach*, 337

96. So held, where the libel consisted of a newspaper article, charging that members of a certain hose company, without specifying the persons referred to, had committed a theft. *Id.*

97. Whether, in such case, any one member of the company could maintain the action? *Dub.* *Id.*

98. A demurrer is never required in case of a misjoinder of parties, and a defendant may take advantage of the defect whenever it appears during the trial. *Id.*

99. In an action commenced by an association of persons to recover damages for a libel; *held,* that it was error to allow, at the trial, the names of several of the original plaintiffs to be striken out and the substitution of others, without imposing terms or allowing to the defendants any opportunity to prepare for a defence after such change had been made. *Id*

100. Where the sheriff levies, under a warrant of attachment, upon the pro-

perty of the plaintiff, including a promissory note in the course of prosecution; the levy cannot be set up by the defendant in a supplemental answer, as a defence in bar of the plaintiff's recovery upon the note. The sheriff may continue the action in the name of the plaintiff, or may be substituted for him at his election. *Russell* v. *Ruckman*, 419

101. A demand from one of two persons, in the joint possession of personal property owned by a third person, is sufficient to sustain an action in the nature of trover against both. *Ball* v. *Larkin*, 555

102. A plea in abatement for misjoinder of defendants, cannot be presented, directly or indirectly, after issue has been joined and proof taken on the merits. *Montfort* v. *Hughes*, 591

103. Hence the court cannot entertain a motion, made in behalf of the defence after the commencement of the trial, upon complaint and answer to strike out the name of one of several defendants as improperly joined. *Id.*

104. Where it appears, on the trial, that the action cannot be maintained by reason of a misjoinder of defendants, the court has no authority to amend without the plaintiff's consent and against his will. *Id.*

105. Master and servant may be joined as defendants when the action is to recover damages for the negligence of the servant. *Id.*

106. Where the action is founded solely upon the negligence of the servant, the master not being present nor acting in the matter, if the servant be acquitted there can be no recovery against the master. *Id.*

107. In actions of tort, if a several judgment can be rendered against the guilty and the others be acquitted, a misjoinder of defendants is not available in any form. *Id.*

108. The court cannot, pending the trial of an action of tort against several defendants, direct the acquittal of one of them, unless the case so far fails as

that a nonsuit as to him would be proper, or a verdict against him be subject to be set aside as unwarranted by the evidence. *Id.*

109. The decision of the Court of Appeals, in *Beal* v. *Finch*, 9 How. Pr. Rep. 385, 1 Kern. 128, respecting the extent of the competency of a defendant as a witness for a co-defendant, commented upon in respect to this case. *Id.*

See ASSIGNMENT, (*ante*, p. 708,) 9 to 11.
BILLS OF EXCHANGE, &c., 12, 13.
EVIDENCE, (*ante*, p. 735,) 72, 93, 94.
EXECUTORS AND ADMINISTRATORS, (*ante*, p. 738,) 5.
MECHANICS' LIEN LAW, 116 to 118.
PRACTICE, *Amendments*, 7 to 11.

### 35. *Paying money into Court.*

See PRACTICE, *Set Off.* 131.

### 36. *Pleading.*

See PLEADING, *ante*, p. 772.

### 37. *Practice in Marine and District Courts.*

See DISTRICT COURTS, *ante*, p. 723.
MARINE COURT, *ante*, p. 751.

### 38. *Provisional Remedies.*

110. Where a fund in litigation has been brought into court, and the defendant admits that a part of the fund is due to the plaintiff, disputing his claim to the residue; the court may order the part, so admitted to be due, to be paid over to the plaintiff, without prejudice to his further claims. *Merritt* v. *Thompson*, 599

111. The circumstance, that the defendant, both before and since the action was brought, has offered to pay to the plaintiff the sum so admitted to be due, provided it should be accepted in full satisfaction, or that he has offered to allow judgment to be taken for that sum, is no reason for refusing such an order. *Id.*

112. *It seems*, that where a defendant who is insolvent or unable to make present payment, offers to suffer judgment to be taken pursuant to § 385 of the Code, or makes the like offer in his answer; the court will be careful not to substitute an order that he pay the money, under § 244, to be enforced by an attachment for contempt and taking of his body, in the place of an ordinary judgment and execution. *Id.*

113. It was not the intention of the legislature, in authorizing the court to grant an order requiring a defendant who admits a sum to be due, to pay it, to introduce imprisonment for debt, if the debtor is not able to pay. *Id.*

114. But where the money is in court, and where the defendant admits the sum due and offers to pay it, the order should be granted. *Id.*

115. *It seems*, that on an appeal from such an order, the court at general term will not review the discretion, exercised at special term, in respect to the terms or conditions upon which the order has been granted, where no right of the appellant and no rule of law are violated. *Id.*

116. Where the answer does not deny the demand alleged in the complaint, but sets up a counter claim, the allowance whereof would still leave a balance due the plaintiff, the court is authorized, by § 244 of the Code, to direct the defendant to satisfy such balance. *Myers v. Trimble*, 607

117. And the order may be enforced by attachment. *Id.*

118. An offer by the defendant to permit the plaintiff to take judgment for the disputed sum, forms no ground for refusing the order. *Id.*

119. A defendant, having been served with an order made in pursuance of that section, is liable to punishment as for a contempt, in case of an unexcused disobedience thereof. *Id.*

120. *It seems*, that the apparent contempt may be purged, by showing actual inability to pay the amount admitted to be due, unless he has voluntarily disabled himself and the creation of the inability is itself a contumacious act. *Id.*

121. The 244th section of the Code, authorizing the court to order the defendant to satisfy a part of the plaintiff's demand, applies as well where the plaintiff's cause of action, as set up, is single and entire, and the answer admits a part thereof to be just, as where the complaint proceeds upon more than one cause of action, or more than one item of claim, one of which is admitted in the precise extent wherein it is set up by the plaintiff. *Quintard v. Secor*, 614

122. And as well, also, where the answer alleges that no more than a sum named is due, as where it concedes, affirmatively that a certain amount is due. *Id.*

123. An admission in the answer, that a part of the plaintiff's claim is just, authorizes the application of the provisional remedy provided in the last clause of § 244 of the Code, although the defendant, before answer, has served an offer to allow judgment for the sum admitted to be due. *Id.*

124. *It seems*, that the provision referred to was not intended to abrogate the laws abolishing imprisonment for debt. *Id.*

125. And *it seems*, that if inability to pay is shown by the defendant, it may induce the court in the first instance to withhold the order, or may excuse the apparent contempt of the defendant in disobeying it. *Id.*

126. The cases of *Dolan v. Petty*, 4 Sand. Supr. C. R. 673; *Smith v. Olssen*, ib. 711; and *Roberts v. Law*, ib. 642, cited and commented upon. *Id.*

See EVIDENCE, (*ante*, p. 733,) 48.

### 39. *Recoupment.*

127. The *pendency* of another action, in favor of the defendant against the plaintiff for the recovery of damages for breach of contract, will not pre-

vent a recoupment of the same damages by way of defence to a subsequent action, brought by the plaintiff against such defendant upon the same contract. *Naylor* v. *Schenck,*   135

### 40. *Referees.*

See REFERENCE AND REFEREES, *post.*

### 41. *Security.*

See COSTS, (*ante,* p. 718,) 2 to 4.
     PRACTICE, *New Trial,* 77, 78.

### 42. *Set Off.*

128. Where application to allow a set off of a judgment is made, in the name of the judgment creditor, by his attorney acting in person on the motion and urging that the set off should be allowed; it is not a sufficient objection to the application, that the attorney is interested in the judgment, for in that case he only, and not the adverse party, would be prejudiced by granting the motion. *Bagley* v. *Brown,*   66

129. The Code provides, that on filing a transcript of a judgment of the Marine or Justices' Courts, the same shall be enforced in the same manner as, and "be deemed," a judgment of this court. *It seems,* therefore, that the same power exists to allow a set off of such a judgment, as of a judgment originally entered in this court.   *Id.*

130. The pendency of a prior action for a defendant's claim does not prevent his using it as a set off, even if his prior action has progressed to a verdict. *Naylor* v. *Schenck,*   135

131. *It seems,* that it is no objection to a plea of set off, that the defendant has brought an action against the plaintiff for the same sum, even although the plaintiff has paid the money into court in such former action.   *Id.*

132. Where an action is brought upon a *chose in action* not negotiable, in the name of an assignee thereof, and the

defendant seeks to set off a claim in his own favor, he must prove that the claim belonged to him before notice of the assignment. *Soloman* v. *Holt,*   139

133. Whether such set off can be made, if such claim was not both due and payable before notice of the assignment? *Quere.*   *Id.*

134. Whether § 112 of the Code of Procedure has not so far altered the Revised Statutes, that in case of such assignment a claim may be set off which did not exist against the assignor at the time of the assignment, but afterwards arose and was acquired by the defendant before notice of such assignment? *Quere.*   *Id.*

135. The existence of a valid set off against the assignor of the plaintiff, though it might have been used against the assignee, but for which the defendant may still maintain an action against such assignor, does not prove that "manifest injustice has been done" (within the meaning of § 366 of the Code), by a judgment for the plaintiff by default in the Marine Court. *Travis* v. *Bassett,*   171

See EVIDENCE, (*ante,* p. 736,) 93.
    JUDGMENT, (*ante,* p. 744,) 17.
    LANDLORD AND TENANT, (*ante,* p. 749,) 16.
    PRACTICE, *Counter Claim,* 32.

### 43. *Stay of Proceedings.*

136. Where, after verdict, the defendant took the usual steps to have the cause heard upon a motion for a new trial on a case made, but the plaintiff entered judgment upon the verdict and served a notice thereof whereby the thirty days within which an appeal from the judgment must be taken would expire before the final disposition of the motion for a new trial; the court, on an application to vacate the judgment and notice, deeming the case a proper one for a stay of proceedings, allowed the judgment to remain as security to the plaintiff, but set aside the notice. *Miller* v. *The Eagle Life and Health Insurance Co.,* 184

### 44. Supplementary Proceedings.

See PRACTICE, *Discovery*, 43.
　　SHERIFF'S SALE, *post*, 3, 7.

### 45. Summons.

See DISTRICT COURTS, 29, 30.
　　MARINE COURT, 2, 10, 34, 36, 45.

### 46. Trial.

137. Where the plaintiff averred that the defendant, "by falsely and fraudulently warranting a horse sold by him to the plaintiff," &c. (in the ancient form of declaration in actions on the case for a false warranty), and, on the trial, proved an express warranty and that it was false; *held,* that he was entitled to recover, although the jury found specially, that there was no fraud. *Fowler v. Abrams,*　　1

138. Whether a plaintiff, having rested, shall, after the defendant has examined his witnesses, be permitted to examine witnesses in further support of the case made by himself, is a matter within the discretion of the court. *Silverman v. Foreman,*　　322

139. Where no issue is joined upon the pleadings, a proceeding to determine the amount of the plaintiff's recovery is not a "trial," within § 308 of the Code. *Randolph v. Foster,*　　648

See BILLS OF EXCHANGE, (*ante*, p. 712,) 5.
　　DISTRICT COURTS, (*ante*, p. 723,) 8, 9, 13.
　　LANDLORD AND TENANT, (*ante*, p. 747,) 3.
　　MALICIOUS PROSECUTION, (*ante*, p. 751,) 4, 5.
　　MECHANICS' LIEN LAW, (*ante*, p. 762,) 110.
　　PRACTICE, *New Trial*, 68 to 82.
　　PRACTICE, *Nonsuit*, 88.
　　PRACTICE, *Parties*, 98, 99, 102 to 104, 106 to 108.
　　REFERENCE AND REFEREES, *post*, 7.

### 47. Variance.

See PLEADING, 20, 32, 33.
　　PRACTICE, *Amendments*, 2, 3.

### 48. Verdict.

See BILLS OF EXCHANGE, &c., (*ante*, p. 712,) 5.
　　DISTRICT COURTS, 9.
　　EVIDENCE, 100.
　　MARINE COURT, 14 to 16.
　　NEGLIGENCE, 6, 19.
　　PRACTICE, *New Trial*, 68 to 71.
　　PRACTICE, *Trial*, 137.

### 49. Witness.

See ASSIGNMENT, (*ante*, p. 708,) 13.
　　EVIDENCE, 10, 28, 35, 40 to 46, 51, 55, 66 to 68, 72, 93, 94, 101.

## PRINCIPAL AND AGENT.

1. Where an indorser, who keeps an account in a bank wherein a note is payable, leaves a check with a teller, directing him to take up the note; the teller is his agent and not the agent of the bank, and the bank is not answerable, in case the teller, having placed the check in his private drawer, neglects to take up the note. *The Newark India Rubber Manufacturing Co. v. Bishop,*　　48

2. Where an agent sells goods without disclosing the name of his principal, the purchaser may pay the purchase money to the agent, or settle with such agent by any *bona fide* arrangement, whereby he parts with money or property upon the faith of the agent's apparent authority. *Henry v. Marvin,*　　71

3. But placing the amount to the credit of the agent against a preëxisting indebtedness, with knowledge that the goods were held by the agent for sale for some other person, is not such a payment; and the principal—the owner—may recover therefor, notwithstanding such credit.　　*Id.*

4. An agent to sell goods, has no authority to pledge them to secure an antecedent debt due by himself. And when the pledgee in such case refuses to deliver the goods to the owner on his demand, and sells them at auction, such owner may recover their value in an action for the illegal detention and

conversion; or, he may affirm the sale, and, waiving the tort, sue for the proceeds of the goods as so much money received by the pledgee to his use. *Id.*

5. Where the complaint, in an action against a railroad company for injuries, alleged that a car of the defendants, in charge of their servant and agent, was *wrongfully driven over a child*, whereby, &c., and that the defendants, by the negligence of themselves and their agents, ran over the child and caused her death; *held*, that the plaintiff, under the pleadings, was at liberty to show the deficient or de fective construction of the car, as well as the carelessness of the driver and others in its management. *Oldfield* v. *The N. Y. & Harlem R. R. Co.,*      103

6. Where the defendant employed the plaintiff to assist him in finding and procuring the purchase of a house—acknowledged that the services rendered were useful, and promised to pay for them; *held*, that he was liable therefor, on a *quantum meruit*, although it was not proved distinctly, that the purchase was consummated by the plaintiff's agency. *Goldsmith* v. *Obermeier,*      121

7. One who employs another to aid in making a purchase, is liable to pay for the services rendered. although the purchase is not consummated, unless from the terms of the employment—either expressed or inferable from the circumstances—success was a condition of the claim for compensation. *Id.*

8. Where in an action for use and occupation, it appeared that the premises were hired by an agent, who signed a lease under seal, and the tenant afterwards occupied the premises and paid the rent for one quarter in accordance with the terms of the lease; *held*, that the plaintiff was entitled to recover the same rent for a subsequent quarter, although the agent's authority was by parol and did not extend to the execution of a sealed instrument. *Vanderbilt* v. *Persse,*      428

9. Where a landlord, at the request of an agent of a tenant of lands, delivered some loads of hay upon the the premises, and the tenant, upon a

bill therefor being presented to him, remarked that there was more than he should want, but that he would see about it; it was *held*, that the proof of the agent's authority to give the order being defective, the tenant should not be charged with so much of the hay as was left by him upon the premises at the termination of the tenancy. *Id.*

See BROKER, 1 to 5.
    COMMON CARRIERS, 3, 7.
    CONSTITUTIONAL LAW, 1, 4, 7.
    HUSBAND AND WIFE, 1.
    INJUNCTION, 1 to 4.
    MASTER AND SERVANT, 1 to 5.
    MECHANICS' LIEN LAW, 34.
    SHIPS AND SHIPPING, 8.

## PRIVILEGED COMMUNICATIONS.

See ATTORNEYS AND COUNSELLORS, 4, 5.

## PRODUCTION OF BOOKS AND PAPERS.

See PRACTICE, *Discovery,* 46 to 50.

## PROMISSORY NOTES.

See BILLS OF EXCHANGE AND PROMISSORY NOTES.
    DISTRICT COURTS, 23.
    MECHANICS' LIEN LAW, 6, 7.

## PUBLIC CHARITY.

See FIRE DEPARTMENT, 5, 6.

## PROVISIONAL REMEDIES.

See PRACTICE, *Provisional Remedies,* 110 to 126.
    EVIDENCE, 48.

## Q

### *QUANTUM MERUIT.*

See ACTION, 17.

## R

### RAILROADS.

See COMMON CARRIERS, 5 to 7.
    NEGLIGENCE, 1 to 8.

### REAL ESTATE.

See BROKER, 1 to 3.
    JURISDICTION, 9.
    LANDLORD AND TENANT, 22 to 24.
    MARRIED WOMEN, 1, 2.
    PLEADING, 29, 30.
    PRINCIPAL AND AGENT, 6, 7.
    STATUTE OF FRAUDS, 3, 4.

### RECEIPT.

See EVIDENCE, 11.
    RELEASE, 1, 2.

### RECEIVER.

See SHERIFF'S SALE, 3, 6.

### RECORDING.

See MORTGAGE, 3 to 11.

### RECOUPMENT.

See PRACTICE, *Recoupment*, 127.

### REDEMPTION.

See MECHANICS' LIEN LAW, 16, 17, 98.

### REFERENCE AND REFEREES.

1. Although the court may be of opinion that upon the evidence, as it appears on paper, they should have found differently, they will not, where the evidence is conflicting, set aside the report of a referee upon the facts, unless the evidence against the finding so greatly preponderates, or his finding is so far without evidence in its support, as to warrant the inference of bias, corruption, partiality, or some bad faith or unfairness in the referee, or some mistake in law or in its application to the case. *Mazetti* v. *The N. Y. & Harlem R. R. Co.*, 98

2. Where the whole merits have been examined before referees, the court will not reverse a judgment, because there is a variance between the complaint and the proofs in a particular in which the parties have not been misled; but will on appeal either disregard the variance, or direct an amendment. *Parsons* v. *Suydam*, 276

3. Where the report of a referee is defective in not stating. with sufficient particularity, the several facts found; the party complaining thereof should apply by motion at special term to have a further report ordered. *Id.*

4. And where, on appeal from a judgment upon such a report, the appellant's counsel refuses to accept an order which is tendered to him for a further report, the court will not reverse for such imperfection. *Id.*

5. Where a witness is called, sworn, and examined by the plaintiff, and the defendant declines to cross examine him, but after the plaintiff rests his case the defendant moves for a nonsuit, which being denied, he calls the witness again to the stand; it is not proper for the referees to administer the oath a second time, even although the defendant requests it. *Id.*

6. In an action wherein the plaintiff, as a ground upon which he · demands judgment, avers the failure of the defendants to make advances as required by an agreement between the parties, and also claims that by reason thereof he has been required to make and has made numerous advances. and, on the other hand, the defendants, in their answer, aver that they have made all the advances which they were bound to make; a reference is proper to take the account of the advances respectively made. *Smith* v. *Dodd*, 348

7. Such a reference may be ordered before the other issues are submitted to a jury for trial. *Id.*

8. *It seems*, that in an action in which a reference may lawfully be made, the

decision of a judge at special term that a reference is proper, rests so far in his discretion, that it is not appealable.  *Id.*

9. Where the facts are correctly found by a referee, the court on appeal from the judgment entered upon his report, may disregard his conclusions of law, if erroneous, and may direct the entry of such judgment upon the facts found, as in the opinion of the court should have been recommenced by the referee. *Hannay* v. *Pell*, 432

10. A referee, in his sound discretion, may, even upon his own motion, open a case for further testimony, although several days have elapsed since the evidence was closed and since the cause was summed up and submitted for his decision. *Duguid* v. *Ogilvie*, 527

### RELEASE.

1. Where A. and B. were jointly and severally liable to C. for the sum of two hundred dollars; *held*, that a receipt signed by C., acknowledging the payment by A. of one hundred dollars, "in full of his obligation," did not operate to release or discharge *either* of the joint obligors. *Buckingham* v. *Oliver*, 129

2. Where a creditor, in consideration of part payment, gives to one of two joint debtors an instrument intended as a separate discharge of him, but which operates to release both; *quere*, whether such joint debtor, by informing his co-debtor that such is in fact the effect of the instrument, violates a stipulation—given by him as a condition of the discharge—to aid, in every way within his power, the collection of the balance from such co-debtor? *Id.*

### RELIGIOUS CORPORATIONS.

1. A contract with the trustees *de facto* of a religious corporation, in the actual possession of the church edifice, books, records, seal, and all the temporalities of the church, made by a person without knowledge of an illegality in their election, is binding upon the corporation, and will be enforced, although afterwards such election is adjudged to have been illegal. *Ebaugh* v. *The German Reformed Church*, 60

2. Otherwise, if, when the contract is entered into, the illegality shall have been already judicially determined. *Id.*

3. Where the contract is made after the decision of a court of competent jurisdiction that the trustees are legally in office, which decision is afterwards reversed by an appellate tribunal; the presumption is, that the contracting parties acted, intermediate the decision and the reversal, without knowledge of the illegality, and under the belief that the proceedings were legal. And the contract is valid against the corporation, in favor of the party contracted with, although the latter, having been unofficially associated with the trustees before the contract, thereupon becomes, and continues until the reversal, a member of their board. *Id.*

4. The provision in the act for the incorporation of religious societies, that the salary of a minister shall be paid out of the revenues of the church, is directory as to the manner of payment, and should be complied with; but if the trustees neglect such application of the revenues, the minister may recover his salary by action against the corporation. *Id.*

### REPLEVIN.

1. The general rule, that this court will not reverse the judgment of a justice's court, where the evidence is conflicting and witnesses contradict each other—although the preponderance of the testimony, as it appears in writing, is against the finding—will be still more strictly applied where the judgment is in the defendant's favor in an action for the detention of personal property, and circumstances warrant the suspicion that the plaintiff's main witness had made a sham sale of the property, for the mere purpose of testifying himself to aid in its recovery. *Wilson* v. *Cook*, 252

2. Where A. lends property to B., and afterwards sells it to C., who thereupon sells it to D., the property being still in the lawful possession of B.; D. cannot maintain an action against B. for an unlawful detention, without proving a demand by himself or by a person authorized to act for him, nor without notice to B., that D. has acquired the title. *Id.*

3. Where a writ in the nature of a writ of replevin, is issued in the name of a party, and he executes and delivers to the sheriff an undertaking to prosecute the action and to return the property, if a return be adjudged, and for the payment of whatever may be adjudged to the defendant therein, and the sheriff, thereupon, by direction of the attorney in replevin, or his clerk, takes the goods of a third person under the writ, after which the plaintiff in replevin—in order to entitle him to claim a delivery to himself of the property so taken by the sheriff—voluntarily proceeds to a justification of the sufficiency of his undertaking and actually justifies; these facts are *primâ facie* evidence that such plaintiff in replevin authorized the seizure of the very goods which were taken. *Aldrich* v. *Ketcham*, 577

4. A verdict of a jury upon this testimony, in favor of the actual owner of the goods, in an action for such wrongful taking, is not without evidence to sustain it. *Id.*

See TROVER, 3, 4.

RESTITUTION.

See APPEAL, 62.

RIGHT OF WAY.

See TRESPASS, 5 to 8.

S

SALARIES.

See POLICE DEPARTMENT, 1 to 4.
    RELIGIOUS CORPORATIONS, 4.
    SURETY, 4, 5.

SALES.

1. An action on the case in the nature of deceit, will lie for a false warranty on a sale of goods, if the warranty be express; although assumpsit is, in modern times, the more usual remedy. *Fowler* v. *Abrams*, 1

2. In such an action, it is not necessary to allege or prove that there was fraud on the part of the seller. It is enough to aver and establish the warranty, and that the warranty is false. *Id.*

3. If fraud be averred, it is not necessary that it should be proved to entitle the plaintiff to maintain the action. *Id.*

4. Therefore, where the plaintiff averred that the defendant, "by falsely and fraudulently warranting a horse sold by him to the plaintiff," etc. (in the ancient form of declaration in actions on the case for a false warranty), and, on the trial, proved an express warranty and that it was false; *held*, that he was entitled to recover, although the jury found specially, that there was no fraud. *Id.*

5. Under such circumstances, the plaintiff cannot issue an execution against the person of the defendant. *Id.*

6. Whether, in an action on the case in the nature of deceit, for a false warranty, where the *scienter* is averred and established, the measure of damages will be confined strictly to the difference in value? *Quere.* *Id.*

7. Where casks are sold as an article of merchandise, without fraud or express warranty, the loss, if they prove leaky, falls upon the purchaser. *Van Riper* v. *Ackerman*, 58

8. Otherwise, *it seems*, where they are made to order by a cooper, there being in such case an implied warranty that they are as fit for use as such articles usually are. *Id.*

9. A parol promise, made by a debtor upon the request of his creditor, that he will pay for a bill of goods to be delivered to such creditor out or on

account of such indebtedness, in consideration of which promise the seller delivers the goods, is a valid promise, and not within the statute of frauds. *Phillips* v. *Gray*, 69

10. The parties being all present and assenting, it is tantamount to an assignment *pro tanto*, by the creditor to the seller of the goods, of the amount due by the debtor, assented to by such debtor, and a promise by him to make payment to the assignee. *Id.*

11. Where a debtor, upon presentation to him of a bill for clothing, struck out one item, and wrote after it, "Never got it;" *held* sufficient to warrant the inference that he received and was chargeable with the other articles enumerated therein. *Power* v. *Root*, 70

12. Where an agent sells goods without disclosing the name of his principal, the purchaser may pay the purchase money to the agent; or settle with such agent by any *bonâ fide* arrangement, whereby he parts with money or property upon the faith of the agent's apparent authority. *Henry* v. *Marvin*, 71

13. But placing the amount to the credit of the agent against a preëxisting indebtedness, with knowledge that the goods were held by the agent for sale for some other person, is not such a payment; and the principal—the owner—may recover therefor, notwithstanding such credit. *Id.*

14. An agent to sell goods, has no authority to pledge them to secure an antecedent debt due by himself. And when the pledgee in such case refuses to deliver the goods to the owner on his demand, and sells them at auction, such owner may recover their value in an action for the illegal detention and conversion; or, he may affirm the sale, and, waiving the tort, sue for the proceeds of the goods, as so much money received by the pledgee to his use. *Id.*

15. Whether, when goods are tortiously taken or detained, the owner can—waiving the tort—sue for and recover their value, as goods sold and delivered by him to the wrongdoer? *Quere.* *Id.*

16. Where a complaint sought to rescind a contract of sale on the ground that the defendant, "by false and fraudulent representations, and with intent to defraud the plaintiff of certain goods," had obtained possession thereof, and the evidence revealed a desire on the part of the seller to effect the sale, rather than any application by the purchaser to make the purchase; it was *held*, there being no proof of any representations whatever that the insolvency of the defendant and his neglect to disclose it were insufficient to sustain the action. *Fisher* v. *Conant*, 199

17. A suit for the rescission of a contract of sale, on the ground of fraud, cannot be maintained by the vendor while he retains any part of the consideration received by him from the purchaser. *Id.*

18. So *held*, where the purchaser made a partial payment in cash, and agreed to deliver notes for the balance, and the vendor filed his complaint without having offered to restore the money. *Id.*

19. Where various articles are sold at separate prices, and paid for, the purchaser, upon discovering, after their delivery, that one does not agree with the contract of sale, may return it and recover the price thereof, without also returning the other articles. *Manning* v. *Humphreys*, 218

20. Where cattle are brought to market by a drover and are sold to a butcher to be slaughtered, if there be neither fraud nor express warranty, no warranty of soundness is implied, and the maxim, *caveat emptor*, applies. *Goldrich* v. *Ryan*, 325

21. Accordingly, where cattle brought by a drover to the city of New York from a distant place, and here sold to a butcher, were, upon being slaughtered, found to have been bruised on the journey; it was *held*, that in the absence of any proof of misrepresentation, concealment, or even knowledge of the injury sustained by the

cattle, the vendor was not liable without an express warranty that no such defect existed. *Id.*

22. Where an owner, being about to build a house, enters into a contract with a mechanic or manufacturer, to furnish the window caps, and the latter agrees to do so, of a "good quality for the place" in which they are to be set, but it appears, after the building is erected, that the caps, or a portion thereof, are imperfect and unskillfully made; the owner is not precluded by the mere fact that the caps are set in the walls, from claiming, in an action brought against him for the labor and materials, a suitable deduction on account of their imperfections. *Norris* v. *LaFarge,* 375

23. Setting the caps is not necessarily an acceptance of the work as a full performance of the agreement. *Id.*

24. The maxim, *caveat emptor,* applicable to sales of goods, does not apply to such a case. *Id.*

25. Where a tenant represents that he is the owner of, and sells to a subtenant, as personal property, articles upon the demised premises which are a part of the freehold and to which he has no title except as tenant, the purchaser may recover damages arising from the failure of the vendor's title. *Beckmann* v. *Bormann,* 409

26. Where a landlord, at the request of an agent of a tenant of lands, delivered some loads of hay upon the premises, and the tenant, upon a bill therefor being presented to him, remarked that there was more than he should want, but that he would see about it; it was *held,* that the proof of the agent's authority to give the order being defective, the tenant should not be charged with so much of the hay as was left by him upon the premises at the termination of the tenancy. *Vanderbilt* v. *Persse,* 428

27. Where, upon a sale of goods, the note of a third person is expressly received as payment therefor; it will have legal effect as payment, although the purchaser indorses the note. *Soffe* v. *Gallagher,* 507

28. The vendor is bound in such case to treat the purchaser as an indorser of commercial paper, subject to the rights and liable only to the responsibilities of such an indorser. *Id.*

29. And the vendor cannot, therefore, maintain an action for the price of the goods, although he produces the note and offers to surrender it upon the trial. *Id.*

30. Where, however, there is an absolute and unqualified guarantee by the purchaser that the note shall be paid ; *it seems,* that the note will not operate as payment, but only as a security extending the term of credit. *Id.*

31. A party who purchases goods arriving in bond, is not liable for demurrage of the vessel wherein they were transported to this port, for detention occurring before the vendor obtains from the custom house a permit for the delivery. *Gillespie* v. *Durand,* 531

32. The purchaser may refuse to receive the goods until the proper papers are obtained from the custom house, without incurring any liability for demurrage, although the removal of the goods might have been sooner effected by the illegal consent of a subordinate government officer. *Id.*

33. Whether the amount recovered by the owners of the vessel, against the consignees of the goods, in an action for demurrage, forms a rule of damage in an action by the latter against a purchaser charged with delay in unlading? *Quere.* *Id.*

34. A judgment against the plaintiff, in an action for the price or value of personal property delivered upon an alleged contract of sale, is no bar to an action by the same plaintiff against the same defendant. for damages for the wrongful detention of the property, proceeding upon the ground that, there having been no valid sale, the plaintiff is entitled to its possession. *Ball* v. *Larkin,* 555

35. In an action for goods sold by two persons as partners, it appeared that they had together boarded with the defendant, and that each had told him

"that what one might call for would be the same as if both should order it." *Held,* that the defendant's account for liquors, &c., furnished to each, created a joint obligation against both, and constituted a valid counter claim to the plaintiff's demand. *Hartung* v. *Siccardi,*                    560

36. An administrator, by indorsing a promissory note and delivering it before maturity for a debt contracted by the intestate's widow for necessaries furnished to her after the decease, renders himself personally liable, although in making the indorsement he adds to his name the title of administrator. *Sieckman* v. *Allen,*                    561

See APPEAL, 20.
    ASSIGNMENT, 13, 14, 16.
    AUCTIONEERS, 1.
    BROKER, 1 to 3.
    EVIDENCE, 50, 51.
    INJUNCTION, 1 to 4.
    MARRIED WOMEN, 3.
    MECHANICS' LIEN LAW, 12 to 17, 19, 37, 38, 91 to 98.
    PRINCIPAL AND AGENT, 6, 7.
    SHERIFF'S SALE, 1 to 7.

## SEAL.

See PRINCIPAL AND AGENT, 8.

## SEAMEN'S WAGES.

1. In an action for wages as a seaman, proof that the plaintiff worked on board a sloop and that the defendant was the owner thereof, is *primâ facie* sufficient to sustain a recovery. *Dougherty* v. *Gallagher,*                    570

2. But where the master testified, that he and the defendant were jointly interested in the business wherein the sloop was employed—that by arrangement between them. the defendant was to pay half the dockage and the witness to pay the hands—that the witness engaged the plaintiff and then told him of the arrangement and that he was to look to the witness for his wages; *held,* that this testimony being uncontradicted, established a special agreement between the witness

and the plaintiff, and formed a bar to the action against the defendant. *Id.*

See SHIPS AND SHIPPING, 1 to 4.

## SECURITY.

See APPEAL, 27, 28.
    COSTS, 2 to 4.

## SELF DEFENCE.

See ASSAULT AND BATTERY, 4.

## SET OFF.

See EVIDENCE, 93.
    JUDGMENT, 17.
    LANDLORD AND TENANT, 16.
    PRACTICE, *Counter Claim,* 32.
    PRACTICE, *Set Off,* 128 to 135.

## SEVERAL PROMISORS.

1. Under the present system of practice in this state, several promisors can be proceeded against in one action, and a joint judgment recovered. *It seems,* therefore, that, where the defendants are declared against as joint promisors, and the evidence shows that the promise was not made jointly, but by each defendant separately, the variance between the pleading and proof would be disregarded or cured by allowing an amendment, where their liabilities, as between themselves, would not be altered by this form of recovery against them. *Downing* v. *Mann,*                    36

See SALES, 35.

## SHERIFFS.

1. The sheriff, as an officer of the court, is bound to execute the judgments and decrees thereof. He cannot go behind any direction contained therein, and refuse obedience, because in his opinion such direction is erroneous. *Smith* v. *Corey,*                    642

2. So held, where the sheriff refused to deliver a deed to a purchaser at a sale

directed by a judgment, although the delivery of the deed was required in the judgment. *Smith* v. *Corey*, 642

See EVIDENCE, 72.
> PRACTICE, *Attachment*, 23, 24.
> PRACTICE, *Execution*, 52, 55, 58 to 60.
> SHERIFF'S SALE, 1 to 7.

## SHERIFF'S SALE.

1. A sale of personal property, made ostensibly under dormant executions, while another execution is in the sheriff's hands, is valid, and vests the title in the purchaser. *Richards* v. *Allen*, 399

2. The remedy of the plaintiff in the other execution, is by motion to have the proceeds of the sale applied to its satisfaction, in preference to the dormant executions. *Id.*

3. Where, instead of pursuing that course, he took "supplementary proceedings" against the plaintiff in the dormant executions—who was the purchaser at the sale in question—and obtained the appointment of a receiver, to whom the debtor executed an assignment; *held*, that the receiver could not recover the value of the property in an action against the purchaser. *Id.*

4. Where the holder of the valid execution, being present and apprehending a relinquishment of the sale, requested the sheriff to proceed; *held*, that he could not call in question the validity of the sale. *Id.*

5. And where, in such an action, the answer in claiming title to the property, averred the sale under the dormant executions; it was *held*, that the plaintiff was not entitled to a recovery, although the defendant had failed to set up the valid execution, the latter being shown by the proofs to have been in the hands of the sheriff at the time of the sale. *Id.*

6. Where a judgment debtor, in proceedings supplementary to execution, assents to the jurisdiction of the officer by whom the order was granted,

by executing an assignment to a receiver appointed therein; a third party cannot impeach the title of such assignee, for an irregularity in the proceedings prior to the assignment. *Richards* v. *Allen*, 399

7. Although a general direction to the sheriff to delay an execution, renders it dormant and gives priority to a junior execution; yet, although dormant as to other creditors, it may not be so as to the judgment debtor. *Id.*

See MECHANICS' LIEN LAW, 12 to 17, 19, 91 to 98.

## SHIPS AND SHIPPING.

1. Putting into a port, through necessity, to make repairs, is not a "deviation" discharging seamen from their articles. *Botker* v. *Towner, owner of the brig "Swan,"* 132

2. If the repairs can be made within a reasonable time, it is the duty of seamen to remain with the vessel, and they cannot allege unseaworthiness of such a temporary character, as an excuse for desertion. *Id.*

3. The act of Congress requiring shipping articles to be in writing or in print, does not require a formal signing thereof by the master. It is sufficient, in this respect, if they be signed by the "seamen and mariners." *Id.*

4. If a seaman, after the voyage has been actually entered upon by him, seeks to excuse or justify his abandonment of the vessel before the voyage is ended, the burden rests upon him to show that the act of Congress was not complied with by the master in those particulars which are to be done after the due execution and delivery of the articles. *Id.*

5. The assignee of a bill of lading, who as such receives the goods, is liable for the freight, although the assignment of the bill of lading was made after the goods were sent to the public warehouse under a general order to discharge the ship. *The N. Y. and Havre Steam Navigation Co.* v. *Young*, 187

**6.** See, also, *Burton* v. *Strachan*, (*note*,) 192

**7.** A charter party, which does not give the charterer entire control of the vessel, nor postpone the payment of the charter money beyond the delivery of the cargo, does not divest the general owner of his lien for freight, nor of his right to collect the same. *Mactaggert* v. *Henry*, 390

**8.** Although the master of the vessel, being the agent of the general owner, waive the lien by delivering the goods without demanding the freight; such general owner may afterwards compel the consignee to pay it. *Id.*

**9.** Where the charter party is of the character above mentioned; the payment of the freight, by the consignee of the goods to the general owner of the vessel, is a bar to any claim therefor by the charterer. although the latter, before the payment, may have given formal notice to the consignee, not to pay the same to the owner. *Id.*

    See Demurrage, 1 to 3.
        Injunction, 1.
        Seamen's Wages, 1, 2.
        Steamboats, 1 to 5.

### SPECIAL PARTNERSHIP.

See Partnership, 7, 10 to 16.

### SPECIAL VERDICT.

See Practice, *Trial*, 137.

### STAGE COACH.

See Passenger Carriers, 1 to 6.

### STATUTE OF FRAUDS.

**1.** A parol promise, made by a debtor upon the request of his creditor, that he will pay for a bill of goods to be delivered to such creditor out or on account of such indebtedness, in consideration of which promise the seller delivers the goods, is a valid promise, and not within the statute of frauds.— *Phillips* v *Gray*, 69

**2.** The parties being all present and assenting. it is tantamount to an assignment *pro tanto*, by the creditor to the seller of the goods, of the amount due by the debtor, assented to by such debtor, and a promise by him to make payment to the assignee. *Id.*

**3.** A mere license to insert beams into the wall of a house, is not an "interest in lands," the conveyance whereof is required by the statute of frauds, to be in writing. *McLarney* v. *Pettigrew*, 111

**4.** Where a parol agreement to grant such license has been acted upon, by inserting the beams, the party who has obtained the permission is liable upon his promise to pay therefor, on the ground that the contract has been partly executed and thereby made binding, although the grant were such as the statute requires to be in writing. *Id.*

**5.** Where the defendant, upon the plaintiff entering into a contract with a firm for his employment as a clerk, executed to him an agreement guaranteeing that his salary at certain rates agreed upon should amount to $15 per week; *held*, that the defendant's agreement was not within the statute of frauds, and was valid, although the consideration was not expressed therein. *Douglass* v. *Jones*, 551

### STATUTE OF LIMITATIONS.

See Mechanics' Lien Law, 63, 64.

### STATUTES.

See Constitutional Law, 1 to 7.
    Corporation Ordinances, 1 to 3.
    Mechanics' Lien Law, 11.

### STAY OF PROCEEDINGS.

See Practice, *Stay of Proceedings*, 136.

## STEAMBOATS.

1. In an action, by the owners of a steamboat, against the owners of another boat, for negligence producing a collision; the plaintiffs cannot recover as damages the probable loss of profits which they might have realized from a return trip from a place, whither their boat was bound when injured by the collision. *Hunt v. The Hoboken Land Improvement Co.*, 144

2. It is error to charge a jury, that the statute of this state, requiring steamboats when meeting each other to turn to the right (or to starboard) " does not apply to steamboats crossing the river." *Id.*

3. It does apply whenever the two boats meet, whether approaching each other upon courses either directly or obliquely opposed. *Id.*

4. The general law of navigation prescribes the same rule. *Id.*

5. When the course of one boat is at right angles to that of the other, the question of negligence depends upon the particular circumstances of the case, and not *alone* upon the question, which turned first, if, under the circumstances, the boat that first turned from her course, turned in the wrong direction. *Id.*

## STORAGE.

See Bailment, 1, 2.

## SUBSCRIBING WITNESS.

See Evidence, 10.

## SUMMONS.

See District Courts, 29, 30.
Marine Court, 2, 10, 34, 36, 45.

## SUPPLEMENTAL ANSWER.

See Landlord and Tenant, 3.

## SUPPLEMENTARY PROCEEDINGS.

See Practice, *Discovery*, 43. .
Sheriff's Sale, 3, 7.

## SURETY.

1. A surety, in an action brought by his principal upon a money demand, may set up as a defence the recovery of a judgment against him, on his contract of suretyship. *Hannay v. Pell*, 432

2. Unless he has actually made some payment on account of his liability as such, a surety is not entitled to relief at law, and can only proceed in equity to compel the principal to make payment and the creditor to receive it. *Id.*

3. Yet, under the Code of Procedure, where the principal brings against the surety an action upon an account, in the form of an action at law, and the answer sets up the recovery against the surety of a judgment by the creditor and prays affirmative relief; the court, when it appears upon a finding of the facts by referees or otherwise, that the amount due on the account is less than the judgment, may adjudge that the plaintiff pay to the creditor the judgment deducting the amount so due from the defendant, and may provide that the payment by the defendant to such creditor, of the amount last mentioned, shall discharge the defendant from the plaintiff's claim. *Id.*

4. Where the defendant, upon the plaintiff entering into a contract with a firm for his employment as a clerk, executed to him an agreement guaranteeing that his salary at certain rates agreed upon should amount to $15 per week; *held*, that the defendant's agreement was not within the statute of frauds, and was valid although the consideration was not expressed therein. *Douglass v. Jones*, 551

5. The guarantor being a silent partner in the firm, the modification by another partner, acting for the firm, of the contract of employment with the

plaintiff, would not discharge the de-
fendant from his guaranty.        *Id.*

See LANDLORD AND TENANT, 12, 16 to
    21.

## SURRENDER.

See LANDLORD AND TENANT, 28.

## T

### TAXES.

See CONSTITUTIONAL LAW, 1 to 7.

### THEFT.

See TROVER, 3, 4.

### TITLE.

See ACTION, 41.
    ASSIGNMENT, 22.
    BROKER, 4, 5.
    JURISDICTION, 9, 11.
    LANDLORD AND TENANT, 30, 31.
    MARRIED WOMEN, 1, 2.
    MORTGAGE, 3 to 12.
    PLEADING, 29, 30.
    REPLEVIN, 2.
    SHERIFF'S SALE, 1 to 7.

### TORT.

See PRACTICE, *Parties*, 107, 108.

### TRESPASS.

1. The owner of a dog is not liable for
   the willful act of his servant is setting
   the dog upon the cattle of another.
   *Steele* v. *Smith*,                321

2. The mere fact that the owner stood
   near will not warrant a judgment
   against him in such case, without
   proof that the servant acted by his
   command or direction.         *Id.*

3. And this is especially true where it
   appears that the owner, so soon as he
   saw the act, gave immediate orders to
   take off the dog. *Steele* v. *Smith*, 321

4. When a party is engaged in erecting
   a house upon his own ground, he is
   not, nor are his workmen, bound to
   put up temporary partitions about
   stairways, nor floors across beams, nor
   use other means, for the protection of
   intruders who voluntarily enter the un-
   finished house and venture to walk
   across the beams or around its well-
   holes. *Roulston* v. *Clark*,          366

5. Where the owner of lots of ground,
   upon the rear of which are buildings
   occupied by his tenants, opens a way
   which they use for their ingress and
   egress through an adjoining lot, while
   he is improving the front of the lots
   by putting up buildings; their visitors
   have no such license, as visitors, that
   they can aver a right to pass through
   the unfinished buildings.         *Id.*

6. In such case, when the buildings in
   front are inclosed, and new alley ways,
   which the tenants in the rear begin
   to use, are arranged along the walls;
   an obstruction of such alley ways does
   not give either the tenants or their
   visitors a right to pass through the
   houses.                          *Id.*

7. And accordingly, where the father of
   two of the tenants, wishing to visit
   his daughters in the night season,
   and finding the alleys along the new
   houses obstructed, attempted to grope
   his way through the basement hall
   and fell down into the cellar; *held*,
   that he had acted at his peril, and
   could maintain, for the injury received,
   no action founded upon the negligence
   of the mechanics employed in the
   erection.                        *Id.*

8. Where a party, having been injured
   while groping, in the evening, along
   the unfinished hall of a building in
   course of erection on the front of a
   lot, sues the owner for negligence in
   view of the dangerous condition of the
   hall, and, the owner having charged
   that the plaintiff was a trespasser, the
   latter claims to have been there of
   right and in virtue of a title in his
   daughters—as tenants of a rear build-

·ing on the same lot—to a way across the premises, under which he avers a presumptive license in himself as their visitor; *quere*, whether the case involves a question of title to real estate in such sense as to oust the Marine and District or Justices' Courts of jurisdiction? *Roulston* v. *Clark*, ' 366

9. In an action for damages from the bite of a dog, an allegation in the pleadings that the plaintiff, when injured, was in a place where he had no right to be, does not put in issue a claim of title to real property, so as to entitle the plaintiff to costs in a court of record upon recovering less than fifty dollars. (Code, § 304, subd. 1.) *Pierret* v. *Moller*, 574

10. The fact that the plaintiff, when bitten by the defendant's dog, was trespassing upon the premises of another person, does not affect the right of recovery, and is only material if at all upon the question of damages. *Id.*

## TRIAL.

See Bills of Exchange, &c., 5.
  District Courts, 8, 9, 13.
  Landlord and Tenant, 3.
  Malicious Prosecution, 4, 5.
  Mechanics' Lien Law, 110. ·
  Practice, *New Trial*, 68 to 88.
  Practice, *Nonsuit*, 88.
  Practice, *Parties*, 98, 99, 102 to 104, 106 to 108.
  Practice, *Trial*, 137 to 139.
  Reference and Referees, 7.

## TROVER.

1. The holder of a mortgage upon personal property, payable on demand, may maintain an action against a person wrongfully taking the property and disposing thereof, without proving a demand of the debt due on the mortgage. *Brown* v. *Cook*, 123

2. The interest of the mortgagor may be subject to a levy and sale. Whether the officer who sells the property absolutely, will be liable as a wrongdoer? *Quere*. (See note *a*.) *Id.*

3. Where the defendant's goods are clandestinely taken from his store by persons having no authority for that purpose, and are sold to the plaintiff; the defendant has a right to retake them into his possession. *Conlan* v. *Latting*, 353

4. And having done so, aided by a police officer with a search warrant, proof of these facts is a good defence to an action by the plaintiff for an illegal taking and detention thereof. *Id.*

5. It is settled that the purchaser of personal property which is in the possession of a third party, may, after a demand thereof and a refusal to deliver to him, maintain an action for the illegal detention. *McGinn* v. *Worden*, 355

6. He might have maintained trover in his own name against the third party in such case, before the enactment of the Code. (See *Hall* v. *Robinson*, 2 Coms. 293.) *Id.*

7. The vendor, in such case, is not the assignor of a thing in action, within the meaning of § 399 of the Code. *Id.*

8. He is the vendor of personal property. *Id.*

9. In an action by a constable for the value of goods disposed of by the defendant after an alleged levy thereon under an execution against a third party; it appeared that the execution debtor and the defendant (the property being in the latter's possession) were present when the officer approached to make the levy; that the goods were within view; that the officer touched a case with his foot, made a memorandum on the execution that he had levied upon a lot of dry goods, and thereupon so stated; and that the defendant, upon being asked by the attorney of the execution creditor what amount had been levied upon, replied, "more than double enough to pay the execution." *Held*, that under the circumstances, there was a sufficient levy to sustain the action. *Watts* v. *Cleaveland*, 553

10. A demand from one of two persons, in the joint possession of personal property owned by a third person, is sufficient to sustain an action in the

nature of trover against both. *Ball* v. *Larkin,* 555

11. A judgment against the plaintiff, in an action for the price or value of personal property delivered upon an alleged contract of sale, is no bar to an action by the same plaintiff against the same defendant, for damages for the wrongful detention of the property, proceeding upon the ground that, there having been no valid sale, the plaintiff is entitled to its possession. : *Id.*

See REPLEVIN, 1 to 4.
SALES, 14, 15.

## TRUST AND TRUSTEE.

1. It appearing by the complaint that the plaintiffs were only entitled to the principal of a fund held in trust; an averment that a provision, in the instrument by which the trust was created, fixing the rate of interest to be allowed for the use of the fund at five instead of seven per cent., was inserted improperly by the undue influence of the trustee—and the prayer of the complaint, founded upon this statement, that the trustee account to the plaintiffs for interest at the rate of seven per cent. from the time of creating the trust—*held* bad on demurrer, the plaintiffs not being entitled to the interest, if at all, until the principal became due to them. *Clarkson* v. *Mitchell,* 269

2. *Held,* further, that if the plaintiffs sought interest, as matter of law, upon the principal, after such principal became payable to them, they should have so declared, instead of proceeding entirely, as in the matter demurred to, upon the ground of illegality in the act of the trustee, and making that the foundation of a claim to seven per cent., or to the two per cent. difference between five and seven per cent. from the time the trust was created. *Id.*

3. Where a deed of trust provides that the interest of a fund shall be paid during life to the person executing the same, and directs the principal to be given to third persons; an action after his death to recover interest accumulated in the hands of the trustee, cannot be maintained by them, but must be brought by the personal representatives of the grantor. *Clarkson* v. *Mitchell,* 269

4. If such third persons file a complaint for both the principal and such accumulated interest; the trustee, although both claims are founded upon one instrument, may answer the one and demur to the other. *Id.*

5. Where a trust results from the sale of property owned jointly by the plaintiff and defendant, and the whole proceeds come to the hands of the defendant as the agent of both; a court will enjoin, upon the distinct ground of restraining a breach of trust and the commission of a fraud. *Merritt* v. *Thompson,* 283

6. The injunction should only be laid upon the actual proceeds of the sale of the plaintiff's property, or upon funds misapplied even although invested in other property, if still capable of identification as in equity as belonging to the plaintiff; but not upon moneys merely due to him in general account with the defendant. *Id.*

7. Although the Code, in chap. 1, title 7, part 2. entitles a complainant to an order of arrest, when he establishes a fraud and breach of trust; he is not, by the provisions last referred to, necessarily limited to that remedy, where the case is such as to furnish grounds for an equitable interposition by injunction. *Id.*

8. Where the equitable power of the court is invoked to compel an accounting—to enforce a trust—to prevent a fraudulent misapplication of funds, or a misappropriation of property held as trustee; the jurisdiction is as ample now as before the Code. *Id.*

See PARTNERSHIP, 7, 12.

## U

## UNDERTAKING.

See REPLEVIN, 3.

## USE AND OCCUPATION.

See LANDLORD AND TENANT, 25, 29.

# V

## VARIANCE.

See PRACTICE, *Amendments*, 2, 3.
PLEADING, 20, 32, 33.

## VERDICT.

See BILLS OF EXCHANGE, &c., 5.
DISTRICT COURTS, 9.
EVIDENCE, 100.
MARINE COURT, 14 to 16.
NEGLIGENCE, 6, 19.
PRACTICE, *New Trial*, 68 to 71.
PRACTICE, *Trial*, 137.

## VERIFICATION.

See MECHANICS' LIEN LAW, 107 to 110.

## VOLUNTARY PAYMENT.

1. The defendants, being indebted to a non-resident against whose property an attachment was issued, in New York, at the suit of one of his creditors, were served with a copy of the warrant; and afterwards, judgment having been entered and execution issued, paid to the sheriff the amount of their said indebtedness. *Held*, that the payment having been made by the defendants without compulsory process, and after notice to them of an assignment by the debtor of all his property before the attachment issued, was a voluntary payment, affording them no protection from liability to the assignee. *Lyman v. Cartwright*, 117

See MECHANICS' LIEN LAW, 47.

# W

## WAGES.

1. An agreement to labor contained a covenant of forfeiture, in respect to all wages which might be earned and unpaid whenever the party employed should fail to perform; but it was provided, that the forfeiture should not operate, if his neglect were caused by sickness, and a physician, engaged by the employer, "should certify, that such sickness unfits him to do his work." *Held*, that a written certificate was not required, and it was sufficient that the physician told the laborer, and others similarly situated, that they were unfit for work, and must prepare and leave the place where their services had been required. *Lyons v. Story*, 113

2. A father is entitled to recover the wages of his minor son. *Id.*

See AGREEMENT, 31 to 33.
POLICE DEPARTMENT, 1 to 4.
SEAMEN'S WAGES, 1, 2.
SHIPS AND SHIPPING, 1 to 4.

## WARRANT.

See MARINE COURT, 45.

## WARRANTY.

See SALES, 1 to 8, 20, 21.

## WASTE.

See JURISDICTION, 9.

## WIDOW.

See EXECUTORS AND ADMINISTRATORS, 8, 9.

## WIFE.

See HUSBAND AND WIFE, 1.

See MARRIED WOMEN, 1 to 4.
   MECHANICS' LIEN LAW, 34, 35.

                WITNESS.

See ASSIGNMENT, 13.
   EVIDENCE, 10, 28, 35, 40 to 46,
     51, 55, 66 to 68, 72, 93, 94,
     101.
   PRACTICE, *Witness*, 140 to 142.

WORK LABOR AND MATERIALS.

   See EVIDENCE, 74, 75.
      SALES, 22, 24.
      WAGES, 1.

          WRITS OF ERROR.